

**F I L E D**

**Mar 04, 2014**

**9TH JUDICIAL CIRCUIT
COUNTY OF KALAMAZOO
KALAMAZOO, MICHIGAN**

1  STATE OF MICHIGAN

2  9th JUDICIAL CIRCUIT COURT – TRIAL DIVISION

3  FOR THE COUNTY OF KALAMAZOO

4

PEOPLE OF THE STATE OF MICHIGAN

5

v                                    Case No.: 2011-1983FC

6

SAMUEL STEEL III

7        Defendant.
   _____/

8

HEARING ON MOTIONS

9

BEFORE THE HONORABLE PAMELA L. LIGHTVOET, CIRCUIT JUDGE

10

Kalamazoo, Michigan – Wednesday, May 8, 2013

11

12  APPEARANCES:

13  FOR THE PEOPLE:          PAUL J. CUSICK P70895
                            ASSISTANT ATTORNEY GENERAL
14                          3030 W GRAND BLVD STE 10-361
                            DETROIT MI 48202
15                          (313) 456-0089

16  FOR DEFENDANT:          ROBERT CHAMPION P52726
                            124 E BRIDGE ST STE C
17                          PLAINWELL MI 49080
                            (269) 685-9220

18

19  VIDEO RECORDED

20

21  TRANSCRIBED BY:         CONNIE L. BRANCH CER 5624
                            PO BOX 19563
21                          KALAMAZOO MI 49019
22                          (269) 377-7170

23

24

25

1

# TABLE OF CONTENTS

**WITNESSES:**

None

| **EXHIBITS:** | **Identified** | **Admitted** |
|---|---|---|
| None | | |

1          Kalamazoo, Michigan

2          Wednesday, May 8, 2013 at 2:48 p.m.

3          THE COURT: Court calls the case of People v Sam

4     Steel the III, file number C11-1983FC. Counsel, identify

5     yourselves for the record.

6          MR. CUSICK: Good afternoon, your Honor, Paul

7     Cusick on behalf of the People, Assistant Attorney General.

8          MR. CHAMPION: If it may please the Court, Robert

9     Champion, appearing on behalf of Mr. Steel.

10          THE COURT: Okay. Counsel, we have a number of

11     motions up for today. Give me one second.

12          Folks, you cannot laugh and be disruptive during

13     the court proceedings. This is the second time, so if I

14     hear anyone else making, I don't know, loud, verbal

15     comments, gestures, laughing; I am going to have to ask you

16     to leave. Okay.

17          They have got to be able to concentrate; I got to

18     be able to concentrate, so just so you are aware of that.

19          Let me also just indicate and make sure that your

20     cell phones and other electronic communications are turned

21     off, because I will take them if they go off. Just so you

22     are aware of that.

23          But please just -- it is really hard to hear in

24     this court and I can hear you talking and so forth, so you

25     do need to keep quiet and just please be careful about

3

1    that.

2         Thank you.

3         So, we have a motion to change venue.  We have a

4    motion to adjourn the trial.  We have a number of motions

5    in limine.  So let me start with the motion to change venue

6    and that is yours, Mr. Champion, so whenever you are ready

7    sir.

8         MR. CHAMPION: Thank you, your Honor.

9         Given the pretrial publicity of this particular

10   case, both in this and with this federal case, my client

11   and myself feel that he would not have a fair opportunity

12   for a fair trial in this county due to that publicity.

13        There has been a series of news articles that

14   have been published about my client, about the facts of

15   this case; and given the community prejudice, we believe

16   that he would not be able to receive a free trial and we

17   are asking that this Court change venue.

18        THE COURT:  Go ahead.

19        MR. CUSICK: Briefly, your Honor.

20        The People would object to that.  It is the

21   Defendant's burden to demonstrate that there is a presence

22   of strong community feeling or a pattern of prejudice that

23   re -- that rendered probable the publicity will result in

24   actual bias to the Defendant.  And actual bias means that

25   there has to be extensive, egregious, media reporting of

4

1    mirage of inflammatory publicity leading to a pattern of

2    deep and bitter prejudice and -- and highly inflammatory

3    pretrial publicity.

4              I don't believe that the Defendant has met his

5    burden, your Honor.  There have been news articles but

6    there really hasn't been a showing, based just on news

7    articles, that there is going to be actual prejudice on the

8    part of the Defendant.  We can, obviously, deal with those

9    issues during the voir dire process.

10              THE COURT:  Okay.

11              I am going to deny the motion.  I do not believe

12    that the Defendant has met his burden of establishing that.

13    I do see Mr. Champion, you have attached a number of

14    articles.  There are some M Live articles here from the

15    Internet and there may have been some publicity.  The

16    incident occurred a couple of years ago, actually.  The

17    Information alleges that the events occurred on or around

18    April 24, 2011; so that was two years ago.

19              I honestly don't recall anything over the last

20    couple of years.  I know that there was some -- there was a

21    period of time where Mr. Steel was not in custody or that

22    they were looking for Mr. Steel; I realize that.  But we

23    have a number pub -- publicity -- high profile cases that

24    are going to trial.  I know that there is one across the

25    hall that has had, I believe, an extensive amount of

5

1    publicity and when the jurors come in, we usually don't
2    have issues with finding jurors that have not heard about
3    the case.  So, I don't see that, that will be an issue.  I
4    am going to deny that request.
5           MR. CHAMPION: Thank you.
6           THE COURT:  So, we will move on to the motion to
7    adjourn trial now.
8           Go head Mr. Champion.
9           MR. CHAMPION: Yes, your Honor.
10          As the Court is aware, I became involved with
11   this particular case late in the process.  I know that the
12   case has been pending for quite some time.  My client is
13   charged with first degree murder in this particular case.
14   On February 14 -- 15th, the first time that we had a status
15   conference before this Court.  At that time we still had
16   not received any of the information necessary for the trial
17   date that was set for May 15th.  And when I say nothing, we
18   received absolutely nothing.  We were coming in blind at
19   that particular point in time.
20          The prosecution, the very next day, they did
21   email us a portion of the police report which was
22   approximately 500 pages.  Actually the -- the
23   investigation, there is over 1,500 pages of information in
24   this particular case.
25          The prosecution has listed approximately 140

6

1    witnesses.  Going through the police report and meeting

2    with my client several times, we have come up with 20

3    witnesses.

4         Most recently, we just received additional

5    documents from the prosecution's -- from the Prosecutor and

6    they have been very cooperative in this matter.  It is not

7    a situation where they are trying to hide anything, it is

8    just us determining what has and has not been provided to

9    our office.

10         Most recently, we received two boxes of telephone

11    records and that was done after an email was requested on

12    April 25th.

13         Additionally we received approximately 22 CDs.

14    Twelve of those were interviews of various individuals and

15    they need to be gone through in detail.  Others were of

16    photographs and other recorded conversations.

17         Initial when we received the file from the former

18    attorney, we received 11 CDs involving this -- this case,

19    four of those did not work and none of them conveyed the

20    information as far as the interviews, they --

21         THE COURT:  The -- I'm sorry.  Those were the CDs

22    that you received from the prior attorney?

23         MR. CHAMPION: Yes and --

24         THE COURT:  Were those included -- the 22 CDs

25    that you just received, you said, recently --

1              MR. CHAMPION: That's correct.

2              THE COURT:  Were the 11 CDs then included in

3    those 22 CDs?

4              MR. CHAMPION: A portion of those and we were

5    comparing what we have, because some of them did not work.

6              THE COURT:  All right.

7              But the ones that we most recently received and I

8    believe that was within the last week, Detective Beauchamp

9    met Susan Prentice-Sao in the parking lot and exchanged all

10   of the CDs and I believe that was Monday or Tuesday.  Is

11   that correct?

12             It was Tuesday.

13            THE COURT:  Were those CDs that were available

14   before, you just didn't get them before last week?  Is that

15   your understanding?

16            MR. CHAMPION: That is my understanding.

17            THE COURT:  So they are not recent interviews?

18            MR. CHAMPION: They are not recent interviews.  We

19   just did not receive those.

20            THE COURT:  Okay.

21            MR. CHAMPION: What we have been doing is going

22   through the volumes of information to make sure that we

23   have all of the evidence to be able to prepare for trial.

24            We are not even able to review the 12 CDs

25   containing interviews because we haven't had an

1    opportunity.

2           The other issue that we are dealing with is --

3    last year prior to our involvement, the Court granted funds

4    for a private investigator.  We have been meeting with that

5    private investigator.  We have provided him with the

6    reports.  We provided him with a list of 20 witnesses that

7    we intend to call at trial to be interviewed.  He has not

8    started interviewing those 20 witnesses.  There was not a

9    witness list filed with this court up until our

10   involvement, and I believe that we have just recently filed

11   that witness list and I was just given additional witnesses

12   by my client today.

13          So, we are extremely behind the eight ball in

14   this particular case because of the volumes of information,

15   the information that we did not initially receive, the

16   information that we are just currently receiving within the

17   last week.

18          Given that position and my client is in agreement

19   with this, he wishes an adjournment at -- to properly

20   prepare for this trial.  This Court has granted 60 hours --

21   up to 60 hours of time for the private investigator.  I

22   anticipate not only interviewing our witnesses, but going

23   through the 140 witnesses listed in the prosecution's

24   witness list and interviewing some of those individuals.

25          So, given the amount of information, how we are

1  getting this information and how we are putting the case
2  together, we need additional time.

3       I will note that I have spoken to Mr. Reisterer,
4  the prior attorney. He thought that we had his notes and
5  work product. We do not have that. So, he is going to
6  meet at his office and we are going to attempt to locate
7  where that information may or may not be.

8       So, I am -- it is not a situation where I am
9  trying to delay these proceedings any longer; I simply do
10 not have enough time to review the amount of new
11 information, all of the information to be prepared for
12 trial on the 15th.

13       THE COURT: Is it your understanding that -- it
14 is Mr. Clatterbuck that you are using, right?

15       MR. CHAMPION: That is correct.

16       THE COURT: Is it your understanding -- has he
17 started interviewing any of the witnesses yet?

18       MR. CHAMPION: He has not started interviewing the
19 witnesses yet. Again, there was not a witness list, per
20 se, there was a rough draft.

21       Additionally, he had -- went to Mr. Reisterer's
22 office and reviewed some of the reports -- I have provided
23 him with additional information so that he can have the
24 proper information to be able to conduct interviews and do
25 the necessary follow up.

1          THE COURT:  Go ahead.

2          MR. CUSICK: Thank you, your Honor.

3          I can appreciate the extensiveness of the

4    discovery and the many pages that Defense Counsel has to go

5    through.

6          I have received this case, as the attorney

7    general from the Attorney General's Office, we received

8    this case six weeks ago.  I came to meet with the previous

9    prosecutor, John Anderegg, on April 2nd.  Picked up all the

10   discovery -- there were two discovery packets there; one

11   for me and one for Defense Counsel.  Everything that I had,

12   it is my understanding, that Defense Counsel received.

13         There were Defense Counsel and his associate did

14   ask for discovery that we had that I assumed that they

15   would have too because I was told that everything we have

16   they had.  I, nonetheless, we provided it immediately.  I

17   will say that most of the -- almost everything that we did

18   is not even relevant and not something we were even going

19   to admit, but we gave that to them immediately.  We have

20   witnesses coming in from out of state.  We have FBI agents

21   coming from Georgia, the Atlanta area.  And we have an

22   individual coming from Kansas City who is testifying

23   regarding the Sprint phone records.  We have a couple of

24   other witnesses coming from Georgia and Illinois and two

25   federal prisoners that need to be writted out.

1           So I, obviously, have been very busy the past six

2    weeks; I the Defense Counsel has as well.  But we are ready

3    to proceed to trial on May 15th.  The -- I believe that

4    Defense Counsel came on to the case in February, though, I

5    don't know his interactions with the previous Defense

6    Counsel.

7           It is my understanding that he has had almost

8    five or six months to speak with the previous defense

9    counsel regarding this case and receive discovery.  Here we

10   are a week before trial asking for an adjournment.  So --

11          THE COURT:  He was just appointed a few months

12   ago also.

13          MR. CHAMPION: That is correct.

14          MR. CUSICK: I can appreciate that.  I probably

15   misspoke.  What I meant to say is that his interaction with

16   the previous defense counsel on getting information -- he

17   indicated -- Defense Counsel indicated that he is in the

18   process of gathering information from Mr. Reisterer.  He

19   has had a while to do that.  He has had five months to do

20   that.

21          That being what it is, your Honor, we are ready

22   to proceed.  We have witnesses coming and if the Court is

23   willing to grant a very short adjournment -- I would still

24   object to any adjournment, but I certainly think that there

25   has been ample time to prepare for this case and certainly

1    we are ready to proceed.

2             MR. CHAMPION: It is a unique situation for my

3    client and myself in this particular case is because I

4    can't communicate with the former defense attorney; he now

5    works for the Prosecutor's Office in this case.

6             We requested the information. My associate went

7    to his office; Mr. Reisterer was not there at that time.

8    He -- she received two boxes of information from him. We

9    returned to our office. We went through, in detail, all of

10   it and then requested additional information.

11            I appreciate where the prosecution is coming

12   from, but fortunately, they have had the opportunity and

13   they have the resource, up to this point, the former

14   prosecutor and the lead detective who is able to -- who

15   knows the case and who has been involved in the case and

16   able to guide and give insight to the prosecutor. I do not

17   have that opportunity.

18            In essence, in February when we received this,

19   our first conference was February 15th. I still didn't even

20   have a police report or any type of information. So, I am

21   beginning this very complicated -- complicated case from

22   scratch, for all practical purposes. And I, frankly, need

23   additional time to properly defend my client.

24            THE COURT: Let me just indicate, I guess it is

25   an unusual case in that we have had some change over in

1    attorneys.  The defense attorney who was previously
2    assigned to this case is -- thank you -- is now working for
3    the Prosecuting Attorney here who was elected last -- we
4    have a new prosecuting attorney as of the election of last
5    year, who started then in January.  And so, we needed to
6    take him, obviously, off of the -- when he obtained
7    employment with the Prosecuting Attorney earlier this year,
8    we needed to take him off of the defense -- as the defense
9    attorney in this particular case, so we needed to appoint
10   another defense attorney and then we needed to appoint the
11   AG as the prosecuting attorney because certainly he was
12   going then to work with the Prosecuting Attorney's Office
13   here locally.  So, we have new -- two new attorneys on the
14   case.
15          We did have a conference -- I know that I had a
16   conference with Counsel because given the age of the case,
17   we wanted to move things along.  And I did understand that
18   there was a lot of information on the case and so I met
19   with the attorneys to find out how quickly we could set the
20   case, yet give them enough time to get up to speed on all
21   of the documentation and so forth.
22          So, I'll just outline that for the record too.
23          Let me just also make one other comment too in
24   regard to the motion to change venue.  I am also confident
25   that during voir dire, we can sort out those jurors who may

1          have heard something about the case and we do it all the

2          time and see if there is something that they are aware of

3          that came up in the news.  And if so, we address that

4          during voir dire.  So, I am comfortable that that won't be

5          a problem during jury selection.  I'll just add that to my

6          prior comments.

7                     MR. CHAMPION: May I make one comment, your Honor?

8                     THE COURT:  Yes, go ahead.

9                     MR. CHAMPION: In addition, in speaking with the

10         Prosecutor and I am in agreement with this -- to indicate

11         how naive, I guess, we were preparing for this particular

12         trial.  We were anticipating a three day trial.  We are now

13         to the point where we are looking at anywhere from two to

14         four weeks.  That is how ill informed we were coming into

15         the initial settlement conference.  I think that it is the

16         length of time that we are now anticipating for this trial

17         is indicating -- is an indication of how much information

18         and how complex this particular case is.

19                    THE COURT:  I am going to adjourn this for one

20         week.  So right now the trial will start on May 21st, which

21         is a week later than what it was supposed to -- scheduled

22         to start.  Actually it was supposed to start next

23         Wednesday.  Counsel, I do want you to report, though, next

24         Wednesday, so be here for a status conference at nine

25         o'clock, which is the scheduled trial date.  We will sort

1        through any issues at that point.  But my intention is then

2        to start the trial then on May 21st --

3                    MR. CUSICK: Your Honor --

4                    THE COURT:  Any subpoenas can -- should be able

5        to be extended, no one is released from their subpoena.  If

6        there are subpoenas out there, the subpoena should indicate

7        that they need to be here until they are released by the

8        Court.  And so they -- all of those subpoenas should still

9        remain.

10                   Yes.

11                   MR. CUSICK: Your Honor, first you indicated May

12       21st, it is a Tuesday, I believe, so it would be May 22nd,

13       correct?

14                   THE COURT:  I'm sorry.

15                   MR. CUSICK: May 21st is a Tuesday, I believe.  May

16       15th is a Wednesday.

17                   THE COURT:  Oh, I'm sorry.  Yes.  May 21st is a

18       Tuesday.

19                   MR. CUSICK: Okay.

20                   So, it would be May 22nd.

21                   THE COURT:  No, it would be the 21st.

22                   MR. CUSICK: Okay.

23                   THE COURT:  The reason I believe I gave you the

24       May 15 date is because I have a meeting in Lansing on the

25       14th, which is generally when we would start.  So, I think

16

1          that I gave you the firm date of the 15th, knowing that I

2          wouldn't be here next Tuesday.

3                    So, no, we will start with jury selection on the

4          21st, but I do want you here next Wednesday.

5                    And -- Mr. Steel, are you being -- are you here?

6                    THE DEFENDANT: Yes.

7                    THE COURT:  Okay, so you are in Kalamazoo, so we

8          will have you available if we need you next Wednesday then.

9                    So, I will grant a one week adjournment.

10                    All right, so that takes care of that motion.

11                    We have a motion for attorney fees.

12                    Mr. Champion.

13                    MR. CHAMPION: That's correct, your Honor.  As the

14          Court is aware, we have been putting a tremendous amount of

15          time into this particular case.  To this point, we have

16          received $700.00 in fees.  We are anticipating, as the

17          Court is hearing it now, this is going to be a multi-day

18          trial.  We are asking for full attorney fees in this

19          particular case and I suspect in the end that we will be

20          asking for additional fees at that point in time.

21                    THE COURT:  Do you have any position on this?

22                    MR. CUSICK: No, your Honor.

23                    THE COURT:  Let me just indicate, I have a

24          concern because your motion indicates that on or about

25          March 21st, 2013, this Court ordered that Attorney Reisterer

1   has earned all of his fees in this case and granted an
2   additional $700.00 to Attorney Reisterer.  That is not what
3   the Court ordered.  The Court's order indicates.  I
4   authorized an additional payment of $700.00 in this case.
5   Attorney Reisterer, I believe, in his motion was requesting
6   a determination that he had earned all those fees; but I
7   did not make that determination.

8        Pursuant to our court's policy, Attorney
9   Reisterer and is generally the case, we pay attorneys
10  upfront for the -- for a case; so when a new attorney takes
11  over, that is between the attorneys to figure out who is
12  entitled to what.

13       I would hope that I would not have to get
14  involved in that issue.  I am not planning on addressing it
15  here, but that is, in the Court's eyes at this point,
16  between Attorney Reisterer and Mr. Champion, your office,
17  to sort through those payments.

18       And again, I did authorize an additional amount
19  on the case, which was the $700.00, but I did not indicate
20  who should get what at all.  I didn't have enough
21  information to make that determination even if I had been
22  asked to.  And I am looking for my specific order.  So just
23  -- so everyone is clear -- my March 21st, 2013 order
24  indicates that, Defense Counsel indicates in his motion
25  that he wishes the Court to find that he has "earned all

1     fees" in this case and that it "grant additional fees" to

2     the substituting attorney for the work required to handle

3     motions prior to trial.  So, that paragraph referenced what

4     the defense counsel was requesting.

5          The only thing that I ordered was that upon

6     representations of the work completed, the Court will allow

7     additional payment of the $700.00.  I did not indicate how

8     that payment should be made or the prior payment, at all.

9     And again, accord -- you have to go back and look at the

10    court's policies with regard to when you are a contract

11    attorney what happens if someone substitutes.  That is up

12    to you and Mr. Reisterer to sort out.

13         I know that sometimes those issues get sticky,

14    but I guess that I would indicate that if I needed to then,

15    maybe I would look into possibly appointing a third party

16    to mediate that issue, if need be.

17         I understand your concerns about future requests,

18    which may or may not be appropriate.  I'll leave that to

19    you.  Those are my only comments.

20         And -- so if the Court needs to be involved in

21    that, I guess that we'll deal with that later; and if I

22    need further briefings on the appropriate way to do that, I

23    would probably then bring Reister -- Mr. Reisterer back in

24    and let you all file your briefs and go from there.  But I

25    am hoping, Mr. Champion, that you can work with Mr.

19

1    Reisterer on that, but those are my comments on the record
2    with regards to that.
3              I did see that you had some additional -- I think
4    that you had indicated that you had spent a couple of
5    hundred dollars in copy costs.  I will authorize you
6    reimbursement for the copy costs.
7              MR. CHAMPION: Thank you.
8              THE COURT:  I think that there was some issues
9    here with regards to you receiving documentation and
10   certainly I don't want that to hold you back either.  So, I
11   will authorize an additional $200.00 to your law firm.  So
12   we are clear on the record.
13             MR. CHAMPION: Thank you.
14             THE COURT:  Over and above what else has been
15   authorized on the case, for reimbursement for those copy
16   expenses.
17             Private investigator, that has already been taken
18   care of, as far as I am aware of right now.  I don't need
19   to address that any further, but I did want to make clear,
20   given -- and maybe there was a misunderstanding with
21   regards to what was outlined in your motion, but I did not
22   indicate, at all, how those monies were supposed to be
23   paid.
24             So, hopefully I won't hear from you again on that
25   issue, but if I need to, then we will go from there.

1               MR. CHAMPION: Thank you.

2               THE COURT:  Mmm hmm.

3               Anything else then with regards to that motion?

4     Mr. Champion.

5               MR. CHAMPION: No, your Honor.

6               THE COURT:  All right.

7               Then I have Mr. Champion, I have your motion to

8     preclude irrelevant evidence seized during police

9     investigation.

10              MR. CHAMPION: Yes.  In speaking with the

11    Prosecutor in this matter, the Assistant Attorney General,

12    I believe that much of this is not going to be admitted.  I

13    guess my only question would be what issues would be

14    addressed --

15              MR. CUSICK: Your Honor, I can go line by line.

16              THE COURT:  Okay.

17              MR. CUSICK: Indicating what I am objecting to.  I

18    just received this Monday, but -- Monday afternoon, but --

19              THE COURT:  Okay, let me do it this way, because

20    I think that it might be easier if you then meet and

21    determine what is coming in and what is not.  I can tell

22    you right now, I can't make a ruling based on this.  I have

23    no idea what is in these records, so I wouldn't be able to

24    make a determination without seeing those items and/or,

25    more likely, during the trial before they are presented to

1    the jury then.

2             So, maybe to speed things up, maybe we can just -

3    - we'll -- I'll let you re-notice this if necessary, after

4    you have had an opportunity to speak and determine what

5    really -- you really plan to bring in.  Then, Mr. Champion,

6    if there is issues that we need to address before the

7    trial, maybe we can talk about those next week too, to see

8    if -- if we need to bring this back on the record or not or

9    if you have resolved everything.

10            But I can't -- I can't tell you right now, just

11   looking at AT&T records whether they are relevant or not --

12            MR. CUSICK: I understand --

13            THE COURT:  -- without hearing the case.

14            MR. CUSICK: I understand, your Honor.  Just to be

15   clear, after I talked with Mr. Champion about things that

16   we will concede -- the People will concede, I assume that

17   there will still be a motion.  So, if you'll notice it up,

18   we'll respond if needed.  Is that correct?

19            THE COURT:  Okay.

20            MR. CHAMPION: And that was part of our concern.

21   I note that it is rather entailed what we are asking to be

22   excluded, but since trial was quickly --

23            THE COURT:  Approaching.

24            MR. CHAMPION: -- a motion was necessary.  Some of

25   these records we had just received within the week, so that

1    is why we were filing this particular motion.

2         THE COURT:  Okay.  And again, I'll just indicate

3    that based on this, I can't -- I don't have a ruling

4    because I haven't seen the records.  But let me also

5    suggest, Counsel, that you can notice out the notice, maybe

6    for next Friday, if necessary, that is before trial on the

7    21st.  And I know that we will have an opportunity at the

8    status conference, though, in chambers on Wednesday,

9    obviously.  Okay.  So, I won't address that motion at this

10   time then.

11        I have a -- I believe that takes care of all of

12   your motions, is that correct Mr. Champion?

13        MR. CHAMPION: That is correct.

14        THE COURT:  So we will move to the 404B issue.

15        MR. CUSICK: Your Honor, just -- as stated in my

16   motion, the motive in this case, the People's theory of the

17   case, is that the Defendant killed Milo Conklin, the

18   victim, because he believed that Milo Conklin stole --

19   broke into his house and stole drugs from him.  And so it

20   is part and parcel of -- for our theory of the case to show

21   that the Defendant was selling drugs to Milo Conklin --

22   that he felt that Milo Conklin broke into his house and

23   that was the very motive of him going to kill Milo Conklin.

24   There is case law, your Honor, indicating that motive is

25   always relevant, highly relevant.  And I would just ask --

23

1    we are not offering it to show that the Defendant has a

2    propensity to commit murder; we are not offering it to show

3    that he is a violent or not a law abiding -- law abiding

4    citizen.  We are simply offering it to show that his -- his

5    motive and his scheme into why he killed Milo Conklin.  And

6    there are specific acts in people who knew both Milo and

7    the Defendant, who can testify about the relationship and

8    testify about prior acts of the Defendant in selling drugs

9    in that community and why he wanted to kill the victim.

10        MR. CHAMPION: We are objecting to that

11    information, your Honor.  Even in their motion it is --

12    they are basing the motive on rumors with the community and

13    then we are going to specific acts, bad acts, 404B

14    evidence, that being the selling of drugs in this case to

15    somehow prove that there was this rumor or -- or this

16    speculation that my client had a motive to do certain

17    things.

18        The only purpose to bring in and to specifically

19    hear the times that the Kalamazoo Enforcement Team

20    purchased drugs would be to show that my client is of a bad

21    background or a bad person.  It doesn't go to his motive.

22    It doesn't go to whether he had any information about this

23    rumor that was going around throughout the community.

24        So, based upon what they are actually asking the

25    Court to do, I would object that it be allowed to introduce

1          the prior bad acts or alleged bad acts under the 404B.

2                    MR. CUSICK: If I could just expand on that very

3          briefly, your Honor.

4                    THE COURT:  First of all, it -- they are not

5          based on, necessarily rumors.  We -- the way we are going

6          to offer this evidence is through testimony of the

7          Defendant making statements as to, I am going to kill Milo

8          Conklin -- something to that extent.  And also he'll

9          testify about the relationship between Milo Conklin and the

10         Defendant which is basically a relationship based around

11         drug sales.  And it is pretty hard to prove a case and let

12         the trier of fact know the complete circumstances between

13         the Defendant and victim if we can't talk about how they

14         know each other.  Or how the witnesses know the -- the

15         main witnesses in our case, how did they know the

16         Defendant.  Many witnesses will say that they know the

17         Defendant because they bought drugs from him.  And that is,

18         I think, relevant to the case and relevant, especially, in

19         regards to Milo Conklin, relevant to why the Defendant

20         killed Milo Conklin.

21                   It will come out, your Honor, that on April 3rd of

22         2011, the Defendant's house was broken into and it will

23         further come out -- it is the People's position that

24         whether or not it was the victim who actually committed

25         that breaking and entering, the Defendant believed the

1    victim broke into his house to steal drugs from him;

2    therefore creating motive to kill him in the first place.

3              So once your Honor -- highly relevant and I will

4    be -- this is going to be extremely prejudicial, certainly,

5    there can be a jury instruction indicating that it can't be

6    used for propensity purposes, but just to let the trier of

7    fact understand the circumstances that surrounded the

8    shooting.

9              THE COURT:  I will allow evidence or testimony

10   about the fact that the Defendant's house was burglarized

11   and that it -- it sounds like there is going to be

12   testimony coming in that the Defendant believed that that

13   was -- Milo Conklin was the one involved in that or one of

14   the individuals involved in that.  Is that accurate

15   Counsel?

16             MR. CUSICK: Yes, your Honor.

17             THE COURT:  Okay.

18             And your motion addresses that there is some --

19   the testimony might be that Milo Conklin was breaking into

20   homes to steal drugs and -- is that tied into that, is that

21   what you are indicating?

22             MR. CUSICK: Yes, your Honor.  It is more of not

23   proving whether or not that is true -- if the Defendant

24   believed that Milo Conklin was stealing from him and broke

25   into his house to get drugs and it may come out that he had

1    broken into other houses as well.

2         THE COURT:  Okay.

3         All I can say is, we need to be very careful.  So

4    before we get into these -- the testimony and the witness's

5    testimony before the jury, you need to make sure that you

6    are going to address this with me outside of their

7    presence.

8         Your -- for instance, in paragraph seven of the

9    People's motion to admit the evidence.  There is a whole

10   slew of KVET purchases.  I am not going to let all of that

11   in there.  I mean, I think that we can present this in a

12   general sense, but I think, you know -- I am not going to

13   get into every single, certain, specific time that you are

14   alleging that KVET bought from the Defendant.  I think that

15   is -- that would be more prejudicial than probative.

16        I think that if you are going to generally -- put

17   the general idea out there to establish the motive or the

18   scheme, that is appropriate.  But again, we need to limit

19   that.  So, I don't know who it is that you are going to use

20   to try to present that, but certainly we need to discuss

21   that before that is presented to the jury so we can limit

22   that appropriately.  I don't know who all your witnesses

23   are and what the plan is at this point, but I will allow

24   that in a limited way, I will indicate.

25        I don't know why we need to get into, depending

1    on the witness, the relationship with the Defendant is --
2    it sounds like you are going to present some evidence that
3    maybe they knew him from buying drugs.  That may or may not
4    be appropriate.  I don't know until we get -- the trial
5    gets moving and if we need to tie that in or not.
6    Hopefully not, but I can see that there might -- it might
7    be appropriate under certain circumstances.  So, I won't
8    allow that, again, without you bringing that to the Court's
9    attention ahead of time.  But I don't expect every witness
10    to get on the stand and testify, I buy drugs from the
11    Defendant or whatnot.  We need to taper that too.  So, that
12    may be appropriate.  I am not going to give you a ruling on
13    that specifically without -- until the time comes for trial
14    when we see how the testimony comes in.
15            It may also be more prejudicial than probative
16    and that is why we need to address that at the time of
17    trial.
18            So, I think that sums it up.  I will, again,
19    allow you to bring in evidence, if you can tie it in with
20    regards to the April 3rd or 4th incident at Mr. Steel's
21    residence and the victim's -- Milo Conklin's -- the alleged
22    victim's involvement in that or as far as Defendant's
23    believe of his involvement in that.  I can see that would
24    be relevant under certain circumstances to go to motive, so
25    I am granting that request, but it has got to be done in --

1    I can't tell you without hearing the testimony and who the
2    witnesses are going to be, the appropriateness of that.
3    But again, I don't expect all of the incidents to come in
4    that are outlined in paragraph seven of your motion.
5              Any questions on that right now?
6              MR. CUSICK: I understand, your Honor.
7              MR. CHAMPION: No, your Honor.
8              THE COURT:  We need to see how that comes in at
9    the time of the trial and we can make those rulings
10   accordingly.  But -- okay, anything else on that motion
11   then?
12             MR. CUSICK: Not on that motion.  There are a
13   couple of other things, your Honor, that I would like to
14   bring to the Court's attention.
15             I just spoke with Defense Counsel and I would
16   just like to get a stipulation on the record.  One of the
17   counts the Defendant is charged with is felon in possession
18   of a firearm and we have a stipulation that he was -- did
19   have a felony conviction and as a result was not eligible
20   to carry a firearm on April 24th of 2011.  I can prepare a
21   stipulation, obviously, I won't indicate on that
22   stipulation what the Defendant was convicted of, but I just
23   want to place the stipulation on the record.
24             THE COURT:  So that is count three that we are
25   talking about?

1          MR. CHAMPION: That's correct.

2          THE COURT: And there is an agreement that he did

3    have a prior felony that would prevent him from being able

4    to possess a firearm. We are just not indicating what that

5    --

6          MR. CHAMPION: That's correct.

7          THE COURT: -- prior conviction is, we will just

8    indicate that he had the prior conviction on whatever date

9    that satisfied that requirement. That would be great. If

10   you could prepare the stipulation on that then, we can

11   determine later if we need -- how to address the jury

12   instructions then on that.

13         MR. CUSICK: Thank you, your Honor.

14         Just two more things and -- and one of them I

15   indicated to Defense Counsel regarding our witness list.

16   Charles Thomas is a witness. We do not intend to call him,

17   so we would move to strike him from our witness list and we

18   will file a new witness list. And I would ask to add Linda

19   Davis, she was on our initial list that we filed, what, a

20   month ago. And I would ask that she be added once again.

21         THE COURT: So you are planning on filing an

22   amended list -- witness list taking out -- taking off

23   Charles Thomas and adding Linda Davis.

24         MR. CUSICK: Yes.

25         THE COURT: You understand that, Mr. Champion?

1          MR. CHAMPION: Yes.  My client just informed me

2     that he would like Mr. Thomas as a witness, so we will be

3     amending ours and (inaudible, lowered voice) to locate Mr.

4     Thomas.

5          THE COURT:  Okay.

6          So, everyone seems to be okay with how that is

7     being handled and that is fine then.

8          MR. CUSICK: And one more thing, your Honor, and I

9     spoke with Defense Counsel about this.  There are two

10     witnesses one is Mark Sprague and the other is Paige

11     Bowers.  And I don't want to go into too detail -- too much

12     detail here, your Honor, but they will testify that they

13     broke into a home on January 15, 2011 and that -- from that

14     break in, they received a 40 caliber -- 40 caliber H&K

15     handgun.  They turned it over or sold it to a Walter

16     Johnson, a witness in the case, who will testify that he

17     gave that to the Defendant.  So, obviously that will be

18     relevant testimony -- I would like to present the Court

19     with an order of immunity regarding Mark Sprague and Paige

20     Bowers, that what they say in this courtroom regarding that

21     incident can't be used against them.

22          I have prepared it, your Honor.  I have also

23     prepared a petition, if the Court would like to look over

24     it and then make your ruling, that is --

25          THE COURT:  I'll look over those after the

1    hearing today.

2            MR. CUSICK: Okay.

3            THE COURT:  That's fine.

4            MR. CUSICK: Can I -- can I approach, your Honor?

5            THE COURT:  Yes.

6            You are going to give me those so that I can keep

7    track of those and not you.

8            MR. CUSICK: And I apologize, can I sign those

9    real quick?

10           THE COURT:  Yes.  Do you need a pen?  Here.

11           Anything else then, Counsel, that we need to

12    address?  That covers all of the motions?

13           MR. CHAMPION: I believe that it does, your Honor.

14           THE COURT:  Any other issues that we need to

15    place on the record at this time?

16           MR. CHAMPION: Not at this time.

17           MR. CUSICK: Charles Thomas will have to be

18    writted out of the State prison, so -- I will work with

19    Defense Counsel with writting him out.

20           THE COURT:  Otherwise, I'll sign your writ too,

21    but if you can work that out, that's great.

22           MR. CHAMPION: Thank you.

23           THE COURT:  Okay.

24           So, Counsel, next Wednesday, you are going to be

25    here just for a status.  Mr. Steel is local, so if we need

1    to bring him over in the afternoon, we can do that then;

2    but otherwise, I just want to know where you are at with --

3    I don't think there were any other issues that were going

4    to pop in -- pop up based on what we talked about today and

5    if we need to address those on the record, then we can

6    bring Mr. Steel over in the afternoon and address that.

7    And sounds like we might have some motions or a motion next

8    Friday. We'll just move the settlement conference to next

9    Friday too, so the settlement conference -- the final

10    settlement conference will then be May 17 and the trial

11    will start on May 21st. Your subpoenas -- everyone is still

12    under subpoena. Any subpoena that have been sent out.

13    Anything else that we need to address, Counsel?

14         MR. CUSICK: Your Honor, whenever I say that there

15    is nothing else, it seems like something pops up. But

16    there is one witness, Kristine Wilkerson, she lives in

17    Georgia. She can testify that she was living with the

18    Defendant when he was on the run and hiding from

19    authorities. And I was wondering if it would be possible -

20    - she has been contacted, the subpoena has been sent -- for

21    telephone testimony regarding her?

22         THE COURT: Any objections --

23         MR. CUSICK: Teleconference.

24         THE COURT: Let me just indicate how our

25    teleconference system works, also. We have a monitor here

33

1    and I don't know, by the time of trial we might even get a

2    bigger monitor; they are working on getting that up.  It is

3    a real time situation and so Mr. Steel, for your reference

4    too, just so that you know that too, they will appear on

5    the screen and they can see us, generally, if they have got

6    the right accommodations there.  And so any documentation

7    can usually be done by way of email also so they have that

8    too.  But they should be able to see us and we should be

9    able to see them, just so that you understand that if

10   everything is working properly and if it is not, then put

11   it on later.  But that is the way that usually works.  So

12   Mr. Champion, do you have any objections to her appearing

13   then?

14           MR. CHAMPION: My client indicates that he wishes

15   the witness to be here.

16           THE COURT:  So, we have an issue with that that

17   we need to address and we might need briefings on that

18   then.  My recollection is that the new rule came through,

19   but I have to double check to make sure and read that.

20   There was a rule they were working on that we were

21   addressing that.  I don't know if it has been changed yet

22   or if it is a proposed rules change.

23           MR. CHAMPION: Your Honor, my client has

24   reconsidered and he has no objection to her appearing by --

25           THE COURT:  So you have reconsidered, Mr. Steel -

34

1      -

2                    THE DEFENDANT: Yes.

3                    THE COURT:  You don't want her here live and that

4      is okay.  Is that what you are saying?

5                    THE DEFENDANT: Yes.  Yes.

6                    THE COURT:  All right, I appreciate that, that

7      takes care of that issue then.

8                    Anything else?

9                    I'm sorry, what was her name again?

10                   MR. CUSICK: Kristine Wilkerson.

11                   THE COURT:  Kristine Wilkerson.  Okay.

12                   Anything else?

13                   MR. CUSICK: No, your Honor.

14                   MR. CHAMPION: Not at this time.

15                   THE COURT:  Fabulous.  We will see everyone next

16     week.

17                   MR. CUSICK: Thank you.

18                   MR. CHAMPION: Thank you.

19                   THE COURT:  Yes, we will cancel the settlement

20     conference for Friday then and it will be a week from

21     Friday and trial will be the 21st.

22                   MR. CUSICK: Your Honor, we will be here in court

23     May 15th, correct?

24                   THE COURT:  You will be here on Wednesday when

25     you are supposed to be here for trial; just for a status

1      with the attorneys.  And if need be --

2               MR. CHAMPION: We are not here on the 10th?

3               THE COURT:  No, that is Friday, that is off.

4               MR. CUSICK: Or the 17th?

5               THE COURT:  Yeah, the 17th then is the settlement

6      -- the final settlement conference that was set for this

7      Friday.  I'll just move it back a week, so it is -- we

8      always have our settlement conferences the Friday before

9      the trial.

10              MR. CUSICK: Your Honor, what time would that

11     settlement conference be?

12              THE COURT:  That will be at 1:30.

13              MR. CUSICK: Is it possible for that --

14              THE COURT:  Do you want to just hold the

15     settlement conference on Wednesday instead?

16              MR. CUSICK: If possible, yes, your Honor.

17              THE COURT:  Mr. Champion?  Since you are coming

18     here next Wednesday, I can hold the settlement conference

19     that date.

20              MR. CHAMPION: That's fine.  Can we make sure that

21     my client is here for that date also?

22              THE COURT:  Yeah and we indicated anyway that we

23     could bring him over in the afternoon if need be.  So, I'll

24     meet with you in the morning, Counsel.  We'll just hold the

25     settlement conference at 1:30 on the 10th -- on the 15th

1        then.

2                    MR. CUSICK: Thank you for your cooperation.

3                    MR. CHAMPION: Thank you.

4                    THE COURT:  Okay.  Good.

5                    Thank you, Counsel and you both have orders to

6        prepare then, correct, based on the Court's ruling?

7                    MR. CUSICK: Yes, your Honor.

8                    THE COURT:  Mr. Champion has more orders.

9                    All right.

10                    (At 3:38 p.m., court is in recess)

11

12

13   STATE OF MICHIGAN    )

14                       )
     COUNTY OF KALAMAZOO )

15

16   I certify that this transcript consisting of 37 pages is a

17   complete, true, and correct transcript of the hearing held in

18   this case on May 8, 2013.

19

20

21

22                                *Connie L Branch* (signature)
     February 22, 2014

23                            Connie L. Branch CER 5624
                              PO BOX 19563
24                            Kalamazoo, MI 49019
                              (269) 377-7170
25

37