F I L E D

Dec 26, 2013

9TH JUDICIAL CIRCUIT
COUNTY OF KALAMAZOO
KALAMAZOO, MICHIGAN

1      STATE OF MICHIGAN

2      9TH CIRCUIT COURT—TRIAL DIVISION

3

4   THE PEOPLE OF THE
    STATE OF MICHIGAN

5

       v                                    File No. 2011-1983 FC

6

    SAMUEL STEEL, III,

7

            Defendant.

8

9

10                Jury Trial - Volume I of VII
       Before Honorable Pamela L. Lightvoet P47677, Circuit Judge

11           Kalamazoo, Michigan — Tuesday, August 6, 2013

12

13

14   APPEARANCES:

15   For the People:        Paul John Cusick P70895
                            Assistant Attorney General
16                          Michigan Department of Attorney General
                            Criminal Division
17                          3030 West Grand Boulevard, Suite 10-361
                            Detroit, Michigan 48202
18                          (313) 456-0089

19   For the Defendant:     Robert A. Champion P52726
                            124 East Bridge Street, Suite C
20                          Plainwell, Michigan 49080
                            (269) 685-9220

21

    Recorded by:           Digitally recorded

22

    Transcribed by:        Brenda K. Foley CER 4956
23                          Foley Transcription Service
                            8165 Valleywood Lane
24                          Portage, Michigan 49024
                            (269) 303-9680
25                                * * * * *

1

TABLE OF CONTENTS

PAGE

Jury panel sworn . . . . . . . . . . . . . . . . . . . . . . . 15

1      Kalamazoo, Michigan

2      Tuesday, August 6, 2013 - 10:01 a.m.

3          THE CLERK:   The court calls the matter of People of

4      the State of Michigan versus Samuel Steel, III, case number

5      C11-1983 FC.

6          Parties, please state appearances for the record.

7          MR. CUSICK:   Good morning, your Honor.

8          Paul Cusick, Assistant Attorney General, on behalf

9      of the People.

10         MR. CHAMPION:   May it please the Court,

11     Robert Champion appearing on behalf of Samuel Steel, who's

12     present in court.

13         THE COURT:   Okay.  Counsel, we're here for jury

14     selection today, and the trial is actually going to start on

15     the 27th.  We did have some discussions, and I want to put a

16     couple things on the record.

17         We were scheduled to have a settlement conference on

18     Friday.  We did contact the attorneys.

19         It's my understanding that there was no offer, and

20     so I did indicate to Counsel—

21         Well, first of all, is that correct, Counsel?  Yes?

22         MR. CUSICK:   Yes, your Honor.

23         THE COURT:   Okay.  And that's your understanding,

24     also, Mr. Champion?

25         MR. CHAMPION:   That's my understanding, also,

3

your Honor.

THE COURT: Okay. So I did indicate to Counsel, then, if that was the case, you didn't need to come on Friday for the typical settlement conference and I would extend everything to today, too.

So my understanding is there's still no offer; is that correct?

MR. CUSICK: That's correct, your Honor.

THE COURT: Okay. And we did have some discussions, then, in chambers. And so I just wanted to indicate a couple things for the record.

Right now, given the expected length of the trial, we're picking the jury today. We're not going to swear them in until they return on the 27th. We're selecting 16 individuals right now. We'll see, when they return on the 27th, if we want to keep all 16 or if we want to release two at that time and just proceed with 14.

My understanding is that the expected length of the trial will be two weeks. I'm going to tell the jurors that we're going to need about three weeks of their time to cover deliberations and any delay.

I will indicate, too, we only have a three-day work week in there because we have Labor Day. And then I need—Tuesday will then be my Monday where we do sentences and so forth, so we would only go Wednesday through Friday on that

4

week. So I am concerned about that time—or that week, too. So we'll give them an extra buffer, and I'll just reference that we expect it'll be a two to three-week trial.

I did outline to Counsel the fact that, when the jury comes down, you will get the random list, so you'll know who's coming next.

And I think you're aware of that, Mr. Champion.

Mr. Cusick, I don't—You haven't had a trial in the court yet, so that's how we do it here. And my understanding is that Mr. Champion explained that process to you.

As far as peremptories, I did also indicate to you, Counsel, it doesn't matter to me if you release, you know, more than one at a time. Then, when new jurors are chosen, I would just request that you keep your questions to the new jurors, but you can excuse anyone peremptorily, even if you've passed up on them before, obviously.

My understanding is there's no objection to the way that the Court handles that process. And I do switch from prosecuting attorney to defense attorney when the new jurors are selected. So Mr. Champion will stand up and begin the voir dire when we replace any jurors.

And you all understand that, yes?

MR. CUSICK: Yes, your Honor.

MR. CHAMPION: Yes, your Honor.

THE COURT: And there's no objection to the way the

5

1    Court does that?

2              MR. CHAMPION:   No objection.

3              MR. CUSICK:   No, your Honor.

4              THE COURT:   I did also indicate that we—when we get

5    down to two or three jurors left, if you want me to just

6    replace jurors one at a time, just let me know by way of a

7    bench conference—Ask to approach, or whatnot.—and I can

8    certainly do it that way.  But it does, I think, move things

9    along a little bit quicker.

10             We have a couple things to address—I know

11   that.—before we begin the trial.  I don't—My understanding is

12   we don't need to address anything—any motions or anything

13   right now before jury selection, and then we'll plan on

14   addressing those today or tomorrow when we're done with jury

15   selection.

16             Is that correct, Counsel; or is there anything—

17             MR. CUSICK:   Yes, your Honor, per our discussion.

18             MR. CHAMPION:   That is correct, your Honor.

19             THE COURT:   All right.  So, with that, then, is

20   there anything else we need to place on the record at this

21   time?  No?

22             MR. CUSICK:   No, your Honor.

23             THE COURT:   Okay.  I did ask that you have your

24   list of potential witnesses ready.  I will ask you to read

25   those to the potential jurors.  And, again, just make sure you

include on that list anyone whose name might come up, even if they're not going to testify. That way we know if anyone knows them.

Mr. Steel, I will indicate that there will be an occasion where I will introduce you and Mr. Champion. I would ask that you just stand when I do that so the jurors can see you, also. Sometimes they might recognize your face as opposed to just your name. That's why—

THE DEFENDANT: Yes.

THE COURT: —we do it that way.

We do stand every time the jury enters or exits the court.

And so, Counsel, I will give them the standard instructions, but I'm not planning on reading the preliminary instructions either until they return the 27th.

Anything else, then, that you can think of? No.

MR. CHAMPION: No, your Honor.

MR. CUSICK: No, your Honor.

THE COURT: And just a reminder—

You stole my copy.

—make sure you speak up, please, Counsel.

I will also indicate that court A is not having a case, so we did combine the panels and we should have about 93 individuals from what I understand. So, if we go through those individuals, for whatever reason, we always have

```
 1   tomorrow where we can bring more in, so—

 2              MR. CHAMPION:   Do we have all the questionnaires,

 3   your Honor?

 4              THE COURT:   I hope so.

 5              THE CLERK:   I think we get all of them anyway.

 6              MR. CHAMPION:   Oh, we did.

 7              THE COURT:   Yeah, I think you get all of—Yeah,

 8   that's true.  I don't think they're separated when you get the

 9   initial packet, so you should.

10              Well, at least it's cool in here today—You never

11   know what the temperature is going to be in here.—until we get

12   93 more people in here.

13              MR. CUSICK:   We need more lights.

14              THE COURT:   More lights?

15              MR. CUSICK:   It seems kind of dark.

16              THE CLERK:   There you go.

17              THE COURT:   You got a spotlight on you.

18              Actually, it is overcast today.  We could probably

19   open up the blinds.  But there's usually issues with—

20              THE CLERK:   It gets in their eyes.

21              THE COURT:   Yeah, that's why we just keep them

22   shut.

23              MR. CUSICK:   It's a nice room.

24              THE COURT:   We just don't want everyone to know we

25   keep them until 10:00 o'clock at night and hold them hostage
```

1    here, so that's why we keep the blinds shut.

2               MR. CHAMPION:   Is the jury on its way down or—

3               THE CLERK:   Yeah, she's doing roll.

4    . . . (inaudible)

5               THE COURT:   You need something?

6               MR. CHAMPION:   I was just going to step out for a

7    minute.

8               THE COURT:   You can, probably.

9               Just be careful if they're in the hallway.

10              (At 10:14 a.m., Mr. Champion exits courtroom and

11              returns at 10:15 a.m.)

12              All set?

13              All rise.

14              (At 10:16 a.m., jury panel enters courtroom)

15              Just please be careful of the steps.  When you get

16   over to this side, there are some steps, too, and it's dark.

17   So I just don't want anyone falling.

18              Go ahead and have a seat.

19              You may be seated.

20              Good morning, ladies and gentlemen.

21              We do appreciate your patience.  Sometimes things go

22   on down here, and we can't always explain to you what's going

23   on.  So we do appreciate your patience with us this morning.

24              My name is Judge Pam Lightvoet.  I'm one of the four

25   circuit court judges here in this building; and, on behalf of

                              9

1  everyone, I do want to welcome you to the Ninth Circuit Court

2  in Kalamazoo.

3          I'm going to read to you some jury instructions;

4  but, before I do that, I have a couple things to address.

5          First of all, it is very hard to hear in this court.

6  And I think it depends on where you're seated, too.

7  Sometimes, in some areas, it's a little bit more difficult

8  than others.

9          We do have audio devices.  We have devices that work

10  with hearing aids and just devices that you put over your

11  head—just headsets.  They seem to be quite helpful for folks.

12          Is there anyone here who's having a hard time

13  hearing me who would like to try one of those devices?

14          All right.  We do have one hand that's up.  Raise

15  your hand if anyone else wants to try one of those devices.

16          No other hands that I see.

17          All right.  So I'm going to just start talking here

18  and—

19          I can't see her, though.  I don't know if—

20          Thank you.

21          I'll just keep talking and see if that's helpful.

22          Is that helpful, ma'am?  Okay.

23          UNIDENTIFIED JUROR:   Yes.

24          THE COURT:   Great!

25          And no other hands are raised.

1          If you would just please double-check and make sure
2     all cellphones and other electronic equipment is turned off, I
3     would greatly appreciate it.  It is very disruptive when those
4     go off for the parties and the attorneys, so—and the other
5     jurors.  So if you'll just double-check those.

6          It is very important when we go through this process
7     that you're not looking at your phone.  We do have Wi-Fi in
8     the building, but you just need to make sure you're not
9     texting or looking up anything online.  We do need to make
10    sure you're paying attention to what's going on here with the
11    trial.  So I do appreciate it if you would just turn those
12    devices off; and, certainly, when we break, then you can use
13    those devices.

14         All right.  Our courtroom is set up with a system of
15    cameras, as you can see, on the wall; and there are
16    microphones.  So we are recording everything.  We don't have a
17    court reporter here that's transcribing everything.  Whoever
18    is speaking is on camera, except for there are no cameras that
19    are facing the jury box.  So, when we get to the point where
20    we're selecting jurors for the jury box, your faces are never
21    on—on camera, just so that you are aware of that.

22         There are some microphones in the jury box, also, at
23    the podium and at counsel's table.  They're the black boxes in
24    front of me, and you can see throughout the tables and so
25    forth.

As we go through the process, there will be occasions where we're talking to all of you in the court, too, so—or some of you, I should say.  But you do need to make sure that you speak up so that everyone in the court can hear you, so that our recording system picks up what you're saying; and, again, especially, when we get to the point where we're asking you questions, if you're sitting back—in the back of the courtroom, there are no microphones back there.  We do need to pick up what you're saying.  So please make sure you speak up.

If, at anytime, you cannot hear what's going on or what's being said, please make sure you raise your hand and wave it and I'll remind everything—everyone to speak up.  Just, as we go through trials, people's voices just fall.  And I know it's very difficult to hear sometimes.  So just a reminder to everyone to make sure you speak up.

Okay.  I am going to read to you some jury instructions, so please listen carefully, ladies and gentlemen.

I know that jury duty may be a new experience for some of you.  Jury duty is one of the most serious duties that members of a free society are asked to perform.  Our system of self-government could not exist without it.

The jury is an important part of this court.  The right to a jury trial is an ancient tradition and part of our heritage.  The law says that both a person who is accused of a

12

crime and the prosecution have the right to a trial, not by one person, but by a jury of 12 impartial persons.

Jurors must be as free as humanly possible from any bias or prejudice or sympathy for either side. Each side in a trial is entitled to jurors who keep open minds until the time comes for you to decide this case.

A trial begins with jury selection, and the purpose of this process is to obtain information about you that will help us choose a fair and impartial jury to hear this case. During jury selection, the lawyers and I will ask you some questions. This is called the voir dire process.

The questions are meant to find out if you know anything about the case, and we also need to know if you have any opinions or preliminary experiences that may influence you for or against the prosecution or the defendant or any of the witnesses who may be called to testify in this case. One or more of these things could cause you to be excused in this particular case, even though you may be otherwise qualified to serve as a juror.

Sometimes the questions may probe deeply into your attitudes or beliefs or experiences. They are not meant to be an unreasonable prying into your private life. The law simply requires that we get this information so that an impartial jury can be chosen.

If at anytime you do not hear or understand a

1   question, again, please raise your hand and let us know so I

2   can have the question or the answer repeated.  If you do

3   understand the questions, you should answer them truthfully

4   and completely.  Please do not hesitate to speak freely or let

5   us know if there's anything that you believe we should know.

6           And I will also indicate that, as we go through this

7   process, sometimes folks just aren't comfortable speaking out

8   in open court; and, if that is the case, please let us know

9   and I can bring you to the bench and we can have a bench

10  conference with the attorneys.  So just please let us know if,

11  at anytime, you don't feel comfortable speaking out loud.

12          During jury selection, you may be excused from

13  serving on the jury in one of two ways.  First, I may excuse

14  you for cause—That is, I may decide that there is a valid

15  reason why you cannot or you should not serve as a juror on

16  this particular case.—or a lawyer from one side or the other

17  may excuse you without giving any reason for doing so; and

18  this is called a peremptory challenge, and the law gives each

19  side the right to excuse a certain number of jurors in this

20  way.

21          If you are excused, you should not feel bad or take

22  it personally.  As I explained before, there may be

23  something—or simply something that causes you to be excused

24  from this particular case.

25          Ladies and gentlemen, in a moment I will ask you to

14

stand and to raise your right hand and to swear to answer

truthfully, fully, and honestly all the questions that you

will be asked about your qualifications to serve as a juror in

this case.  If you have a religious belief against taking an

oath, you may, instead, affirm that you will answer all the

questions truthfully, fully, and honestly.

Please remember we need a loud, verbal response.  We

are recording your answer and your oath.

Ladies and gentlemen, please stand and raise your

right hand.

THE CLERK:  Do each of you solemnly swear or affirm

that you will truthfully and completely answer all questions

about your qualifications to serve as jurors on this case?

JURY PANEL:  Yes.

THE CLERK:  Thank you.

You may be seated.

All right.  Ladies and gentlemen, I'd like to

introduce to you the members of my staff.  You've already met

Ms. Yasmine Wint.  She's an attorney.  She's my law clerk.  So

she and I contact each other by way of the computer about

other cases, other things going on.  And she will periodically

coming in—come in and out of the courtroom.  She might hand me

information or whatnot.  Please just make sure you pay

attention to what's going on with the trial and don't worry

about anyone else coming in or out of the courtroom.

15

1    She's also responsible for you outside of the court,
2  so she will always bring you together, as a group, into the
3  court.

4    Sometimes we have to handle things outside of your
5  presence, according to the law. We have a book of rules here
6  we have to follow. So sometimes we're addressing things that
7  you just can't hear for various different reasons. So it's
8  very important that you don't ever walk into the courtroom on
9  your own. Please make sure you don't ever do that. Again,
10 she'll always escort you in and out of the court.

11    And, if you have any questions outside of the
12 courtroom, she'd be happy to answer them if she can or pass
13 the information along to us.

14    To my right is Ms. Sherri Johnson. And she, also,
15 sometimes comes in and out of the courtroom; and we
16 communicate, again, by e-mail. And she's busy typing on the
17 computer and working on other matters, too. So, again, just
18 make sure you're paying attention to what's going on with the
19 court—or with the trial.

20    And I will also indicate that trials are open to the
21 public. So, when we begin the trial, there might be folks
22 that are coming and going. And, again, just make sure you're
23 paying attention to what the attorneys are addressing and the
24 witnesses, and don't worry about who's coming in and out of
25 the court.

1          This is a criminal case, and there are four counts

2    that I'm going to read to you—or charges:

3               Count one, the title is homicide open murder;

4               Count two, the title is weapons felony firearm;

5               Count three, the title is weapons firearms

6    possession by felon; and

7               Count four, the title is weapons felony firearm.

8               And I'll describe those for you in a little bit more

9    detail later.

10              The charge or counts have been brought against the

11   defendant.  His name is Samuel Steel, III.  He's seated to my

12   right with his attorney Robert Champion.

13              If both of you would please stand.

14              MR. CHAMPION:   Good morning.

15              THE COURT:   Thank you.

16              And the lawyer for the State of Michigan is

17   Assistant Attorney General Paul Cusick.

18              If you would please stand, sir.

19              MR. CUSICK:   Good morning.

20              UNIDENTIFIED JURORS:   Good morning.

21              THE COURT:   Now I'm going to have the attorneys

22   list the potential witnesses who will be called to testify in

23   this case.  It's not necessary that every single one of these

24   individuals will, in fact, testify; but the potential

25   witnesses are going to be identified.  Please listen carefully

1   to their names and then, in a moment, I'm going to ask if any
2   of you know or think you may know any of these witnesses who
3   will be named or the attorneys Mr. Cusick or Mr. Champion or
4   Mr. Steel.  So please listen carefully.
5           Mr. Cusick, I'll have you start, please.
6           MR. CUSICK:   Thank you, your Honor.
7           The possible witnesses that will testify in behalf
8   of the People:
9           Brian Beauchamp, who is the officer in charge of
10  this case, seated to my left,
11          John Bechinski,
12          Michelle Bennett,
13          Matthew Bombich,
14          Michael Bork,
15          Paige Bowers,
16          Steven Brown,
17          Michael Burritt,
18          Ron Campbell,
19          Alesha Caper,
20          Melvin Carmouche,
21          Tracy Cochran,
22          Barb Compton,
23          Rob East,
24          Megan Erickson,
25          Sheila Goodell,

```
 1              Mike Hecht,

 2              Matt Huber,

 3              Ann Hunt,

 4              Roderick Ivey,

 5              Quazae Jackson,

 6              Pat Johnson,

 7              Walter Johnson,

 8              David Juday,

 9              Tim Knight,

10              Lashontay Kyles,

11              Gary Latham,

12              Gerald Luedecking,

13              Thomas Maher,

14              Harry Mathews,

15              Wendell Montgomery,

16              Bill Moorian,

17              Brandon Noble,

18              Ricky Perry,

19              Ken Roark,

20              Karen Rivard,

21              Devon Smith,

22              Mark Sprague,

23              Paul Szabo,

24              Terry Thomas,

25              Linda Underwood-Davis,
```

1          Travis Ulberg,

2          Andre Wells,

3          Kristine Wilkerson,

4          Cakrlotte Williams,

5          Mike Wilson,

6          Justin Wolbrink.

7          Thank you, your Honor.

8          THE COURT:   All right.   Thank you.

9          Mr. Champion, do you have any other witnesses other

10   than those that were already listed that you may be calling,

11   sir?

12          MR. CHAMPION:   I do, your Honor.

13          THE COURT:   Go ahead.

14          MR. CHAMPION:   Those witnesses would be:

15          Jesse Barrows,

16          Darlynzoe Brown,

17          Steve Brown,

18          Katie Cartwright,

19          Carl Clatterbuck,

20          Jerry Davenport,

21          Donario Davis,

22          Jo-Nathan Hale Davis,

23          Devin Hughes,

24          Edward Jackson,

25          Ed Jones,

```
1              Kenya Jones,

2              Lee Logan,

3              Tommy Morgan,

4              Guy Murray,

5              Latisha Nalley,

6              Ken Newell,

7              William Nichols,

8              Marcus Pearce,

9              Paul Pratt,

10             Cynthia Smith,

11             Henry Smith,

12             Richard Smith,

13             Charles Thomas,

14             Kevin Ward,

15             Keyth Whitfield,

16             Florence Wilbon,

17             Antonio Willams, and

18             Earnest Wynn.

19             THE COURT:   Thank you, Mr. Champion.

20             All right.  Ladies and gentlemen, so we need to know

21      if any of you know or think you may know any of the witnesses

22      that were just identified or either of the attorneys or

23      Mr. Steel.  If so, please stand.

24             All right.  So, as we go through this process, there

25      might be occasions where you may stand on more than one
```

occasion.  Each time we do need your name, just so that you are aware of that.  And, just a reminder, please make sure you speak up so everyone in the courtroom can hear what you're saying.

I'm going to start to my left.

Sir, first of all, we need your name for the record.

JUROR TURNER:  Bruce Turner.

THE COURT:  With a T?

JUROR TURNER:  T.

THE COURT:  All right.  Sir, who is it that you know or believe you may know, sir.

JUROR TURNER:  William Nichols.

THE COURT:  And how do you know this person?

JUROR TURNER:  I may be related to him.

THE COURT:  How so?

JUROR TURNER:  Cousin.

THE COURT:  Are you close to this individual?

JUROR TURNER:  No.

THE COURT:  No.

When was the last time you saw this person, if it's the right person?

JUROR TURNER:  Five or six years ago.

THE COURT:  Okay.  So let me ask you this, sir, if the person came to testify, would you give him more credibility because he's related to you, he's your cousin?

1          JUROR TURNER:   No.

2          THE COURT:   You think you could be fair and

3    impartial and judge his credibility the same way you would any

4    other witness that came to testify?

5          JUROR TURNER:   Yes.

6          THE COURT:   All right.   Now the attorneys—As we go

7    through this process, we're just getting information.   The

8    attorneys might have more informa—or more questions about

9    these issues.

10         But I'm going to have you go ahead and have a seat.

11         Thank you, sir.

12         Your name, ma'am?

13         JUROR BALL:   Kimberly Ball.

14         THE COURT:   I'm sorry?

15         JUROR BALL:   Kimberly Ball.

16         THE COURT:   Okay.   With a B.

17         And who is it that you know or believe you may know,

18   ma'am?

19         JUROR BALL:   Michelle Bennett.

20         THE COURT:   How do you know this individual?

21         JUROR BALL:   We were neighbors for a few years, and

22   our daughters have pretty much grown up together.

23         THE COURT:   When was the last time that you saw

24   Ms. Bennett?

25         JUROR BALL:   July 14th.

1          THE COURT:   And what was that for?

2          JUROR BALL:   My daughter's graduation party.

3          THE COURT:   Okay.   Let me ask you, if this is the

4     correct individual that you're thinking of and she comes to

5     testify, would you give her more credibility because of your

6     relationship with her because you know her?

7          JUROR BALL:   No.

8          THE COURT:   Okay.   You think you could judge her

9     credibility the same way you would judge any other person's

10    credibility?

11         JUROR BALL:   Yes.

12         THE COURT:   All right.   Thank you, ma'am.   You may

13    be seated.

14         All right.   I'm going to start to my left.

15         Sir, your name?

16         JUROR SAAD:   Tom Saad.

17         THE COURT:   Saad, you said, correct?

18         JUROR SAAD:   Correct.

19         THE COURT:   Who is it that you know or believe you

20    may know, sir?

21         JUROR SAAD:   Linda Underwood.   I'm not sure if it's

22    the same person or not.

23         THE COURT:   And how do you know this individual?

24         JUROR SAAD:   A former patient of mine.

25         THE COURT:   All right.   Same question to you, then,

                                    24

1    sir.  I don't know how long it's been since you saw this
2    individual, and I'm not going to have you answer that
3    question.
4              JUROR SAAD:  I can't be sure.
5              THE COURT:  Okay.  But you could judge the
6    credibility of this individual, if they came to testify, same
7    way you would any other witness?
8              JUROR SAAD:  Yes.
9              THE COURT:  All right.  Thank you, sir
10             JUROR RZEPKA:  Matthew Rzepka—R-z.
11             THE COURT:  All right.  Go ahead, sir.
12             JUROR RZEPKA:  Carl Clatterbuck.
13             THE COURT:  And how do you know Carl Clatterbuck?
14             JUROR RZEPKA:  A business relationship.
15             THE COURT:  Same question to you, sir.  If he came
16   to testify here, could you judge his credibility the same way
17   you would anyone else's; or would you give him more weight or—
18             JUROR RZEPKA:  No.
19             THE COURT:  No.
20             JUROR RZEPKA:  I could be fair.
21             THE COURT:  All right.  I appreciate that, sir.
22             Ma'am, your name?
23             JUROR DEUEL:  Melinda Deuel.
24             THE COURT:  Go ahead.
25             JUROR DEUEL:  Gerald Luedecking.

1          THE COURT:    All right.  And how do you know

2    Gerald Luedecking?

3          JUROR DEUEL:    He's my step-uncle.

4          THE COURT:    Do you see him often?

5          JUROR DEUEL:    No, I haven't seen him in over ten

6    years.

7          THE COURT:    Same question to you, then, ma'am, as

8    I've been asking everyone else.  You think you could be fair,

9    or would you give him more credibility or less credibility

10   based on your relationship and knowing him?

11         JUROR DEUEL:    I could be fair.  I don't really know

12   him that well since we're not close.

13         THE COURT:    All right.   Thank you.

14         Sir, your name?

15         JUROR RICE:    My name is Kyle Rice.

16         THE COURT:    Go ahead, sir.

17         JUROR RICE:    I know Andre Wells and

18   . . . (inaudible)

19         THE COURT:    I'm sorry.  Who is that you know?

20         JUROR RICE:    Keyth . . . (unintelligible) and

21   Andre Wells.

22         THE COURT:    And how do you know these individuals?

23         JUROR RICE:    I graduated high school with them, and

24   I lived by them for—I was neighbors with them for two years.

25         THE COURT:    The same question to you, sir,

```
 1    credibility-wise, would you give them more or less credibility
 2    if they came to testify and you were on the jury of this—
 3              JUROR RICE:   That'd be a hard question.
 4              THE COURT:    That'd be a hard question.  For both of
 5    them, sir?
 6              JUROR RICE:   Yes.
 7              THE COURT:    How often do you see them?
 8              JUROR RICE:   Last time I seen them was about a year
 9    ago.
10              THE COURT:    Thank you, sir.  You may have a seat.
11              Ma'am, your name?
12              JUROR GAUDARD:   Chris Gaudard.
13              THE COURT:    Go ahead.
14              JUROR GAUDARD:   Mr. Champion—
15              THE COURT:    All right.
16              JUROR GAUDARD:   —and I believe . . . (inaudible)
17              THE COURT:    And you lost me at the end there.  You
18    said Mr. Champion and who else?
19              JUROR GAUDARD:   I believe my husband works with
20    Mr.  . . . (inaudible)
21              THE COURT:    Okay.  And I missed your last name.
22              JUROR GAUDARD:   Gaudard.
23              THE COURT:    Thank you.
24              Thank you.  You may have a seat.
25              Your name, sir?
```

```
1              JUROR OTTE:   Dennis Otte.

2              THE COURT:   Go ahead.

3              JUROR OTTE:   I know Tracy Cochran, and I know

4       Gerry Luedecking.

5              THE COURT:   Thank you, sir.  You may have a seat.

6              Ma'am, your name?

7              JUROR LOVELAND:   Patricia Loveland.

8              THE COURT:   Go ahead.

9              JUROR LOVELAND:   William Nichols.

10             THE COURT:   And how do you know William Nichols?

11             JUROR LOVELAND:   From school years ago.  Haven't

12      seen him for a long time.

13             THE COURT:   So, if William Nichols came to testify

14      and you were on the jury panel, could you judge his

15      credibility the same way you would anyone else's—

16             JUROR LOVELAND:   Yes.

17             THE COURT:   —or would you give you more credibility

18      or less or—

19             JUROR LOVELAND:   I would be fair.

20             THE COURT:   You would be fair.  Thank you, ma'am.

21             Go ahead and have a seat.

22             Ma'am, your name?

23             JUROR KECK:   Vicki Keck.

24             THE COURT:   I missed the last name.

25             JUROR KECK:   Keck.
```

```
 1                    THE COURT:   I see.

 2                    Okay.  Go ahead, ma'am.

 3                    JUROR KECK:   Gerry Luedecking.

 4                    THE COURT:   Okay.  And how do you know

 5       Gerry Luedecking?

 6                    JUROR KECK:   My husband taught and coached his

 7       children, and he lives in our community.

 8                    THE COURT:   You know him well?

 9                    JUROR KECK:   No, I do not.

10                    THE COURT:   Okay.  Same question to you, then,

11       ma'am.  If he came to testify and you were on the jury in this

12       case, could you judge his credibility the same way you would

13       anyone else's?

14                    JUROR KECK:   Yes, I could.

15                    THE COURT:   All right.  I appreciate that.

16                    Go ahead and have a seat.

17                    Start to my left.

18                    Sir, your name?

19                    JUROR WATSON:   Dennis Watson.

20                    THE COURT:   Go ahead, sir.

21                    JUROR WATSON:   I also know Luedecking.

22                    THE COURT:   How do you know him?

23                    JUROR WATSON:   He's a friend.

24                    THE COURT:   A close friend or—

25                    JUROR WATSON:   No.
```

1        THE COURT:   How long has it been since you've seen

2    him?

3        JUROR WATSON:   A couple months.

4        THE COURT:   Do you talk to him about work?

5        JUROR WATSON:   Yes.

6        THE COURT:   If he came to testify in this case,

7    could you be fair or would you give him more credibility

8    because you know him as a friend?

9        JUROR WATSON:   No, I'd be fair.

10        THE COURT:   You—

11        JUROR WATSON:   I could be fair.

12        THE COURT:   You think you could be?

13        JUROR WATSON:   Yeah.

14        THE COURT:   Thank you, sir.  You may have a seat.

15        Sir, your name?

16        JUROR COMISKEY:   Joe Comiskey—with a C.

17        THE COURT:   All right.  Go ahead, sir.

18        JUROR COMISKEY:   Okay.  I might know Richard Smith

19    depending on—I mean, it's a common name.  His middle name is

20    . . . (unintelligible) might know him.  Otherwise, I know him

21    through work.  I don't know him very well.  I do believe I

22    could be fair and listen to this trial.

23        THE COURT:   Even if it was the Mr. Smith that you

24    knew?

25        JUROR COMISKEY:   Even so, yes.

1          THE COURT:   I appreciate that, sir.

2          Your name, sir?

3          JUROR BATES:   Halbert Bates.

4          THE COURT:   Go ahead.

5          JUROR BATES:   Tommy Morgan.  I don't know if it's

6     the same one.

7          THE COURT:   Sean Morgan?

8          JUROR BATES:   Tommy.

9          THE COURT:   Oh, Tom.

10         All right.  How is it that you know this individual?

11         JUROR BATES:   He's a friend, church member.

12         THE COURT:   Okay.  Same question to you, sir.

13    Could—

14         JUROR BATES:   Yes.

15         THE COURT:   Could you be fair if he came to testify

16    and you were on the jury?

17         JUROR BATES:   Yes.

18         THE COURT:   Okay.  You wouldn't give this person

19    more or less credibility based on what you know?

20         JUROR BATES:   . . . (inaudible)

21         THE COURT:   All right.  Appreciate that, sir.  Go

22    ahead and have a seat.

23         Yes?

24         JUROR VANHEUKELOM:   Greg Vanheukelom.  I'm racking

25    my brain with Linda Underwood-Havens [*sic*] .

1          THE COURT:   Okay.

2          JUROR VANHEUKELOM:   If it's the one I know, I'm

3    trying to figure out her maiden name—if it was Underwood.   If

4    it is, it's from church.   But, if not the same one, a common

5    name, so—

6          THE COURT:   All right.   And I don't know if the

7    attorneys caught your name.   Go ahead and re—

8          JUROR VANHEUKELOM:   Greg Vanheukelom.

9          THE COURT:   Thank you.

10         And I—I should say, too, for—We know each other.

11   But, also, could you be fair if this person—

12         JUROR VANHEUKELOM:   Yes.

13         THE COURT:   —came to testify?   So same question—

14         JUROR VANHEUKELOM:   Yes.

15         THE COURT:   —that I asked everyone else.   Okay.

16         JUROR VANHEUKELOM:   Correct.

17         THE COURT:   I appreciate that, sir.   Go ahead and

18   have a seat.

19         All right.   Is there anyone here who is not a

20   resident of Kalamazoo County right now?   Raise your hand.

21   Everyone lives in Kalamazoo County.

22         Ma'am, stand up, please.   What county do you live

23   in?

24         JUROR NORTHAM:   Berrien County.

25         THE COURT:   How long have you lived in

32

1      Berrien County?

2                   JUROR NORTHAM:    Four days.

3                   THE COURT:    That explains why you're here.

4                   JUROR NORTHAM:    Yes.

5                   THE COURT:    And—I'm sorry.—your name, ma'am?

6                   JUROR NORTHAM:    Allison Northam.

7                   THE COURT:    With an N?

8                   JUROR NORTHAM:    Yes.

9                   THE COURT:    You are excused, ma'am.  You can place

10     your badge in—There should be a basket either on the left or

11     the right side of the double doors.

12                  JUROR NORTHAM:    Okay.  Thank you.

13                  THE COURT:    All right.  Is there anyone here who

14     has a case pending in Kalamazoo County that you are involved

15     in?  I am only interested in civil or criminal cases where you

16     might be a party or a witness or somehow involved.  I'm not

17     interested in any family court matters—child custody issues,

18     divorces, that type of thing.

19                  So stand up if you are involved in some way in

20     either a civil or criminal case in Kalamazoo County.

21                  Sir, your name, first of all?

22                  JUROR CALCO:    Robert Calco.

23                  THE COURT:    With a K?

24                  THE CLERK:    C.

25                  JUROR CALCO:    With a C—C-a.

```
 1              THE COURT:   Oh, I see it.  Okay.

 2              Go ahead, sir.  Is it a criminal or a civil case?

 3              JUROR CALCO:   It's a civil case.  I represent my

 4    company.  I don't believe—I checked before I came.  I don't

 5    believe there's anything open now.  There's some things in

 6    Grand Rapids in bankruptcy court, other things in other

 7    jurisdictions.  I'm not an attorney.

 8              THE COURT:   Okay.  So what's the name of your

 9    company?

10              JUROR CALCO:   PNC Bank.

11              THE COURT:   So you have testified periodically for

12    them?

13              JUROR CALCO:   Yes.

14              THE COURT:   Okay.  I appreciate—

15              JUROR CALCO:   I'm no longer in that position now,

16    but there are still things that linger and—

17              THE COURT:   That you're involved with?

18              JUROR CALCO:   Yes.

19              THE COURT:   I appreciate that.  Go ahead and have a

20    seat.

21              Sir—

22              JUROR RICE:   Kyle Rice.

23              THE COURT:   —your name?  I'm—

24              JUROR RICE:   Kyle Rice.

25              THE COURT:   All right.  And a civil or criminal
```

1   case, sir?

2               JUROR RICE:   Criminal.

3               THE COURT:   Okay.  And are you a party or—

4               JUROR RICE:   Party.

5               THE COURT:   Okay.  Why don't you approach a moment,

6   sir.

7               I will also caution everyone, be careful when you

8   come through these double doors.  They are very heavy.

9               Counsel, if you would approach.

10              And I will say sometimes we talk to people at the—by

11  way of a bench conference.  We put some noise on in the

12  background.  Please be quiet.  We're still recording

13  everything, and so we might pick up what you're saying or it

14  might be difficult for the system to pick up what we're saying

15  if you're talking.  So bear with us here.

16              (At 10:49 a.m., bench conference as follows:

17                  THE COURT:   Are you a—Are you being charged

18                  with something or—

19                  JUROR RICE:   No, my daughter has actually been

20                  raped, so that's—

21                  THE COURT:   Okay.  So she's a victim?

22                  JUROR RICE:   Yeah.

23                  THE COURT:   Okay.  So are you dealing with

24                  someone from the prosecuting attorney's office—

25                  JUROR RICE:   Yes.

```
1          THE COURT:    —here in Kalamazoo?

2          JUROR RICE:    Yeah.

3          THE COURT:    Okay.  And—All right.  I'm going

4     to see if the attorneys have any questions for you a

5     second.  Okay?

6          JUROR RICE:    Uhm-hmm.

7          THE COURT:    Do you have any questions?

8          MR. CUSICK:    No.  You haven't had any contact

9     with the attorney general's office?

10         JUROR RICE:    No, not yet.

11         THE COURT:    Okay.  Do you have any questions,

12    Mr. Champion?

13         MR. CHAMPION:    So you're involved with the

14    prosecutors . . . (inaudible)

15         JUROR RICE:    Right.

16         MR. CHAMPION:    And the fact that your daughter

17    is a victim . . . (inaudible), would you be able to

18    be fair and impartial?

19         JUROR RICE:    Not really.  I have a lot on my

20    plate right now, to be honest with you.

21         THE COURT:    Okay.  All right.  Why don't you

22    step back a second.  I'm going to talk to the

23    attorneys, and then I'll let you know.

24         Any position with regards to Mr. Rice then?

25         MR. CUSICK:    Well, he said he can't be fair
```

and impartial, so—

THE COURT:   I'm sorry.  He can or cannot?

MR. CUSICK:   He said he cannot be fair and
impartial.

THE COURT:   Okay.

MR. CUSICK:   So I don't have any objection if
you want to excuse him.

THE COURT:   Okay.

MR. CHAMPION:   . . . (inaudible)

THE COURT:   Let me ask you—And he—Yeah, he was
the one that indicated that he knew a couple of the
witnesses, also.

MR. CHAMPION:   Yes.

THE COURT:   So—Okay.  I'll go ahead and excuse
him, then, for cause.  All right.

MR. CHAMPION:   Thank you.)

THE COURT:   Sir, you are excused.  You can place
your badge in the basket.  I think it's on the left side of
the double doors back there.

Thank you for your time today.

All right.  I'm going to just tell you a little bit
about the trial process and when we take breaks and so forth
and what the length of the trial is expected to be.  We never
know how long exactly a trial is going to last, so we're only
giving you our best estimate.  Sometimes they're shorter;

sometimes they're longer.  I'm going to give you our best
estimate.  And so we believe that this trial is going to last
two to three weeks.

Now the trial is not going to start until August 27.
So we're going to pick a jury—however long that takes today,
tomorrow maybe.  We think it'll—We think we'll finish today.
And then I will give you some—some instructions that you have
to follow.  And then you're going to report back on August 27,
and we will just start with opening statements and calling of
witnesses and so forth.

We run trials Tuesday through Friday.  We might not
go a full day on Friday.  Right now we're planning on it, but
I'll just have to let you know as the trial progresses where
we're at.  Unfortunately, there's some other things that
sometimes I have to take care of.  So it does somewhat depend
on what's going on with other cases and so forth.

We do not—You will not be here on a Monday unless
you're deliberating.  Then you might be here on a Monday.  But
that would be—It wouldn't be within the first one or two
Mondays.

We also have Labor Day in there.  So that
particular—That would be the second week of trial.  So,
obviously, you wouldn't be here on Monday because the court's
closed.  And then that Tuesday becomes our Monday here at the
court, so you wouldn't be in trial that Tuesday.  So, that

| | |
|---|---|
| 1 | week, you would only be here Wednesday through Friday. |
| 2 | So that's my best estimate as to the length of this |
| 3 | trial. You would be here on the 27th, which is a Tuesday. |
| 4 | You'd go Tuesday through Friday. The next week is Labor Day. |
| 5 | You would go Wednesday through Friday. |
| 6 | We believe we'll have our part of the trial wrapped |
| 7 | up by then. That's the plan. Sometimes we're delayed. It |
| 8 | might be a little bit quicker, it might be—go into the next |
| 9 | week. |
| 10 | And so let me just tell you a second about what that |
| 11 | means. That means I have some initial instructions that I |
| 12 | give to you. Then I turn it over to the attorneys for opening |
| 13 | statements, if they choose to give an opening statement. Then |
| 14 | they call their witnesses and introduce all of their evidence. |
| 15 | Then they have an opportunity for closing arguments. And then |
| 16 | I have final instructions to give to you, and then you begin |
| 17 | deliberating. So that's the process there. |
| 18 | And so we believe all of that would, hopefully, wrap |
| 19 | up—Again, this is an estimate.—by the Friday of Labor Day |
| 20 | week. That's, again, an estimate. And then we turn it over |
| 21 | to you for deliberations. |
| 22 | We never know how long you're going to deliberate, |
| 23 | so that's why I'm just giving us a little buffer there. It |
| 24 | might go into a third week. That's why I'm telling you that. |
| 25 | And this is an estimate. |

1    We generally will start around 9:00 o'clock in the
2    morning.  I will do my best to get you out of here by
3    5:00 o'clock.  I will say, if we have a witness on the stand
4    and it looks like we might go five, ten, 15 minutes after
5    5:00, I will normally stop somewhere around 4:30, quarter to
6    5:00 and say, can we finish the witness, is that okay with
7    everyone, do you need to make any phone calls.  And, if you
8    can't stay, then you can't stay.  That's fine.  We'll end for
9    the day.

10   If everyone is okay with staying a little bit
11   longer, we may do that.  That's not the plan.  I have staff,
12   and our buildings close at 5:00.  So there are other things,
13   certainly, that we have to worry about.  But I'm trying to
14   work around your schedules, too.  We'll do my best to get you
15   out of here by 5:00 o'clock.

16   I generally will give you an hour to an hour and a
17   half during the lunch hour.  The attorneys and I can handle
18   things during the lunch hour, so sometimes it's a little bit
19   longer than an hour.

20   And I generally will try to break once in the
21   morning every—after an hour and a half or so and once in the
22   afternoon after an hour and a half or so.

23   If, at anytime you need to take a break and you're
24   on the jury, just raise your hand, please.  Let us know, and
25   we'll address your break, certainly.  But that's the general

40

schedule.

Obviously, jury duty is such an important responsibility that all of us have.  I'm sure some of you have already gone through this process, and you certainly understand the importance of it for the parties and for the attorneys and for all of us as a society.

I certainly also understand, given the economy that we have and other issues going on in everyone's life, it may be an extreme hardship for some of you to sit on a jury for that length of time.

So I'm going to—

Some of you also might have some health issues or concerns that might prevent you from sitting on a jury.

We all have either jobs or family or other things that we're taking care of, and I know it's a hardship for every single one of you to be here.

Some of you might be starting school at that time. Some of you might have young kids and you might have to deal with childcare and so forth.  And, again, those are all issues that many of us have to address.  Every person that sits on a jury has to rearrange their schedules.

But I do need to know if it's going to be an extreme hardship for any of you to be on a jury for that length of time.

So I'm going to address those in a moment.  I'm

```
 1    going to let you know what I am looking for when I talk about
 2    an extreme hardship.
 3            If any of you have any surgeries maybe scheduled
 4    during that time frame; if you have some prepaid vacation or
 5    prepaid business trips, I'd be happy to address those.  If,
 6    given your financial situation, you might miss a house payment
 7    or a car payment and you're not—I'm sure many of you are not
 8    getting paid for being here.—I'd be happy to address that.  So
 9    those are the type of things that I am looking for.
10            And, again, it's a hardship for everyone.  I know
11    that.  So I'm really looking for extreme hardships here.
12            If you don't feel comfortable speaking with us about
13    your issue or issues, if you have them, let me know, again,
14    because I can bring you up to the bench and we can address
15    these things by way of a bench conference.
16            Sometimes this process takes a while, so just bear
17    with us here.
18            So, if there is anyone who has an extreme hardship
19    that you want to address with us, please stand.
20            Okay.  So, first of all, I'm going to start to my
21    left.  And, again, just a reminder to speak up.  Let me know
22    if you don't feel comfortable speaking in open court.
23            I need your name, ma'am.
24            JUROR HEYWOOD:    Sharla Heywood.
25            THE COURT:    Okay.  Go ahead, ma'am.  You feel
```

1    comfortable talking?

2                 JUROR HEYWOOD:   Yeah.

3                 THE COURT:   Okay.  Go ahead.

4                 JUROR HEYWOOD:   I have already made reservations

5    for next week out of state.

6                 THE COURT:   Okay.  So you're leaving next week.

7    And when are you coming back?

8                 JUROR HEYWOOD:   Not till Sunday.

9                 THE COURT:   All right.  So we're not going to be

10   here next week.  I will release you—Once we select the jury,

11   I'll release you and have you report back August 27.  So it

12   sounds like that's okay.

13                JUROR HEYWOOD:   Yes, I'm leaving on a Friday.

14                THE COURT:   All right.  So I appreciate that.  You

15   can go ahead and have a seat, ma'am.

16                Sir, your name?

17                JUROR BOSTICK:   Josh Bostick.

18                THE COURT:   I missed the last name.

19                JUROR BOSTICK:   Bostick.

20                THE COURT:   With a B.

21                JUROR BOSTICK:   I work—I pretty much work every

22   day, so—And I—

23                THE COURT:   Where—Okay.  Where do you work, sir?

24                JUROR BOSTICK:   I cook at Noodles & Company.

25                THE COURT:   Okay.

                                43

1          JUROR BOSTICK:   That's going to—My rent—That's

2     going to—

3          THE COURT:   That will be difficult for you.  Is

4     that—

5          JUROR BOSTICK:   Yeah.

6          THE COURT:   —what you're indicating?

7          JUROR BOSTICK:   Yes, ma'am.

8          THE COURT:   Okay.  So you work full time there?

9          JUROR BOSTICK:   Yes, ma'am.

10         THE COURT:   And they don't pay you for being here?

11         JUROR BOSTICK:   Yes.

12         THE COURT:   Okay.  I appreciate—

13         JUROR BOSTICK:   I had to request off and all that

14    today.

15         THE COURT:   Okay.  Now would they work with you and

16    let you work days that you're not in trial, do you know?

17         JUROR BOSTICK:   I don't know.  There's no telling,

18    really.

19         THE COURT:   Okay.

20         JUROR BOSTICK:   I'd probably have to just request

21    it off; but that's going to hurt me, though.

22         THE COURT:   I appreciate that, sir.  You can have a

23    seat.

24         Okay.  Sir—

25         I'm going to stick with the front row a second.

44

1                      Sir, your name?

2                      JUROR SHAWN NEAL:    Shawn Neal.

3                      THE COURT:    Go ahead, sir.

4                      JUROR SHAWN NEAL:    I'm the only income at the house

5       right now, and I work nights—12-hour shifts.

6                      THE COURT:    Where do you work, sir?

7                      JUROR SHAWN NEAL:    Elkhart Plastics, Middlebury.

8                      THE COURT:    So you're indicating it would

9       financially be difficult for you, also?

10                     JUROR SHAWN NEAL:    Yes, ma'am.

11                     THE COURT:    Now let me ask you, also, do you work

12      the weekends down there or no?

13                     JUROR SHAWN NEAL:    Yes.

14                     THE COURT:    You do.

15                     JUROR SHAWN NEAL:    Yeah.

16                     THE COURT:    Could you talk to someone and see if

17      you could work the evenings that we're not in trial?  So it

18      would be four days one week and three days the next week.  We

19      know that.

20                     JUROR SHAWN NEAL:    It's possible.

21                     THE COURT:    If you were able to get work, then, on

22      the days that we're not in trial, would you be okay

23      financially?

24                     JUROR SHAWN NEAL:    Yeah.

25                     THE COURT:    All right.  So you might just need to

                                     45

1    make a phone call and see if they would be willing to work—

2              JUROR SHAWN NEAL:    All right.

3              THE COURT:    —around that schedule.  And we could

4    certainly provide you a letter indicating what our schedule

5    was going to be.  Okay.  I appreciate that, sir.

6              JUROR SHAWN NEAL:    Thank you.

7              THE COURT:    Ma'am, your name?

8              JUROR WILSON:    Brianna Wilson.

9              THE COURT:    All right.  Go ahead.

10             JUROR WILSON:    I have transportation issues.  Like

11   a lot of times I'm not going to be able to make it 'cause I'm

12   not going to have money for the bus.  Or my ride, he normally

13   works in the morning and stuff like that—like way early in the

14   morning—and he get off at 5:00.  And I wouldn't have really

15   good—excellent transportation.

16             THE COURT:    I appreciate that.

17             Just so I'm clear, do you have more than one

18   individual that might be able to give you a ride?

19             JUROR WILSON:    No.

20             THE COURT:    Okay.  Thank you, ma'am.  I appreciate

21   that.

22             All right.  So I'm going to start with the left side

23   here, front row.  I'm going to start to my right.

24             Ma'am, your name?

25             JUROR TEAL:    Rebecca Teal.

```
 1                    THE COURT:   Go ahead.

 2                    JUROR TEAL:   My hardship's not necessarily for the

 3       trial but for today.   I am supposed to have job interview.

 4                    THE COURT:   What time?

 5                    JUROR TEAL:   Noon.

 6                    THE COURT:   If you don't feel comfortable answering

 7       this in open court, let me know, but where at?

 8                    JUROR TEAL:   Parchment High School.

 9                    THE COURT:   Any idea how long that would last?

10                    JUROR TEAL:   I'm not assuming that it would last

11       more than an hour.

12                    MR. CHAMPION:   May we approach, your Honor?

13                    THE COURT:   Yes.

14                    (At 11:03 a.m., bench conference as follows:

15                         MR. CHAMPION:   I'm the attorney for Parchment.

16                    I could probably make a phone call and help her out

17                    if it's a problem . . . (inaudible)

18                         THE COURT:   Okay.  If she's on the jury—Well,

19                    I'm wondering when we're going to get done.  We

20                    might just be okay and get her there.  Okay.

21                         MR. CUSICK:   . . . (inaudible) to make a call,

22                    I don't have a problem with that.

23                         THE COURT:   Do you know the number offhand?

24                         MR. CHAMPION:   . . . (inaudible)

25                         THE COURT:   Why don't you both—
```

47

MR. CUSICK:   I would rather be part of the

call—

        THE COURT:   Yeah.

        MR. CUSICK:   —just so I—

        THE COURT:   Just go back and see if you can

indicate that she's here, we'd like to see if you

could arrange a different—

        MR. CHAMPION:   . . . (inaudible) has an

interview.

        THE COURT:   Yeah.  Okay.

        MR. CHAMPION:   Could we have her come up for

just a second . . . (inaudible)

THE COURT:   Can you approach, please.

        THE COURT:   Who are you interviewing with?

        JUROR TEAL:   I believe it's the principal, I'm

showing.

        THE COURT:   For—

        MR. CHAMPION:   Which school?

        THE COURT:   —what job?

        JUROR TEAL:   It's a Spanish—

        THE COURT:   A Spanish—

        JUROR TEAL:   —teacher—

        THE COURT:   —class.

        JUROR TEAL:   —at Parchment High School.

        THE COURT:   We're going to—I'm going to have

the attorneys step out.  We're going to make a phone
call and see if we can get your interview moved till
later on in the week.

JUROR TEAL:   Okay.

THE COURT:   Is that okay?

JUROR TEAL:   Yeah.

THE COURT:   Okay.  You'd be okay with that.

So why don't you go ahead and have a seat back,
and I'll let both attorneys, then—

I don't know if the office—It should be
unlocked.  I think you should be able to go this
way.

MR. CUSICK:   This way?  Okay.

JUROR TEAL:   Okay.

THE COURT:   Thank you.

JUROR TEAL:   Thanks.)

(At 11:05 a.m., Messrs. Cusick and Champion exit
courtroom)

THE COURT:   All right.  So give us one moment here.
If you want to stand and stretch, you're all welcome to do
that.  We're still recording.  But we're just waiting for the
attorneys to return a second here.  You don't have to, but
you're welcome to.

Just a reminder, folks, we're still on the record,
so just please be quiet.

1      (At 11:09 a.m., Messrs. Cusick and Champion return

2      to courtroom)

3      (At 11:09 a.m., bench conference as follows:

4           MR. CHAMPION:   It looks like they're doing the

5      job interviews today at different slots.

6           THE COURT:   Okay.

7           MR. CHAMPION:   So—

8           MR. CUSICK:   We don't have an objection, I

9      don't think—

10          MR. CHAMPION:   She's number 60 [*sic*] on the

11     list, so—we have no objection to kicking her for

12     cause, or do you want to wait?

13          THE COURT:   Okay.

14          MR. CHAMPION:   If she—

15          THE COURT:   Given—I'm going to see how long we

16     go.  Maybe we'll just break for lunch a little early

17     and let her go to the interview and come back.

18          MR. CUSICK:   Whatever you want, Judge; but I

19     wouldn't have any objection.  It's one of those—

20          THE COURT:   We might have to call and say she

21     might be a little late.  How often are they doing

22     them, do you know?

23          MR. CHAMPION:   Pardon?  Probably every hour,

24     sounds like.

25          THE COURT:   You know what?  I better just—

1    MR. CHAMPION:  So she should—

2    THE COURT:  —let her—

3    MR. CHAMPION:  Huh?

4    THE COURT:  I better just let her go.  I'll

5    let her go.

6    Okay.  One other one, too.  I have an

7    information that—

8    MR. CHAMPION:  Well, I'm waiting for a call

9    back if you want to wait just a few minutes before

10   we do that.  They're going to check with the

11   principal to see if there's another day.

12   THE COURT:  Oh, they are going to check and

13   then you're going to—You're—They're going to text

14   you or something?

15   MR. CHAMPION:  They're going to call me.

16   THE COURT:  Okay.

17   MR. CHAMPION:  So I may—I'll just stand up and

18   ask for—to step out for a moment.

19   THE COURT:  All right.  So we'll see—We'll

20   give her a few minutes and see.  And then, when they

21   MR. CHAMPION:  They're calling back right now.

22   THE COURT:  Okay.  Go ahead and—)

23   (At 11:11 a.m., Messrs. Cusick and Champion exit

24   courtroom)

25   THE COURT:  Sorry.  Thank you for your patience.

```
1              THE DEFENDANT:    Your Honor, may I address the

2     Court?

3              THE COURT:    Hold on.

4              (At 11:12 a.m., Messrs. Cusick and Champion return

5              to courtroom)

6              (At 11:12 a.m., bench conference as follows:

7                   MR. CUSICK:    It's going to be for tomorrow

8              afternoon.

9                   THE COURT:    They can—

10                  MR. CHAMPION:    They're going to do it—

11                  THE COURT:    They can do it—

12                  MR. CHAMPION:    —tomorrow afternoon.

13                  THE COURT:    —tomorrow.   Okay.   Perfect.

14                  Mr. Steel just wanted—indicated he wanted to

15             address the Court, so you better talk to him and

16             then come back up here.

17                  MR. CHAMPION:    Sure.

18                  THE COURT:    See if he needs something a

19             second.

20                  And I'll—Just talk to him a second, come back

21             up and—)

22             (At 11:12 a.m., off record discussion between

23             Mr. Champion and defendant)

24             THE COURT:    Ma'am, can you approach, please.

25             Counsel, will you approach, please.
```

1      MR. CUSICK:   Oh, sorry.

2      (At 11:12 a.m., bench conference as follows:

3          THE COURT:   Okay.  So they're going to

4      reschedule your interview to tomorrow afternoon, and

5      we'll give you the information there over the lunch

6      hour.  So—

7          JUROR TEAL:   Okay.

8          THE COURT:   —just so that you're aware of

9      that.  So you can go back and have a seat.

10         JUROR TEAL:   Okay.  Thank you.

11         THE COURT:   Okay.

12         MR. CHAMPION:   They'll e-mail you—

13         THE COURT:   Just a second.  We'll give the

14     information in a second.  I need you here, though.

15     You can go have a seat.

16         JUROR TEAL:   Thank you.

17         THE COURT:   I just don't want her to know

18     where it's coming from.

19         Do we need something for Mr. Steel or no?

20         MR. CHAMPION:   Mr. Steel needs to use the

21     restroom.

22         THE COURT:   Okay.  So—Okay.  Like right now,

23     so we need a break?  Okay.)

24     THE COURT:   Okay.  We're going to take a break for

25     about ten minutes here.  I will caution you we might go into

```
 1    the lunch hour a little bit.  So we might take our noon break
 2    about 12:15 to 12:30 just so that we can kind of keep moving.
 3              I need Ms. Teal—
 4              It's Ms. Teal?
 5              —to stay, Audrey Lamere to stay, and Christine Brown
 6    to stay.  Everyone else can go upstairs with Ms. Wint.  All
 7    right.
 8              All rise.  Be careful of the steps, and you can
 9    follow Ms. Wint out.
10              (At 11:14 a.m., jury panel, with the exception of
11              Jurors Teal, Lamere, and Brown, exits courtroom)
12              You may be seated.
13              All right.  So, Ms. Teal, we will get you the
14    information after we break for—take this break, and we'll let
15    you know what's going on there.
16              I have information that—
17              And I don't know if I have you switched.
18              —Ms. Lamere is eight months pregnant.
19              Is that correct?
20              JUROR LAMERE:   Yes.
21              THE COURT:   Okay.  I'm going to excuse you because
22    you're not coming back for three weeks, and my guess is you
23    might be busy by then.
24              JUROR LAMERE:   Yeah.  Thank you.
25              THE COURT:   So you are excused, ma'am.  Place your
```

1    basket [*sic*]—or badge in the basket there, if you would.

2            And thank you for your time.

3            JUROR LAMERE:   Thanks.

4            THE COURT:   So that's Audrey Lamere.

5            And I have information that—

6            Ms. Brown, you have a young child at home; is that

7    correct?

8            JUROR BROWN:   . . . (inaudible)

9            THE COURT:   Okay.

10           JUROR BROWN:   . . . (inaudible) prepare her to take

11   a bottle.

12           THE COURT:   Okay.  So you're getting to—You're

13   going that route now?

14           JUROR BROWN:   I'm nursing.  . . . (inaudible)

15           THE COURT:   Right.

16           JUROR BROWN:   She's—She won't take from the bottle,

17   but—

18           THE COURT:   She won't.

19           JUROR BROWN:   —we're trying with a dropper all we

20   can do.

21           THE COURT:   Okay.  Is this the first day you've

22   been away from her then?

23           JUROR BROWN:   Yes.

24           THE COURT:   And she has not been successful at

25   taking a bottle.

1          I'm going to excuse you, too.  All right.

2          And so all—You—You're excused.

3          Ms. Teal, let me see if I can grab one person to

4   bring you upstairs.

5          Thank you.

6          Okay.  So Mr. Dye is going to come and—Eric Dye is

7   Judge Giguere's law clerk, and I just want him to escort you

8   upstairs.

9          Thank you.  She's seated right in the front.

10          All rise.

11          And we'll bring you back down in about ten,

12  15 minutes with the rest of them.

13          (At 11:18 a.m., Juror Teal exits courtroom)

14          You may be seated.

15          And, while the attorneys were out, Mr. Steel was

16  trying to talk to me.  I'm assuming you just needed a break.

17  Is that what you were trying—Okay.

18          THE DEFENDANT:  Yeah, 'cause—

19          THE COURT:  Give me a little bit of a heads-up

20  so—Because, obviously, it takes a while to get you out of

21  here.

22          Counsel, any objections to me excusing Ms. Lamere

23  and Brown?

24          MR. CUSICK:  No objection, your Honor.

25          MR. CHAMPION:  No objection—

56

THE COURT: Okay.

MR. CHAMPION: —your Honor.

THE COURT: We'll let Mr. Steel take a break real quick, and we'll bring you back up in about ten minutes or so.

THE DEFENDANT: Thank you.

THE COURT: Okay?

MR. CHAMPION: Thank you.

THE COURT: Court's in recess

(At 11:19 a.m., court recessed)

(At 11:32 a.m., proceedings reconvened)

THE CLERK: The court recalls the case of People of the State of Michigan versus Samuel Steel, case number C11-1983 FC.

Parties, please restate appearances for the record.

MR. CUSICK: Paul Cusick on behalf of the People.

MR. CHAMPION: May it please the Court, Robert Champion appearing in behalf of Samuel Steel.

THE COURT: All right, Counsel.

So the jury, I think, is on the way down. Apparently, the line to the restroom was quite lengthy, so it might take them a second.

With regards to count three—because we didn't address this—when I read the information, I'm simply planning on reading did possess a firearm when ineligible to do so because of a prior conviction and the requirements for

```
 1    regaining eligibility had not been met.  Is that okay, or do
 2    you want—
 3              MR. CUSICK:   Yes—Yes, your Honor.
 4              Is there a stipulation—
 5              MR. CHAMPION:   That's fine, your Honor.
 6              MR. CUSICK:   —for pur—
 7              MR. CHAMPION:   I would stipulate to.
 8              MR. CUSICK:   Yeah, and for the trial—
 9              THE COURT:   Right.  There might—
10              MR. CUSICK:   —there's a stipulation—
11              THE COURT:   —be a stipulation as to which one we're
12    talking about, and that's fine.  But you want me to just read
13    it that way right now?
14              MR. CHAMPION:   That's correct.
15              THE COURT:   Okay.
16              MR. CUSICK:   Thank you, your Honor.
17              THE COURT:   Uhm-hmm.
18              Anything else we need to address, Counsel, before
19    the jury comes in?
20              MR. CUSICK:   No, your Honor.
21              (Off record conversation while awaiting jury)
22              THE COURT:   All rise.
23              (At 11:40 a.m., jury panel returns to courtroom)
24              THE COURT:   You may be seated.
25              Ma'am, I don't know if—Can you see okay over there?
```

| | |
|---|---|
| 1 | UNIDENTIFIED JUROR:   Yes. |
| 2 | THE COURT:   All right.  You're fine. |
| 3 | All right.  So welcome back, ladies and gentlemen. |
| 4 | All right.  So we were dealing with hardship issues. |
| 5 | And now I have to have all of you stand, who want to address |
| 6 | the Court, again with regards to a hardship issue. |
| 7 | Okay.  Sir, your name, first of all? |
| 8 | JUROR TURNER:   Bruce Turner. |
| 9 | THE COURT:   Go ahead, sir. |
| 10 | JUROR TURNER:   I will be on vacation—reservations |
| 11 | made—September 8th. |
| 12 | THE COURT:   For how long? |
| 13 | JUROR TURNER:   Two weeks.  Out of state. |
| 14 | THE COURT:   So that is the Sunday after Labor Day? |
| 15 | JUROR TURNER:   Yes. |
| 16 | THE COURT:   All right.  I appreciate that. |
| 17 | All right.  I'm going to start to my left on the |
| 18 | left—on my left, I should say. |
| 19 | Your name, first of all? |
| 20 | JUROR VERBRUGGE:   Kathryn Verbrugge. |
| 21 | THE COURT:   Go ahead. |
| 22 | JUROR VERBRUGGE:   I'll be in Honduras |
| 23 | . . . (inaudible) |
| 24 | THE COURT:   I'm going to go ahead and excuse you. |
| 25 | Thank you, ma'am, for your time.  You can place your |

59

1    badge in the basket by the double doors.  Have a safe trip.

2                    JUROR VERBRUGGE:    Thank you.

3                    THE COURT:    Your name, ma'am?

4                    JUROR HAYS:    Jennifer Hays.

5                    THE COURT:    Go ahead, ma'am.

6                    JUROR HAYS:    I have a couple of things.  I am the

7    only one in the household that has a full-time job.  We just

8    bought a house, and I'm paying the bills.

9                    The other thing is I just started this new job, and

10   over—up until September 9th, there's really extensive training

11   . . . (inaudible) for the job that I was hired for

12   . . . (inaudible) the 8th and 9th.

13                   THE COURT:    Okay.  Where are you working now?

14                   JUROR HAYS:    PNC Bank.

15                   THE COURT:    And you feel comfortable speaking about

16   your financial situation, or you want to approach?

17                   JUROR HAYS:    Approach.

18                   THE COURT:    Okay.  Go ahead and do that.  I don't

19   know if it's easier to sneak across that front row there or—

20                   Watch those double doors.  They're heavy.

21                   Counsel, will you please approach.

22              (At 11:47 a.m., bench conference as follows:

23                        THE COURT:    Okay.  So you have kids at home

24              or—

25                        JUROR HAYS:    Yeah, I have a seven-month old.

1          THE COURT:  Okay.

2          JUROR HAYS:  My husband does work, but he only

3    works a couple hours in the evening during the week.

4          THE COURT:  Okay.

5          JUROR HAYS:  So his barely even pays for

6    . . . (inaudible)

7          And we're trying . . . (unintelligible) house,

8    and I have to make the payments, as well as the new

9    bills that—

10         THE COURT:  Okay.

11         JUROR HAYS:  —come up with owning the house.

12         THE COURT:  When did you buy the house?

13         JUROR HAYS:  I'm sorry?

14         THE COURT:  When did you buy the house?

15         JUROR HAYS:  We bought it—We moved in

16   beginning of June.

17         THE COURT:  Okay.

18         JUROR HAYS:  The big sum has been paid.  We're

19   doing like a rent-to-own thing.

20         THE COURT:  Okay.  All right.  I appreciate

21   that.

22         And so I'm assuming—Is PNC paying you to be on

23   jury duty or no?

24         JUROR HAYS:  No, because I'm just a temporary.

25         THE COURT:  Okay.

1    JUROR HAYS:   I'm only hired on for that

2    project that starts the 11th.

3    THE COURT:   I see.  Okay.

4    Any questions?

5    MR. CUSICK:   So the training is not something

6    that can be changed—another time for you to train?

7    It's . . . (inaudible) set for multiple employees?

8    JUROR HAYS:   Yeah, it's set for multiple

9    employees.  I'm actually missing today's training,

10   and I'm just kind of . . . (inaudible)

11   MR. CUSICK:   Okay.

12   THE COURT:   Okay.  Any questions?

13   All right.  Why don't you step back a second,

14   ma'am?

15   JUROR HAYS:   Okay.  You want me to just sit

16   back down or just—

17   THE COURT:   Just a couple steps, and I'll talk

18   to the attorneys.

19   Any position?

20   MR. CUSICK:   Extreme hardship.  I don't have

21   a—I don't have an objection if the Court wants to

22   let her go for cause.

23   MR. CHAMPION:   Since it's temporary, I don't

24   have an objection.

25   THE COURT:   Yeah, I think I'm going to go

1            ahead and excuse her.  It sounds like they're kind

2            of—they're financially up and down—

3               MR. CUSICK:    Right.

4               THE COURT:    —depending on what's going on, so

5            I'll go ahead and excuse her.

6            Thank you.)

7          THE COURT:    Ms. Hays, I'm going to go ahead and

8 excuse you, ma'am.  Thank you for your time today.

9          You can place your badge in the basket by the

10 double doors.

11          Front row.  Your name?

12          JUROR DODSON:    Richard Dodson.

13          THE COURT:    Go ahead, sir.

14          JUROR DODSON:    I have a permanent residence in

15 Kalamazoo, but next week I'll be moving up to Holland to begin

16 my senior year of college.  Classes begin on the

17 . . . (inaudible)

18          THE COURT:    What grade are you—or what, I guess—

19          JUROR DODSON:    I'll be a senior.

20          THE COURT:    You're going to be a senior.

21          And what classes are you taking?

22          JUROR DODSON:    I'm taking two philosophy courses, a

23 communication course, a music course.  Three of them are

24 400 upper level.

25          THE COURT:    Do you have any idea what your

```
1    schedule's going to look like yet?

2              JUROR DODSON:   My classes are on Tuesdays and

3    Thursdays primarily.  Then I have rehearsals throughout the

4    rest of the week.

5              THE COURT:   Now I will say—So your permanent

6    residence is still technically Kalamazoo, though?

7              JUROR DODSON:   Yes, although I have changed my

8    address for my driver's license and voter registration for

9    Holland.

10             THE COURT:   You have.

11             JUROR DODSON:   Yes.  My driver's license has

12   Holland . . . (inaudible)

13             THE COURT:   I'm going to go ahead and excuse you

14   then.  Thank you, sir.  We appreciate your time.

15             JUROR DODSON:   Thank you.

16             THE COURT:   Your name?

17             JUROR BACON:   Carol Bacon.

18             THE COURT:   Go ahead.

19             JUROR BACON:   I will be on vacation from August 29th

20   to September 6th.

21             THE COURT:   Out of town?

22             JUROR BACON:   Yes.

23             THE COURT:   I will go ahead and excuse you.

24             Thank you, ma'am.

25             MR. CHAMPION:   Your Honor, . . . (inaudible)
```

1                    THE COURT:    Bacon.  Carol Bacon.

2                    Thank you, ma'am.

3                    Your name, sir?

4                    JUROR GLINSKY:    David Glinsky.

5                    THE COURT:    With an L?

6                    JUROR GLINSKY:    Glinsky, with a G.

7                    THE COURT:    All right.  Go ahead, sir.

8                    JUROR GLINSKY:    I'll be going back to school

9        . . . (inaudible) at KVCC.

10                   THE COURT:    Okay.  When do you start?

11                   JUROR GLINSKY:    I'm not sure of the exact date.

12                   THE COURT:    Do you know if it's before or after

13       Labor Day, or don't you know?

14                   JUROR GLINSKY:    I'm not sure . . . (inaudible)

15                   THE COURT:    Okay.

16                   JUROR GLINSKY:    I'm also starting a job at the end

17       of this week, but the training's throughout the rest of the

18       month before I start working.

19                   THE COURT:    Where are you working?

20                   JUROR GLINSKY:    . . . (inaudible)

21                   THE COURT:    I'm sorry?

22                   JUROR GLINSKY:    . . . (unintelligible)

23                   THE COURT:    And you're going to start that the end

24       of the week?

25                   JUROR GLINSKY:    Yes.  . . . (inaudible) training's

1  on Friday.

2          THE COURT:   Are you residing by yourself or with

3  family members or—

4          JUROR GLINSKY:   I reside by myself.

5          I also am a single father, so by the time

6  . . . (inaudible) dropped my son off in Jackson yesterday

7  . . . (inaudible)

8          THE COURT:   Okay.  So it sounds like your son,

9  though, resides in Jackson most of the time or—

10         JUROR GLINSKY:   No, he lives with me in Kalamazoo.

11         THE COURT:   Okay.  How old is he?

12         JUROR GLINSKY:   He's ten.

13         THE COURT:   All right.  So he'll go to school end

14  of August or after September here—

15         JUROR GLINSKY:   Yes.

16         THE COURT:   —in Kalamazoo?  Okay.

17         Now what classes are you taking at KVCC, do you

18  know?

19         JUROR GLINSKY:   I have general psychology, math and

20  statistics, . . . (inaudible)

21         THE COURT:   Do you know what your schedule is as

22  far as evenings, days, when you're taking the—

23         JUROR GLINSKY:   My class schedule is Monday morning

24  8:00 to 9:30, and then on Tuesdays till 12:20.  On Wednesdays,

25  I go to 1:40.  On Thursday, I go to 12:20 as well.

66

1          THE COURT:   Are you going to start working part—Are

2     you working part-time, then, because of your class schedule,

3     or full time?

4          JUROR GLINSKY:   They start you as part-time through

5     the training . . . (inaudible)

6          THE COURT:   All right.  I appreciate that, sir.

7     You can go ahead and have a seat.

8               Your name, sir?

9          JUROR BATES:   Halbert Bates.

10         THE COURT:   Go ahead.

11         JUROR BATES:   I'm the primary caregiver for a

12    non-adult special need person.

13              Also, . . . (inaudible) part-time job where I have

14    training's on Wednesday right now . . . (inaudible) training

15    session on the 27th.

16         THE COURT:   Where is that at, sir?

17         JUROR BATES:   KPS.

18         THE COURT:   And what is the new position there,

19    sir?

20         JUROR BATES:   Coaching.

21         THE COURT:   And what will you be coaching?

22         JUROR BATES:   Cross-country.

23         THE COURT:   Will your practices be every day?

24         JUROR BATES:   Starting on the 26th, every day.

25         THE COURT:   And there's another coach, it sounds

1    like, working with you?

2         JUROR BATES:    Yeah, we're part time.  We kind of

3    split . . . (inaudible) because that person is also a student.

4         THE COURT:    And what time are your practices, do

5    you know?

6         JUROR BATES:    The week of the 26th from 9:00 until

7    11:00.  And then the following—Following when school starts,

8    . . . (inaudible) 3:00 to 5:00.

9         THE COURT:    Three to 5:00.

10        All right.  Obviously, you have someone covering for

11   you today for the individual that you're primary—that you're

12   the healthcare provider for?

13        JUROR BATES:    Yes, had to take off work.

14        THE COURT:    Okay.  I appreciate that information,

15   sir.  You can go ahead and have a seat.

16        Your name?

17        JUROR JOSEPH:    Patricia Joseph.

18        THE COURT:    With a J?

19        JUROR JOSEPH:    Yeah.

20        THE COURT:    And I'm having a hard time hearing you.

21   You're going to have to speak up just a little bit.

22        Go ahead, ma'am.

23        JUROR JOSEPH:    Well, I work part time in a small

24   pottery studio.  She cannot afford to compensate me for the

25   time that I'm here.

1    But it's also that what—what time I can't create the

2    inventory, that's inventory my boss is not

3    . . . (unintelligible) to sell.  So I'm compromising not just

4    my own financial stability but his if I'm gone for an extended

5    period of time.

6    THE COURT:  Okay.  So we're looking at maybe four

7    days one day—one week and three days the next.

8    JUROR JOSEPH:  It's also a matter of the

9    convergence of the actual dates because my husband is also an

10   artist and will be out of town at a festival for the Labor Day

11   weekend and needs my help preparing for that transporting

12   inventory . . . (inaudible)

13   I'm also deeply involved in volunteer work, which is

14   grant-funded; and our report is due the 31st.

15   THE COURT:  At which—Where do you volunteer?

16   JUROR JOSEPH:  I'm volunteering with

17   . . . (inaudible) on the west side of town . . . (inaudible)

18   involved in . . . (inaudible) writing those grant reports.

19   THE COURT:  All right.  I appreciate that

20   information.  Have a seat.

21   I'm going to go to my left.

22   Your name?

23   JUROR HEYWOOD:  Sharla Heywood.

24   THE COURT:  Go ahead.

25   JUROR HEYWOOD:  I do have a vacation appointment

```
 1        September 16ᵗʰ through the 20ᵗʰ, also.

 2                    THE COURT:    So you're going out of town?

 3                    JUROR HEYWOOD:    Yes.

 4                    THE COURT:    Okay.  On the 16ᵗʰ—

 5                    JUROR HEYWOOD:    Correct.

 6                    THE COURT:    —of September?

 7                    Thank you, ma'am.

 8                    Your name?

 9                    JUROR KAISER:    Kimberly Kaiser.

10                    THE COURT:    Go ahead.

11                    JUROR KAISER:    I am a single parent and the only

12        source of income for myself and my two daughters.

13                    THE COURT:    Where do you work, ma'am?

14                    JUROR KAISER:    . . . (inaudible) apartment complex.

15                    THE COURT:    What are your hours?

16                    JUROR KAISER:    Monday through Friday 9:00 to 5:00.

17                    THE COURT:    Are you indicating, then, that you just

18        won't be able to pay your bills if you're here?

19                    JUROR KAISER:    Right . . . (inaudible)

20                    THE COURT:    Thank you.  You may have a seat.

21                    All right.  Front row.

22                    Sir, your name?

23                    JUROR BURKETT:    Brad or Bradley Burkett.

24                    THE COURT:    Go ahead.

25                    JUROR BURKETT:    I'm a sole proprietor of my own
```

business—I'm a farrier, a horseshoer.—and—

THE COURT:  I missed it.  What is it?

JUROR BURKETT:  Farrier, horseshoer, blacksmith.

THE COURT:  Okay.

JUROR BURKETT:  And from May to October is my busy season.  And I work mainly on show horses for trainers, and every horse is scheduled for a six-week rotation.  If this would happen to go three weeks, that's half of my business; and, financially, that would be very difficult.

THE COURT:  All right.  And—I'm sorry.—I thought—Your last name?  I thought I caught it, but I didn't. I thought it was an L, but—

JUROR BURKETT:  B, Burkett.

THE COURT:  Thank you.

Thank you.  You may have a seat.

Your name?

JUROR HUSKIN:  Annette Huskin.

THE COURT:  Go ahead.

JUROR HUSKIN:  I am a legal guardian to my three-year-old granddaughter.  Me and my husband raise her. So my husband—We have our own business.  He works during the day and I work third shift at night, so we don't have caregivers and can't afford to send her to a babysitter.  So, if I were—I'm here, then he can't work.  Then we have no income.

1          THE COURT:   What business do you own?

2          JUROR HUSKIN:   We own . . . (unintelligible)

3     company.

4          THE COURT:   Any employees?

5          JUROR HUSKIN:   Our newly probation stepson is

6     working for us right now.

7          THE COURT:   And where do you work, ma'am?

8          JUROR HUSKIN:   I work at Subway.

9          THE COURT:   Thank you.  I appreciate that.

10         All right.  On the second row then.  I'm going to

11    start to my left.

12         Ma'am, your name?

13         JUROR HORTON:   Carroll Horton.

14         THE COURT:   Okay.  I'll go to my right.  Sorry.

15         Go ahead.

16         I'm sorry?

17         JUROR HORTON:   Carroll Horton.

18         THE COURT:   I missed the last name.

19         JUROR HORTON:   Horton.

20         THE COURT:   With an H?

21         JUROR HORTON:   Yes.

22         THE COURT:   Go ahead, ma'am.

23         JUROR HORTON:   Family medical.  And I would prefer

24    to come up.

25         THE COURT:   I'm sorry.  I'm having a hard time

72

1    hearing.

2                    JUROR HORTON:   I would prefer to come up.

3                    THE COURT:   Okay.  Yes, please do.

4                    Counsel, if you would approach.

5                    (At 12:00 noon, bench conference as follows:

6                        THE COURT:   Okay.  Go ahead.

7                        JUROR HORTON:   I'm suf—My daughter has been

8                    going through breast cancer.

9                        THE COURT:   Okay.

10                       JUROR HORTON:   She lives at home with us.  And

11                   her doctor—

12                       THE COURT:   You know what?  I'm going to let

13                   you go.  I can see that you've got some things going

14                   on with your family and you're getting a little

15                   emotional.  So that's fine.  You just can't be away

16                   that much time, and I understand that.

17                       JUROR HORTON:   . . . (inaudible) for her to

18                   get her . . . (inaudible)

19                       THE COURT:   I'm going to let you go.  You can

20                   place your badge in the basket on the right side of

21                   the double doors.

22                       JUROR HORTON:   Thank you.

23                       THE COURT:   Do you feel comfortable going out

24                   that way, or do you want to go out the side door?

25                       JUROR HORTON:   I'm rather go the other way—

1    THE COURT:   Okay.  Leave your—

2    JUROR HORTON:   —'cause I have customers behind

3    me.

4    THE COURT:   Okay.  Leave your badge right

5    there, and you can sneak out this door and go around

6    the hallway there and go out.

7    Good luck with everything.  Okay.

8    And that was Carroll Horton.  So we'll excuse

9    her for hardship.

10    Any objections to that, Counsel?

11    MR. CUSICK:   No, your Honor.

12    MR. CHAMPION:   No.

13    THE COURT:   No.)

14    THE COURT:   Okay.  Your name, ma'am?

15    JUROR BENJAMIN:   Roshida Benjamin.

16    THE COURT:   With a B?

17    JUROR BENJAMIN:   Yes.

18    THE COURT:   Go ahead.

19    JUROR BENJAMIN:   I work full-time at a hotel at the

20    front desk, and I'm a single mother of two.  So, if I'm here,

21    I don't get a check.

22    THE COURT:   Are you indicating it would be

23    financially very difficult to pay all of your bills if you

24    were here that length of time?

25    JUROR BENJAMIN:   Yes, ma'am.

```
 1                THE COURT:  Okay.  I appreciate that.

 2                Ma'am, you have to stand in the back until

 3      we're—there's more room for the jurors.  So—Sorry.—right now

 4      they're all taken, so just bear with us here.  Okay.

 5                Thank you, ma'am.  You may have a seat.

 6                Okay.  Ma'am, your name?

 7                JUROR OSWALT:  Katie Oswalt.

 8                THE COURT:  With an H?

 9                JUROR OSWALT:  No, O, Oswalt.

10                THE COURT:  Go ahead.

11                JUROR OSWALT:  I'll be moving in to East Lansing on

12      the 24th.  I'm starting school, so—

13                THE COURT:  So your main residence is here still in

14      Kalamazoo?

15                JUROR OSWALT:  . . . (inaudible)

16                THE COURT:  Yes.  And you're going to school, then,

17      at Michigan State?

18                JUROR OSWALT:  Well, it's a combination of

19      . . . (inaudible)

20                THE COURT:  Okay.  And do you know what your

21      schedule is going to be?

22                JUROR OSWALT:  I'll have class Tuesdays and

23      Thursdays from 12:00 to 4:00 and Mondays from 2:00 to 3:00, I

24      think.

25                THE COURT:  Okay.  And what are you—What classes
```

```
 1    are you taking on Thursdays?

 2              JUROR OSWALT:  It's my stats and deaf culture, and

 3    then there's a speech class.

 4              THE COURT:  A speech class?

 5              JUROR OSWALT:  Yes.

 6              THE COURT:  So you have three classes on Thursdays?

 7              JUROR OSWALT:  Tuesday and Thursdays

 8    . . . (inaudible) and then Mondays I have—

 9              THE COURT:  Yeah.  All right.

10              Thank you, ma'am.  You may have a seat.

11              Your name, sir?

12              JUROR WATSON:  Dennis Watson.

13              THE COURT:  Go ahead.

14              JUROR WATSON:  I own and operate a heating and

15    cooling company, and I'm the sole worker.  I will not be able

16    to field service calls or emergency calls or perform any

17    installations . . . (inaudible)

18              THE COURT:  Well, from my experience, things only

19    break down on holidays; so you should be fine.

20              But is there anybody else that works with you, sir?

21              JUROR WATSON:  No, I—

22              THE COURT:  Okay.

23              JUROR WATSON:  — . . . (inaudible)

24              THE COURT:  You're it.

25              JUROR WATSON:  Yeah.
```

THE COURT:  So we're talking about probably right now—our best estimate—four days one week, three days another. I don't know if you can work on the weekends, and I certainly understand emergencies arise.  What happens if you're out of town on vacation, maybe, and you get a call?

JUROR WATSON:  I usually arrange to have another heating company pick up my emergency calls.

THE COURT:  Okay.

JUROR WATSON:  I'm just worried about the regular customers . . . (inaudible)

THE COURT:  Right.

JUROR WATSON:  —so—

THE COURT:  Now you will have occasions to maybe contact them and let them know that you're—

JUROR WATSON:  . . . (inaudible)

THE COURT:  —unavailable.

JUROR WATSON:  . . . (inaudible)

THE COURT:  I appreciate that information.  Go ahead and have a seat.

All right.  So I'm going to start with the third—actually, the fourth row, I guess it is now.

Ma'am, your name?

JUROR SMITH:  Hayley Smith.

THE COURT:  Go ahead.

JUROR SMITH:  I am the manager at a restaurant, and

```
 1    I'm also going to be going to school full time.  I move in on
 2    the 28th.
 3              THE COURT:   Where are you moving to?
 4              JUROR SMITH:   Western.
 5              THE COURT:   Okay.  So you're still going to be
 6    local.
 7              And you manage a restaurant.  Which one?
 8              JUROR SMITH:   Culver's.
 9              THE COURT:   Are you living by yourself or with
10    family or friends?
11              JUROR SMITH:   Well, right now I'm living with my
12    parents—
13              THE COURT:   Okay.
14              JUROR SMITH:   — . . . (inaudible)
15              THE COURT:   All right.  I appreciate that.
16              And then you're going to start school—
17              So are you working full time or part time right now?
18              JUROR SMITH:   I'm working full time right now.
19              THE COURT:   And I'm assuming once you start school
20    then you're going to cut your hours back?
21              JUROR SMITH:   . . . (inaudible)
22              THE COURT:   Okay.  And where are you going to start
23    school at?
24              JUROR SMITH:   Western.
25              THE COURT:   Do you know what your schedule is?
```

1  JUROR SMITH:  Mondays through Friday mostly during
2  the day, but I have one night class.
3  THE COURT:  Are you every day Monday through
4  Friday?
5  JUROR SMITH:  Yes.
6  THE COURT:  When do you start?  Do you know if you
7  start before Labor Day or after?
8  JUROR SMITH:  We start right after that.  I think
9  it's the 4th.
10  THE COURT:  I appreciate that.  You can go ahead
11  and have a seat.
12  All right.  Your name?
13  JUROR JENNEY:  Lauren Jenney.
14  THE COURT:  Go ahead.
15  JUROR JENNEY:  From August 26th to 29th—or 30th, I
16  believe—I will be out of town on vacation.
17  When I return at work, . . . (inaudible) for a
18  project that is launching in the state of Michigan for an
19  . . . (inaudible)
20  THE COURT:  I'm going to go ahead and excuse you.
21  You can place your badge in the basket in the back.
22  Thank you for your time today.
23  Ma'am, your name?
24  JUROR CRONKHITE:  Lori Cronkhite.
25  THE COURT:  I missed the last one.

```
 1                    JUROR CRONKHITE:   Cronkhite.

 2          THE COURT:   Go ahead.

 3          JUROR CRONKHITE:    . . . (inaudible)

 4          THE COURT:   Yes, you may.

 5          (At 12:07 p.m., bench conference as follows:

 6                    JUROR CRONKHITE:   I am a single mom—

 7                    THE COURT:   Sorry.  Okay.  Go ahead.

 8                    JUROR CRONKHITE:   I'm a single mom with

 9          . . . (inaudible) has to have reconstructive

10          surgery—

11                    THE COURT:   Okay.  You know what?  It sounds

12          like you're—you've got—

13                    JUROR CRONKHITE:   —so it's like—

14                    THE COURT:   —other things going on.

15                    JUROR CRONKHITE:   — . . . (inaudible)—

16                    THE COURT:   Yeah.  Good luck with that.

17          I'm going to go ahead and excuse you.  You can

18          place your badge in the basket on the right side of

19          the double doors.

20          Now are you comfortable leaving through the

21          back, or do you want to leave the side door?  You're

22          okay.

23                    JUROR CRONKHITE:   Thanks.

24                    THE COURT:   Okay.  And that was—

25                    MR. CHAMPION:   Cronkhite.
```

80

```
 1              THE COURT:    —Cronkhite.  H, I, J, K—

 2              THE CLERK:    With a C in Cronkhite.

 3              MR. CHAMPION:    C.

 4              THE COURT:    With a C.

 5              MR. CHAMPION:    C.

 6              THE COURT:    Any objections to that, Counsel?

 7              MR. CUSICK:    . . . (inaudible)

 8              THE COURT:    Okay.  You got it?)

 9          THE COURT:    Your name?

10          JUROR HINES:    Kate Hines.

11          THE COURT:    Go ahead.

12          JUROR HINES:    I'll be starting full time at Valley

13    in the nursing program on the 3rd.

14          THE COURT:    When do you start?

15          JUROR HINES:    On the 3rd of September.

16          THE COURT:    Appreciate that.  You can go ahead and

17    have a seat.

18          Sir, your name?

19          JUROR CALCO:    Robert Calco.

20          THE COURT:    Go ahead.

21          JUROR CALCO:    I just have two obligations I had

22    before I came in here.  My daughter and my son are both going

23    to college, and I am going to be moving them.  And I didn't

24    bring the exact dates, but I believe my daughter's moving date

25    to the University of Michigan is the 28th, I think.  My son is
```

```
1    later.  It's in September.  My memory, it might be
2    September 9.  That's somewhat . . . (inaudible)
3              THE COURT:   Thank you.  You may have a seat.
4              Your name?
5              JUROR OTTE:  Dennis Otte.
6              THE COURT:   Go ahead.
7              JUROR OTTE:   Yes, the months of September and
8    October, I'll be in Florida.  My daughter's having our first
9    grandson there mid September.
10             THE COURT:   Mid September?
11             JUROR OTTE:   Mid September.
12             THE COURT:   All right.  Thank you, sir.  You may
13   have a seat.
14             Your name?
15             JUROR SAAD:   Tom Saad.
16             I'd like a word, please.
17             THE COURT:   You may.
18             (At 12:10 p.m., bench conference as follows:
19                  JUROR SAAD:   I'm a physician—
20                  THE COURT:   Yes.
21                  JUROR SAAD:   —up in Plainwell.  I see 25 to
22             30 patients a day five days a week.  We are short-
23             handed.  My schedule is booked out six weeks.  It'll
24             be just extremely disruptive for me, for my
25             patients.  Everybody . . . (inaudible) and
```

```
 1              that's—Two or three days, I could . . . (inaudible)
 2              but not—
 3                   THE COURT:   Okay.
 4                   JUROR SAAD:   —for that long.  It's really
 5              going to be disruptive and—
 6                   THE COURT:   Okay.
 7                   JUROR SAAD:   —you know, just—My heart's not
 8              going to be into it.
 9                   THE COURT:   Okay.
10                   Any questions?
11                   JUROR SAAD:   To have to cancel my schedule for
12              that long, it's just—
13                   THE COURT:   You have to remind me.  And I know
14              I've seen your name, too.  What type of doctor are
15              you?
16                   JUROR SAAD:   Family practice.
17                   THE COURT:   Okay.  Thank you.
18                   Any questions?
19                   MR. CUSICK:   No.
20                   THE COURT:   Any questions?
21                   MR. CHAMPION:   . . . (inaudible)
22                   THE COURT:   Can you step back a second, sir.
23                   Any position on that?
24                   MR. CUSICK:   I have no—I have no objection to
25              excusing him.
```

```
1          THE COURT:   You have no objections to it?
2          MR. CUSICK:   No.
3          THE COURT:   Okay.  You don't have—
4          MR. CHAMPION:   Neither do I.
5          THE COURT:   —any objections either?  Okay.
6     I'll go ahead and—
7          Hold on a second, if you would.)
8     THE COURT:   Go ahead, sir.  You are excused.
9     (At 12:11 p.m., bench conference as follows:
10         THE COURT:   Let me just ask you a couple
11    questions.  Some of these folks are not—No,
12    actually, we can address it during the lunch hour, I
13    guess I can say—
14         MR. CHAMPION:   Okay.
15         THE COURT:   —some of the hardships and the
16    financial issues and stuff and then we can go from
17    there, I guess.  Okay.)
18    THE COURT:   Your name, sir?
19    JUROR OULTON:   Jordan Oulton.
20    THE COURT:   I'm sorry?  With an H?
21    JUROR OULTON:   O.  O.
22    THE COURT:   Go ahead, sir.
23    JUROR OULTON:   I'll be going back to school on
24    September 3$^{rd}$.
25    THE COURT:   Where are you attending, sir?
```

84

1     JUROR OULTON: Kalamazoo Valley.

2     THE COURT: All right. Do you know what days

3 you're taking classes?

4     JUROR OULTON: Yeah, Tuesday, Thursday 8:00 a.m. to

5 . . . (inaudible)

6     THE COURT: What type of classes are you taking,

7 sir?

8     JUROR OULTON: I have three classes: accounting,

9 economics, and a math class.

10     THE COURT: All right. Thank you. You may have a

11 seat.

12     Your name, sir?

13     JUROR DUONG: It's Thao, and the last name's

14 spelled D-u-o-n-g.

15     THE COURT: Go ahead.

16     JUROR DUONG: I grow flowers for a living, and we

17 start first of July and it goes to the middle of October, so

18 our busy season. We start shipping our flowers starting in

19 August through the middle of October. And I'm in charge of

20 three acres of our . . . (inaudible) operation.

21     THE COURT: Anybody else there that can run that

22 for you?

23     JUROR DUONG: There is, but we're on skeleton crew

24 in the summer since it's kind of our off season, so that's

25 kind of why I have a bigger load there.

1          THE COURT:   Thank you.  You may have a seat.

2          All right.  We haven't forgotten those of you who

3    spoke, just so that you know that.  We'll talk about these

4    things.  And sometimes we have more questions if you are

5    seated in the jury box, just so that you are aware of that.

6          I did address this somewhat.  Let me just indicate

7    that some of you may have health problems, difficulty sitting

8    or standing for long periods of time.  Some of these things we

9    addressed during the hardships.

10          But I will indicate if you have issues with sitting

11   or standing for periods of time, I have no objections with you

12   standing or sitting periodically, as long as you can still pay

13   attention to what's going on, too.

14          And I would just ask that you let us know when we

15   get to the point to where we're selecting names.  I can always

16   seat you on one of the outside seats so that you can sit or

17   stand periodically.  And, again, I know we addressed some of

18   these issues already.  But those of you who maybe we haven't

19   talked to, if you need to do that, I would ask that you just

20   move to the outside of the rows.  And I think—I'm guessing

21   that we covered most of that stuff during the hardship issues.

22          Likewise, if you have difficulty seeing, we can

23   certainly seat you closer to the witness box here; so just let

24   us know, if your name is called.

25          All right.  It is 12:15, so I think this is probably

a good time to break.

I have a few more instructions to read to you when we return after the lunch hour.

And the attorneys and I have some things, again, to address during the lunch hour.

I'm going to read to you a couple instructions before we break for lunch, and then what I'm going to do is have you check in upstairs at 1:15. So you'll have about an hour for lunch.

When we get word that all of you have checked in and we're ready for you, then we will bring you down and we'll continue this afternoon.

Let me just read to you a couple things before I release you a moment.

You haven't heard any of the facts of the case, but I'm going to just caution you that you are not to discuss this case with anyone or among yourselves. The only thing you've heard is the title of the counts. But you are not to discuss the case in any way or indicate to anyone the type of case that you are here for. So please remember that. You must not even discuss it with the other jurors until the time comes for you to decide the case.

If I call for a recess during the trial, I will either send you back to the jury room on the fourth floor—And I've—we've already done that. We've taken a break.—or allow

1    you to leave the courtroom on your own and go about your

2    business, which is what I'm about ready to do.

3           You must not discuss this case with anyone or let

4    anyone discuss it with you or in your presence.  If someone

5    tries to do that, tell him or her to stop and explain that, as

6    a juror, you are not allowed to discuss this case.  If he or

7    she continues, leave immediately and report the incident to us

8    when you return to court.  And you would do that by letting

9    Ms. Wint know what happened and then she'll pass the

10   information along to the attorneys and myself.

11          You must not talk to the defendant or the lawyers or

12   the witnesses about anything at all, even if it has nothing to

13   do with this case.  Sometimes you might pass each other in the

14   hallways or ride up on the elevator with one or more of those

15   individuals.  Please don't even say hello to them.  We just

16   want to make sure you're not talking to them and giving any

17   appearance that something wrong is going on or improper is

18   going on.

19          It is very important that you only get information

20   about this case when you are in the court when you are acting

21   as the jury and when the defendants [*sic*] and I are all here.

22   I will also indicate that the only information you get about

23   this case must come to you in this courtroom when the

24   attorneys and the parties and I are all here.

25          You must not consider any information that comes

from anywhere else. So, during the breaks and recesses, don't look up anyone, anything, any term, any definition, anything about any court officers or attorneys or parties or anything about this case on your own. Don't do any investigation on your own.

You may not use any electronic devices at anytime to find out information about a party or a witness or an attorney or a court officer or any news accounts of the case or any information collected through any juror research, and that includes don't look up anything about any other jurors if you happen to know any of them—any—And don't do any investigations on your own.

So please remember those things.

You may certainly use your phones and other electronic devices when we break, but you may not use them at anytime to look up anything about this case in any way or anyone involved in the case, so just so that you are aware of that.

Okay. When you return after the lunch hour, we'll proceed with the jury selection. It does move along a little bit quicker as we go. We do appreciate your patience.

You have badges on, also, and I ask that you wear those badges during the lunch hour if you're out and about downtown. It lets folks know that you're potentially on a jury. I do understand that some folks do not feel comfortable

wearing those badges.  I'm not going to order you to wear the badges 'cause I understand that.

But there is a reason for it.  In case there's attorneys or others that might be involved in the case or others that work at the court that they might be in the same restaurant as you and they might realize, okay, we can't talk about cases now because you're there wearing the badge.  There is a reason for it.  So I'm not going to require it, but that's why you have those badges, so please remember that.

All right.  So please meet upstairs on the fourth floor.

Do not come to the second floor at all and hang out here, please.  Either just go immediately to the fourth floor or leave the building.  If you're going to leave the building, that's fine, too.  Be careful when you enter and exit the building in case folks are talking about cases.  I just caution you move away immediately if you think someone is.

And, again, don't ever come into the courtroom on your own—Ms. Wint will always escort you here when we are ready for you.—in case we're covering something that you just simply couldn't—shouldn't hear.

And, again, don't come to the second floor because sometimes attorneys or witnesses are talking about the case and we don't want you overhearing something.  So that's why I ask that you just go to the fourth floor or outside of the

building.

So you can leave the building on your own right now, and we'll see you in about an hour.

All rise.

You can follow Ms. Wint out the back double doors.

(At 12:21 p.m., jury panel exits courtroom)

You may be seated.

All right. The jurors left the courtroom, and the door is shut.

Counsel, I did excuse a number of individuals. I believe we've covered them for the record. My understanding is there's no objection so far to the jurors that I have excused for either hardship or cause; is that correct?

MR. CUSICK: That's correct, your Honor.

MR. CHAMPION: That's a correct statement, your Honor.

THE COURT: All right. We have a number of individuals that I just want to touch base with and I want you to think about, just given their financial issues. I'm just going to list their names, let you think about them during the lunch hour and let me know if you have a position one way or the other afterwards.

Okay. So let me just give you the names, first of all.

I know Roshida Benjamin indicated she was a mother

of two and it would be a financial issue for her.  I didn't
get a lot of information—I don't recall.—from her, but she did
mention that.

Joshua Bostick indicated that he was working at
Noodles & Company and it might be a hardship for him
financially.

Bradley Burkett indicated that he had the horse
business and it would be a financial hardship for him.

Robert Calco, I will indicate to you Counsel, I'm
inclined to release him.  He indicated that he was moving his
children into college—I can understand—I think one at U of M
on the second day of trial.  I certainly understand that
that's an important day for many folks, and so I'm not
inclined to make him miss that.  And that would be the first
week of trial; so, obviously, he would need to be here.  I
will indicate that, but I'm curious as to your position on
that.  If you have any strong objections, let me know.

Let's see, Carroll Horton indicated that—No—I'm
sorry.—I excused her.

Annette Huskin indicated that she and her husband
were the legal guardian for their three-year-old; that they
own a dock and seawall company.  She works third shift at
Subway, too.  She indicated that would be a hardship for them
financially.

Kimberly Kaiser indicated that she was the assistant

manager at the apartment complex. She has two kids and is on her—She's alone and supports them. She's another name.

Shawn Neal indicated he worked at Elkhart Plastic nights and indicated it would be financially difficult for him.

I'm not indicating I'm going to release these folks. I'm just indicating please think about them and let me know what your positions are. If you both agree, then I might release some of them. So that's why we're going through this.

Katie Oswalt starts school August 24th, and she's the one that's moving to East Lansing to start at MSU. Sounds like her residence is still here. That's not an issue, but she is going to school. So think about her.

Dennis Otte—He's a officer anyway, but I know he indicated he was having a grandchild in mid September. I don't think that's going to be an issue. We certainly—If he was on the panel, we'd have 14 jurors so, if the child comes early, I would have no objections to releasing him as an alternate.

And Dennis Watson was the individual that owned the heating and cooling company. It didn't sound like it was as much of a hardship for him that I can seem to have an issue with possibly losing some customers. I'm just throwing that out there again.

And looks like Brianna Wilson indicated she would

1    have a transportation issue for that length of time.

2              So those are the individuals that I've just tagged

3    as maybe we need to discuss those; and, if there's some

4    agreement on some of those, we can address those after lunch.

5              Anything else at this time that we need to—

6              I will also indicate, just so that you know—I don't

7    think it makes a difference. I indicated that I know

8    Gregory Vanheukelom—not well. He's merely just somebody I

9    went to school with. I don't think I've seen him in like five

10   years, but I'll just note that for the record. I know who he

11   is, and I've had conversations with him over the past ten

12   years—a few of them, not many.

13             And I also know Mr.—I'm looking for his name because

14   I don't know his last name. I'll have to look and let you

15   know. Oh—I'm sorry.—it's Thao Duong. Our daughters play

16   soccer together, so I see him at the soccer field on occasion.

17   That's the only thing—He's the individual that indicated he

18   works with the flowers, and he also indicated it would be a

19   difficult time of the year for him to be on the panel. But I

20   just know him because I see him on occasion. That's—I'll just

21   throw that out there.

22             Anything else we need to address at this time,

23   Counsel?

24             MR. CUSICK:   Your Honor, I don't know if the Court

25   would be willing to do a mutual sequestration order during the

                                94

jury selection process of the witnesses who are actually on
the witness list being in court during the voir dire process.
Usually, I ask for my mutual sequestration order before jury
selection takes place.  I'd ask for an exception of the
officer in charge.

I know that one witness who's on defense counsel's
witness list has—list—has stepped in the room; and, if there's
any witnesses from our side that step into the room, I think
that would be appropriate during jury selection as well.  So
I'd ask for a sequestration order.

THE COURT:  Any position on that, Mr. Champion?

MR. CHAMPION:  No position, your Honor.

THE COURT:  That seems appropriate then.  So, since
we only have one individual here, I'm assuming it's this
individual right here.

So, ma'am, just so that you know, the parties have
agreed that, if you're on the witness list and a potential
witness in this case, you can't sit in here until after you
have testified.  So just so that you're aware of that.  Okay?

And I'm sure you can talk to the attorneys about
that, if you have some questions, when we break in a moment.

So anything else, then, that we need to address at
this time, Counsel?

MR. CUSICK:  No, your Honor.

MR. CHAMPION:  No, your Honor.

1      THE COURT:  All right.  Have a good lunch.  We'll
2  see you in about 45 minutes then.
3      MR. CUSICK:   Thank you.
4      THE COURT:   Court's in recess.
5      (At 12:31 p.m., court recessed)
6      (At 1:37 p.m., proceedings reconvened)
7      THE CLERK:   The court recalls the case of People of
8  the State of Michigan versus Samuel Steel, case number
9  C11-1983 FC.
10      Parties, please restate appearances for the record.
11      MR. CUSICK:   Paul Cusick on behalf of the People,
12  your Honor.
13      MR. CHAMPION:   May it please the Court,
14  Robert Champion appearing on behalf of Sam Steel.
15      THE COURT:   All right.  Counsel, we did have a
16  discussion in chambers a while ago, and we are releasing
17  certain jurors by agreement based on the information that was
18  provided when we were discussing hardships.
19      Generally speaking—Well, all the information should
20  be on the record; but, generally speaking, these are some that
21  we agreed were starting school so it would likely be difficult
22  for them to be here when they're starting their classes at
23  different universities or colleges and/or they're sole
24  providers for their families and indicated it would be a
25  financial hardship.

```
 1            We didn't excuse all of those that stood up and
 2    addressed those issues.  Some of those we indicated we
 3    should—we could get more information from.
 4            But we are, by agreement, releasing the following
 5    then:
 6            Katie Os—
 7            And these are all for hardships.
 8            Katie Oswalt, number 77.
 9            Jordan Oulton—O-u-l-t-o-n.  He's number 78.
10            David Glinsky, number 18, with a G.
11            Robert Calco, with a C—Calco—number 29.  He actually
12    is the one who indicated he was going to bring his kids to
13    school, I think one at State, and the other one, I don't
14    recall where.
15            Dennis Watson, number 66.
16            Kimberly Kaiser, with a K.  She's number 61.
17            And Annette Huskin, who's number 56.
18            Is that correct, Counsel?
19            MR. CUSICK:   That's correct, your Honor.
20            MR. CHAMPION:   Yes, your Honor.
21            THE COURT:   Thank you.
22            Counsel, is there anything else we need to address
23    on the record before the jury comes in?
24            MR. CUSICK:   No, your Honor.
25            MR. CHAMPION:   No, your Honor.
```

```
1              THE COURT:   All rise.

2              (At 1:49 p.m., jury panel returns to courtroom)

3              You may be seated.

4              Welcome back, ladies and gentlemen.

5              Just a reminder, please make sure your cellphones

6      are turned off.

7              All right.  Welcome back, ladies and gentlemen.

8              When we left, we had dealt with some issues that

9      some of you had.  And, certainly, the attorneys might have

10     more questions for you if you are selected in a moment in the

11     jury box.  Then we'll focus our attention on those that are

12     seated in the jury box.

13             I have a couple more instructions to read to you

14     before we select the names.

15             As I indicated before, this is a criminal case.

16             And, actually, before I go further, I know we had

17     one individual with headphones on.  Do you need those again?

18             UNIDENTIFIED JUROR:   Please.

19             THE COURT:   Yes.  You can hear me, at least, so

20     that's a good thing.  You did raise your hand.  Okay.

21             So I'll wait for Ms. Wint a moment and—

22             Sorry about that.

23             All right.  Is that better then, ma'am?  All right.

24     Wonderful.

25             As I indicated before, this is a criminal case.  And
```

there's a piece of paper that's used—that is—it's used to charge a defendant with a crime in every criminal case. It's called an information, and it's filed with the court. And an information is read in every criminal case so that the defendant and the jury can hear what the charge or the charges are.

So you should clearly understand that the information I'm about ready to read is not evidence. It's, again, only read so that the jury and the defendant can hear what the charge or the charges are.

The information in this case reads as follows:

With regards to count one, as I indicated, the title is homicide open murder. It reads as follows:

That on or about April 24, 2011, in Kalamazoo County, defendant did murder Milo Conklin.

Count two reads as follows:

That on or about April 24, 2011, in Kalamazoo County, defendant did carry or have in his possession a firearm, to-wit, a handgun, at the time he committed or attempted to commit a felony, to-wit, murder.

Count three reads as follows:

That on or about April 24, 2011, in Kalamazoo County, defendant did possess a firearm when ineligible to do so because of a prior conviction and the requirements for regaining eligibility had not been met.

```
 1            Count four reads as follows:

 2            That on or about April 24, 2011, in

 3   Kalamazoo County, defendant did carry or have in his

 4   possession a firearm—I'm sorry.—a firearm, to-wit, a handgun,

 5   at the time he committed or attempted to commit a felony,

 6   to-wit, felon in possession of firearm.

 7            That is how the information reads.  And, again, you

 8   should clearly understand the information I have just read is

 9   not evidence.  An information is read in every criminal trial

10   so that the defendant and the jury can hear the charge or the

11   charges.  You must not think it is evidence of his guilt or

12   that he must be guilty because he has been charged.

13            A person accused of a crime is presumed to be

14   innocent; and this means you must start with the presumption

15   that the defendant is innocent, and this presumption continues

16   throughout the trial and entitles the defendant to a verdict

17   of not guilty unless you are satisfied beyond a reasonable

18   doubt that he is guilty.

19            Every crime is made up of parts called elements, and

20   the prosecutor must prove each element of the crime beyond a

21   reasonable doubt.  The defendant is not required to prove his

22   innocence or to do anything.  If you find that the prosecutor

23   has not proven every element beyond a reasonable doubt, then

24   you must find the defendant not guilty.

25            A reasonable doubt is a fair, honest doubt growing
```

out of the evidence or the lack of evidence. It is not merely an imaginary or a possible doubt but a doubt based on reason and common sense. A reasonable doubt is just that, a doubt that is reasonable after a careful and considered examination of the facts and the circumstances of this case.

Now, ladies and gentlemen, what we're going to do is we are going to select 16 names—Twelve of you will deliberate.—given the fact that I'm having you check in in a few weeks and the length of the trial. Sometimes emergency situations do arise with jurors, so we are selecting a number of alternates. Only 12 of you will deliberate. And it is a random selection at the end of the trial after all the evidence has been presented and—Excuse me.—the attorneys have given their closing arguments and I've given you the final instructions. Then we randomly will select the alternate jurors, so it doesn't matter where you're seated. So we're going to select 16 names.

When your name is called by Ms. Johnson, please gather your belongings and have a seat in the appropriate seat number. We do keep track of where you're seated so we know who's here and who may have been excused, so it's important that you do have a seat in the proper seat number.

There are two seats that are outside of the jury box over here, and there are two seats that are outside the jury box over there.

1    And, again, I just caution you there are steps, it's
2    dark.  Please be careful when you're going into the jury box
3    there.
4        It does not matter to me whether you walk around the
5    front of the jury box or how you get to your seat.  Sometimes
6    it is easier to walk around the front.  But just be careful
7    when you're taking your seat.
8        Seat number one is closest to me outside of the jury
9    box in the front row.  So one through eight are in the front
10   row.  Seat number eight is outside the jury box furthest away
11   from me.  And then seat number—numbers nine through 16 are in
12   the back row, just so that you know that.
13       All right.  I'm going to turn it over to
14   Ms. Johnson, and she will select 16 names.
15       THE CLERK:   Juror for seat number one,
16   Rachel Sykes—S-y-k-e-s.
17           Seat number two, Daniel Parker—P-a-r-k-e-r.
18           Seat number three, Lindsey Neal—N-e-a-l.
19           Seat number four, Craig Taggett—T-a-g-g-e-t-t.
20           Seat number five, Bruce Turner—T-u-r-n-e-r.
21           Seat number six, Mary Christensen—C-h-r-I-s-t-e-n-s-
22   e-n.
23           Seat number seven, Susan Carlisle—C-a-r-l-I-s-l-e.
24           Last seat in the front row, seat number eight,
25   Rebecca Wiedmayer—W-I-e-d-m-a-y-e-r.

1          Seat number nine—back row, back of the

2      courtroom—Bradley Burkett—B-u-r-k-e-t-t.

3          Seat number ten, Linda Koelbel—K-o-e-l-b-e-l.

4          Is that correct, ma'am?  Is that correct?

5          JUROR KOELBEL:   Yes.

6          THE CLERK:   Thank you.

7          Seat number 11, Thao Duong—D-o—D-u-o-n-g.

8          Is that correct, sir?

9          JUROR DUONG:   It's Thao—

10          THE CLERK:   Thao.

11          JUROR DUONG:   —Duong.

12          THE CLERK:   Thank you.

13          Seat number 12, Jeffery Beatty—B-e-a-t-t-y.

14          Seat number 13, Diane Gottschalk—G-o-t-t-s-c-h-a-l-

15      k.

16          Is that correct, ma'am?

17          JUROR GOTTSCHALK:   Yes.

18          THE CLERK:   Thank you.

19          Seat number 14, Joseph Comiskey—C-o-m-i-s-k-e-y.

20          Seat number 15, Susan Bourget—B-o-u-r-g-e-t.

21          Seat number 16—last seat—Kimberly Ball—B-a-l-l.

22          THE COURT:   Give us one moment.

23          All right.  So I know that there's a number of you—

24          First of all, we're going to turn our attention to

25      these 16 individuals now.  However, if, at anytime, during

1    this process you cannot hear what I'm saying or the attorneys
2    are saying or what they are saying, please make sure you raise
3    your hand and wave it. It's very important that all of you
4    hear what's going on here.

5        As we go through the process, generally, one or more
6    of these individuals may be excused and you're going to take
7    their place. And it's just easier if you remember what's
8    asked and whatnot and you can just bring to our attention
9    maybe some of the issues, if there are any, or things that the
10   attorneys are looking for, which you'll know once they start
11   their questions. So just remember that.

12       And, again, it's very important that you're paying
13   attention to what's going on here. Please make sure you're
14   not reading anything or, again, looking up any
15   electronic—looking up anything on any electronics or whatnot.
16   Those should all be shut off anyway. And please don't leave
17   the courtroom during this process either.

18       All right. So those of you in the jury box—same
19   thing—if you can't hear what someone's saying, just raise your
20   hand and grab our attention, please, so that we can address
21   the issue.

22       And just a reminder, there's not a lot of
23   microphones here. It's very hard to hear back in the corner
24   what you're saying, so please speak up. Okay?

25       And, if, at anytime you don't understand a

question—Sometimes we just ask lousy questions.—just let us know and we'll rephrase the question.

Okay. So I know, Mr. Burkett, I think we talked to you about your business. And, again, the attorneys may have some questions.

And same thing, Mr. Duong. And we know each other, and I've laid that out for the attorneys, too.

And Ms. [*sic*] Comiskey—

Okay. I think we've got two seats switched. I have Joseph Comiskey in seat 14.

THE CLERK: Fourteen.

THE COURT: All right. And I have Susan—Is it Bourget?

THE CLERK: Fifteen. She's . . . (inaudible)

THE COURT: Oh, I'm sorry.

THE CLERK: . . . (inaudible)

THE COURT: I forgot about you two over there. So, yes. I'm just looking at the wrong place. I'm not used to having two people over there. I'm sorry.

So, Mr. Comiskey, I think you indicated that you might know one of the attorneys—one of the witnesses, correct?

JUROR COMISKEY: Yes.

THE COURT: All right. And, again, I'll let the attorneys address that.

Ms. Ball, I think you indicated that you knew one of

105

the witnesses, also, correct?

                    JUROR BALL:   Yes.

                    THE COURT:   Mr. Turner—

                    JUROR TURNER:   Yes.

                    THE COURT:   Right there.   Okay.   Sorry, sir.

                    And I think you indicated you know a witness,

        correct?

                    JUROR TURNER:   Yes.

                    THE COURT:   And you are also on vacation September—

                    JUROR TURNER:   Right.

                    THE COURT:   —8, you indicated.   All right.   And I'm

        not going to make you miss your vacation.   So, again, we have

        alternates.   If it goes that long and you happen to be on the

        panel, then we'll deal with that.   Okay?

                    And Ms. Neal, we spoke with you, also.   I believe

        you know one of—

                    No?   All right.   Hold on.

                    No, we did talk to you about your job, though.

                    No?

                    THE CLERK:   A different Neal.

                    THE COURT:   I think it was Lindsey Neal, then, that

        we spoke with.

                    THE CLERK:   Shawn Neal.

                    JUROR LINDSEY NEAL:   That's me.

                    THE COURT:   That's you.

1            I have the wrong Neal written down.  Sorry.

2            You are Lindsey.  All right.

3            So we didn't talk to you.

4            All right.  Let me just address a few things and

5    then I'll turn it over to the attorneys, and they can ask some

6    questions.

7            First of all, in every criminal case the burden of

8    proof is on the prosecuting attorney, and that burden of proof

9    is beyond a reasonable doubt.  I read you the definition of

10   reason—beyond a reasonable doubt.

11           You all understand that that is the burden of proof

12   and who carries that burden in every criminal case?  Yes?

13           UNIDENTIFIED JURORS:    Yes.

14           THE COURT:    Yes.  Okay.

15           So the—Every defendant—If any one of us were seated

16   over there with Mr. Champion, we could play Monopoly, we could

17   play cards.  Mr. Champion doesn't have to ask one question of

18   any witness.  They don't have to pay attention.  The burden of

19   proof is not on the defendant.  The defendant doesn't have to

20   do anything.

21           Do all of you understand that?

22           Yes.

23           Does anyone have a problem with that?  Raise your

24   hand if you do.

25           No.  So everyone understands that.

1          And sometimes we hear different burdens of proof on

2    TV, maybe beyond a shadow of a doubt, beyond all doubt.  The

3    burden of proof, as I read to you, is beyond a reasonable

4    doubt.  I gave you the definition.  You're going to hear it

5    again.

6          But everyone understands that?  Yes?

7          UNIDENTIFIED JURORS:    Yes.

8          THE COURT:    Yes.  Okay.

9          Now we all have a constitutional right not to

10   testify if we were seated at that table.

11          Do all of you understand that?  Yes?

12          UNIDENTIFIED JURORS:    Yes.

13          THE COURT:    Okay.  So I don't know what Mr. Steel's

14   going to do.  That's going to be between him and his attorney.

15   They can make that decision as the trial progresses.  Maybe

16   they've made it.  I don't know.  But Mr. Steel does not have

17   to testify; and, if he chooses not to—We would all have that

18   right to make that decision.—and you—that cannot play any part

19   in your deliberations.

20          Do all of you understand that?

21          UNIDENTIFIED JURORS:    Yes.

22          THE COURT:    Yes.

23          Does anyone have a problem with that?  Raise your

24   hand if you do.

25          Some folks think, oh, man, I have to hear both sides

1    of the story or whatnot; but we all have that right.

2           And you can all accept that and understand that?

3    Yes?

4           UNIDENTIFIED JURORS:   Yes.

5           THE COURT:   Okay.  Now some folks just may have,

6    for religious regions or whatnot, just cannot sit in judgment

7    against one of their fellow citizens.

8           Do any of you have any of those kinds of feelings or

9    those religious beliefs?  Raise your hand if you do.

10          No one does.  All right.  No hands are raised, I

11   should say.  So I appreciate that

12          Have any of you ever been on a jury before?  If so,

13   raise your hand.

14          All right.  So, Mr. Comiskey, you have—Comiskey.

15          JUROR COMISKEY:   Comiskey, yes.

16          THE COURT:   Comiskey.

17          Civil or criminal case, sir?  A civil or a criminal

18   case?  Do you know?

19          JUROR COMISKEY:   It was back in—

20          THE COURT:   A civil case is generally someone suing

21   someone else for money, generally.

22          JUROR COMISKEY:   I believe it was criminal—

23          THE COURT:   Okay.

24          JUROR COMISKEY:   —and it was only half a trial and

25   we were dismissed.

                                109

| | |
|---|---|
| 1 | THE COURT: I see. Okay. So you never ended up |
| 2 | deliberating. For whatever reason, you only were there for a |
| 3 | while and then you were excused? |
| 4 | JUROR COMISKEY: Correct. |
| 5 | THE COURT: Yes. Okay. |
| 6 | Was that here in Kalamazoo County? |
| 7 | JUROR COMISKEY: Yes. |
| 8 | THE COURT: Approximately how long ago? |
| 9 | JUROR COMISKEY: It as 1987. |
| 10 | THE COURT: So it was a while ago, but you kind of |
| 11 | understand how the process goes. All right. |
| 12 | Anything about that that would cause you any concern |
| 13 | with sitting on the jury here today, sir? |
| 14 | JUROR COMISKEY: No. |
| 15 | THE COURT: All right. Ms. [*sic*] |
| 16 | Beatty—Mr. Beatty, same questions to you, sir. Civil or |
| 17 | criminal case? |
| 18 | JUROR BEATTY: It was a civil case, ma'am. |
| 19 | THE COURT: Here in Kalamazoo? |
| 20 | JUROR BEATTY: Yes, ma'am. |
| 21 | THE COURT: Approximately how long ago? |
| 22 | JUROR BEATTY: Over two years. |
| 23 | THE COURT: And you deliberated? |
| 24 | JUROR BEATTY: Yes, ma'am. |
| 25 | THE COURT: Were you the foreperson? |

110

1    JUROR BEATTY:  No, ma'am.

2    THE COURT:  All right.  Do you remember what it was

3    about?  An auto accident or—

4    JUROR BEATTY:  It was wrongful termination.

5    THE COURT:  Okay.  A wrongful termination.

6    Anything about that process that causes you any

7    concern with sitting here today, sir?

8    JUROR BEATTY:  No, ma'am.

9    THE COURT:  Okay.  Same questions to you, sir,

10   Mr. Duong.

11   JUROR DUONG:  I was—

12   THE COURT:  Civil or criminal case?

13   JUROR DUONG:  I was never—I didn't raise my hand.

14   THE COURT:  Oh, I'm sorry.  I thought you raised

15   your hand.

16   Who did I miss?  Ms. Koelbel, you raised your hand.

17   Same questions to you, ma'am.

18   JUROR KOELBEL:  Criminal case.

19   THE COURT:  Approximately how long ago?

20   JUROR KOELBEL:  Two years.

21   THE COURT:  Here in Kalamazoo?

22   JUROR KOELBEL:  Yes.

23   THE COURT:  Were you the foreperson?

24   JUROR KOELBEL:  No.

25   THE COURT:  Do you recall what the case was about?

111

1      JUROR KOELBEL:   Yes.

2      THE COURT:   What was it about?

3      JUROR KOELBEL:   It was a murder case.

4      THE COURT:   Okay.  So then you know how the process

5  works?  Yes?

6      Is there anything about that case that causes you

7  any concern with sitting here?

8      JUROR KOELBEL:   Not with sitting here.

9      THE COURT:   Okay.  Obviously, all new facts and you

10 have to base your decision only on the evidence, and you know

11 that.

12     JUROR KOELBEL:   Yes.

13     THE COURT:   Okay.  Ms. Sykes, did you raise your

14 hand?

15     JUROR SYKES:   I did.

16     THE COURT:   All right.  Go ahead, ma'am, same

17 questions.

18     JUROR SYKES:   I served over two years ago on a

19 criminal case.  We did deliberate, and I was not the primary

20 person.

21     THE COURT:   You weren't the foreperson.

22     JUROR SYKES:   Not the foreperson.

23     THE COURT:   Do you recall what the case was about,

24 ma'am?

25     JUROR SYKES:   It was regarding a meth lab.

112

1          THE COURT:  Okay.  All right.  I appreciate that.

 2          And, Mr. Turner, I believe—Same questions to you,

 3   sir.

 4          JUROR TURNER:  I did not raise my hand.

 5          THE COURT:  You did not raise your hand.

 6          Did you raise your hand, Mr. Taggett?

 7          JUROR TAGGETT:  No.

 8          THE COURT:  No.

 9          Anybody else in the front row raise your hand?  Ah,

10   Ms. Neal.  Okay.  Go ahead.

11          JUROR LINDSEY NEAL:  It was about ten years ago.

12   It was a criminal case.  I did deliberate.  I was not the

13   foreperson.  And it was delivery of a controlled substance.

14          THE COURT:  Okay.  You might have to speak up a

15   little bit.  Just—Just as a reminder about that.

16          Okay.  Is there anyone here who has just any overall

17   concerns where you just don't feel you could be fair or

18   impartial if you sat on this jury that you want to bring to

19   our attention?  Raise your hand.

20          All right.  Ms. Neal, go ahead.

21          JUROR LINDSEY NEAL:  . . . (inaudible)

22          THE COURT:  Yes, you want to approach?  Sure.

23          And, Counsel, if you would approach.

24          (At 2:12 p.m., bench conference as follows:

25               JUROR LINDSEY NEAL:  During the initial phase

1      of the jury selection and both of the attorneys had

2      to go behind closed doors, the defendant kind of

3      tried to like approach the jury panel and said, can

4      I approach.  And you had to kind of sit him down.

5      And that just kind of caused some concerns for me—

6                THE COURT:   Okay.

7                JUROR LINDSEY NEAL:   —just his actions.

8                THE COURT:   Okay.

9                JUROR LINDSEY NEAL:   I don't think I can be

10     unbiased.

11               THE COURT:   Okay.  Well, I will indicate he

12     needed to use the restroom.  Does that—And he,

13     obviously, might not know the processes; so he was

14     just wanting to let us know that he needed a break.

15     Is that anything—

16               JUROR LINDSEY NEAL:   That seems really

17     strange, but—

18               THE COURT:   Okay.

19               JUROR LINDSEY NEAL:   —I mean—

20               THE COURT:   You just feel, for whatever

21     reason, just—Okay.

22               JUROR LINDSEY NEAL:   I don't know if I can be

23     fair.

24               THE COURT:   Okay.  Did you talk about that

25     with anyone else?

                              114

1          JUROR LINDSEY NEAL:   No.

2          THE COURT:   Okay.  I appreciate that.

3          Let me see if the attorneys have any other

4     questions.

5          JUROR LINDSEY NEAL:   Okay.

6          THE COURT:   Okay.  Do you have any questions?

7          MR. CUSICK:   So the—Mr. Steel approached you

8     and said something to you?

9          JUROR LINDSEY NEAL:   No, no, no, no.  When you

10    guys had to go back—

11         THE COURT:   He—

12         MR. CUSICK:   Did he say anything—

13         THE COURT:   —referenced the Court—wanted to

14    speak with me and I just said hold on a second, wait

15    till the attorney—

16         MR. CUSICK:   That's—Okay.  So that's the

17    incident you're referring to then.

18         JUROR LINDSEY NEAL:   Yeah, when he stood up he

19    kind of faced us, and I was like, what's he doing.

20    And it just kind of threw me off.

21         THE COURT:   Okay.

22         MR. CUSICK:   Are you able to—

23         JUROR LINDSEY NEAL:   Get past that?

24         MR. CUSICK:   —get past that and just look at

25    the evidence in this case and not let that

115

1    specifically stop you from judging the evidence?

2         JUROR LINDSEY NEAL:   I mean, I definitely will

3    do my best.  I can't say that the thoughts will be

4    clearly out of my mind.

5         MR. CUSICK:   That won't have any concern for

6    you regarding looking at the evidence, whether or

7    not the people on the witness stand are telling the

8    truth, and whether or not you think they're credible

9    and whether or not the evidence is—either meets the

10   standard of beyond a reasonable doubt or doesn't?

11        JUROR LINDSEY NEAL:   No.

12        THE COURT:   Okay.  Mr. Champion?

13        MR. CHAMPION:   Could you be fair and impartial

14   towards my client?

15        JUROR LINDSEY NEAL:   I mean, with the

16   explanation, yes, I will try; but I don't know

17   'cause it just seemed very odd to me.

18        THE COURT:   Okay.  I appreciate that.  I'll

19   let you go ahead and have a seat.

20        And, Counsel, . . . (inaudible)

21        Yeah, and I—I think I told you when we were in

22   chambers—

23        MR. CUSICK:   Yeah, I didn't hear that.

24        THE COURT:   —that, when you both stepped out,

25   he did start talking like he wanted to talk to me.

1      I said, hold on a second, and I just kind of said,

2      hold on a second.  So that was what happened there;

3      and—

4              MR. CHAMPION:   . . . (inaudible)

5              THE COURT:   —obviously, he was—needed to use

6      the restroom.  But that's the extent of that, so—

7              MR. CUSICK:   I don't think—I don't think there

8      is an issue other than, once it's explained, you're

9      not judging—you know, you're going to listen to the

10     evidence and determine whether or not you believe

11     the evidence.

12             I think . . . (inaudible) once it's explained

13     that, you know, an awkwardness in court that that

14     shouldn't be used against the defendant, I don't

15     think it's enough for cause.

16             THE COURT:   Mr. Champion?

17             MR. CHAMPION:   I think she said she couldn't

18     be fair.  She keeps saying she will try.

19             THE COURT:   Okay.  I disagree with that.  I

20     think she said she could be.  But I do have concerns

21     because, when I asked her and when I explained that

22     he just needed to use the . . . (inaudible) she kind

23     of had an odd expression on her face that caused me

24     to pause.

25             I'm going to go ahead and excuse her.  I don't

1          want her to read into something and just from the

2          get-go and then have that—

3                    MR. CUSICK:    Okay.

4                    THE COURT:    —cause some concern throughout the

5          rest of the trial.

6                    MR. CUSICK:    Yeah.

7                    THE COURT:    So, just so the record's clear,

8          your objection's noted; but I am going to go ahead

9          and excuse her for cause.    Okay.

10                    MR. CHAMPION:    Thank you.

11                    MR. CUSICK:    Thank you, Judge.)

12          THE COURT:    Ma'am, I'm going to go ahead and excuse

13     you.    You can place your badge in the basket on the right side

14     of the—might be the left side of the double doors.    I'm not

15     sure where the basket is back there.    Left side.    All right.

16          Thank you, ma'am, for your time.

17          We're going to select another name for seat number

18     three.

19          THE CLERK:    Terry Jackson—J-a-c-k-s-o-n.

20          THE COURT:    All right.    Mr. Jackson, you were able

21     to hear all the questions that I previously asked?

22          JUROR JACKSON:    Yes.

23          THE COURT:    Yes.

24          So have you ever been on a jury before?

25          JUROR JACKSON:    No, I have not.

1          THE COURT:   And you understand the burden of proof

2    in every criminal case—

3          JUROR JACKSON:   I do.

4          THE COURT:   —is beyond a reasonable doubt?

5          JUROR JACKSON:   I do.

6          THE COURT:   Any problems with that, sir?

7          JUROR JACKSON:   No problems.

8          THE COURT:   Okay.  And you also understand that all

9    of us have a constitutional right not to testify and a

10   defendant in every criminal case does not have to present any

11   evidence?  You understand that?

12         JUROR JACKSON:   I understand.

13         THE COURT:   Any problems with those rights or those

14   concepts, sir?

15         JUROR JACKSON:   No problem.

16         THE COURT:   No.  I appreciate that.

17         Okay.  With that, I'm going to turn it over to the

18   attorneys to begin their questions.

19         Go ahead.

20         MR. CUSICK:   Thank you, your Honor.

21         Your Honor, may I turn the podium?

22         THE COURT:   Yes, absolutely.

23         MR. CUSICK:   Thanks.

24         THE COURT:   You can move it wherever you want to

25   move that.

1         MR. CUSICK:    Thank you.

2         Good afternoon.

3         UNIDENTIFIED JURORS:    Good afternoon.

4         MR. CUSICK:    Once again, my name is Paul Cusick.

5    I'm an assistant attorney general.

6         And I want to thank you for your time today.

7         And the questions that I ask and the questions that

8    the Court has asked and the questions that Mr. Champion is

9    going to ask, they're not meant to pry into your lives or to

10   make you feel uncomfortable.  I want this to be as easy of a

11   process for you as possible.  But the People of the State of

12   Michigan, who I represent, and the defendant both have a right

13   to a fair and impartial jury.  So the questions that I ask

14   are—and the questions that Mr. Champion is going to ask is

15   based on betting a fair and impartial jury for both the People

16   and the defendant.

17        Is it Ms. Christensen?

18        Ms. Christensen, how can you tell if somebody's

19   telling the truth?

20        JUROR CHRISTENSEN:    Well, I think you just have to

21   go with the facts that you know rather than trying to tell by

22   the way they act.  What you hear from in the evidence would

23   probably help you decide that.  I suppose sometimes people act

24   fidgety or something, but I don't know if that particularly

25   would tell you anything.

MR. CUSICK:  Ms. Carlisle—

THE COURT:  Hold on a second.

UNIDENTIFIED JUROR:  We're having a hard time—

THE COURT:  Okay.  You're going to need to speak up—

JUROR CHRISTENSEN:  Not loud enough?

THE COURT:  —a little bit, ma'am.

JUROR CHRISTENSEN:  Sorry.

THE COURT:  That's okay.

JUROR CHRISTENSEN:  I said that I thought probably the evidence that you were hearing would give you some idea of the truthfulness of the person rather than going by what they look like or how they spoke, I think's kind of what I said.

MR. CUSICK:  Is it Ms. Carlisle?

JUROR CARLISLE:  Yes.

MR. CUSICK:  Ms. Carlisle, how do you determine if somebody is credible or somebody is telling the truth?

JUROR CARLISLE:  Well, the facts; and when they're—when they're not—I'm going by my kids.

MR. CUSICK:  I'm sorry.  You said something.

JUROR CARLISLE:  They're very—

MR. CUSICK:  Can you please speak up.

JUROR CARLISLE:  They're very fidgety—

MR. CUSICK:  Okay.

JUROR CARLISLE:  —and they don't look right at you.

1    And I just—I go by all the facts and what is truthful.

2              MR. CUSICK:   You look to see if the other facts

3    corroborate what the witness is saying?

4              JUROR CARLISLE:   Yes, sir.

5              MR. CUSICK:   Do you agree with that,

6    Ms. Christensen?

7              JUROR CHRISTENSEN:   Yes.

8              MR. CUSICK:   Mr. Taggett—

9              JUROR TAGGETT:   Yes.

10             MR. CUSICK:   —what are some of the things that you

11   look for to determine if a witness or somebody's telling the

12   truth?

13             JUROR TAGGETT:   Their confidence, steadiness of

14   voice, posture, just, you know, visual cues, and the facts, of

15   course.

16             MR. CUSICK:   And the facts?

17             JUROR TAGGETT:   Yes.

18             MR. CUSICK:   Mr. Beatty?   Is it Beatty?

19             JUROR BEATTY:   Yes, sir.   I would answer the same

20   way as the other prospective jurors and just say, on their

21   face, what I would determine on the facts.

22             MR. CUSICK:   Okay.   And would you look to see what

23   other—what that witness said in a vacuum, or would you look at

24   what that witness said based on all of the evidence?

25             JUROR BEATTY:   Based on all the evidence.

                              122

```
 1              MR. CUSICK:   Do you agree with that, Mr. Taggett?

 2              JUROR TAGGETT:   Yes.

 3              MR. CUSICK:   Mr. Turner, would you agree with that?

 4              JUROR TURNER:   Yes.

 5              MR. CUSICK:   Okay.  Mr. Jackson, do you agree with

 6      that?

 7              JUROR JACKSON:   Yes, I do.

 8              MR. CUSICK:   Okay.  So is it fair to say,

 9      Ms. Christensen, that you would look at all of the evidence

10      and determine through your own common sense what you believe?

11      Is that a fair statement?

12              JUROR CHRISTENSEN:   Yes.

13              MR. CUSICK:   Ms. Carlisle, you agree with that?

14              JUROR CARLISLE:   Yes, I do.

15              MR. CUSICK:   Okay.  Mr. Comiskey, do you agree with

16      that?  Is there any issue that you have with that?

17              JUROR COMISKEY:   I have no issues with looking at

18      all the evidence.

19              MR. CUSICK:   Okay.  And how many—I think the judge

20      alluded to this.  How many people have heard the term beyond a

21      shadow of a doubt?

22              How many people have heard the term beyond all

23      doubt?

24              How many people have heard the term more likely than

25      not?
```

1          Have you heard this—Raise your hand if you heard

2     this on, maybe, a television show like *CSI*—

3               UNIDENTIFIED JUROR:   Uhm-hmm.

4               MR. CUSICK:   —*Perry Mason*.

5               UNIDENTIFIED JUROR:   Yeah.

6               MR. CUSICK:   Is that—Ms. Christensen, is that where

7     you heard it possibly?

8               JUROR CHRISTENSEN:   On TV.

9               MR. CUSICK:   Okay.  Ms. Koelbel?

10              JUROR KOELBEL:   I heard it at a previous trial,

11    plus on TV.

12              MR. CUSICK:   Okay.  Well, that's—Those terms beyond

13    a shadow of a doubt, beyond all doubt, more likely than not,

14    those terms—I want you to forget about those terms.  That's

15    not the standard that the People—that I'm held to.  I can't

16    just say, well, more likely than not, the defendant did it.  I

17    have a higher standard than that.

18              I also—But I don't have a standard beyond all doubt

19    or beyond a shadow of a doubt.  The standard that I have to

20    prove is beyond a reasonable doubt—And the judge alluded

21    that.—based on reason and based on common sense.

22              Mr.—Is it Duong?

23              JUROR DUONG:   Yeah.

24              MR. CUSICK:   Do you—Do you understand that?

25              JUROR DUONG:   Yes.

                                124

1      MR. CUSICK:   Okay.  Ms. Gottschalk—

2      JUROR GOTTSCHALK:   Yes.

3      MR. CUSICK:   Is that correct?

4      —do you have an issue with that, or do you

5      understand common sense and reason is what reasonable doubt

6      is?

7      JUROR GOTTSCHALK:   Yes.

8      MR. CUSICK:   Okay.  That's Ms. Sykes.  If—I'm going

9      to give you a hypothetical situation.  We can't really tell

10     because the blinds are closed.  But, if an individual comes

11     from walking on the street, comes into the courtroom, if that

12     person has a raincoat on, is drenched in water, and has an

13     umbrella and you've been in here all day, haven't been able to

14     see what the weather is like outside, what would you—what

15     would that feature indicate to you?

16     JUROR GOTTSCHALK:   I may choose to infer that it's

17     raining outside—

18     MR. CUSICK:   Okay.  Why—

19     JUROR GOTTSCHALK:   —based on my previous knowledge

20     about . . . (inaudible) picture of what I would see that it

21     was raining outside.

22     MR. CUSICK:   And you would be able to use your

23     common sense to determine, well, it must be raining outside,

24     even though you weren't able to specifically see the rain.

25     JUROR GOTTSCHALK:   I would likely determine it was

1    raining outside.

2           MR. CUSICK:   Okay.  Mr. Burkett, do you—do you

3    agree with that answer?

4           JUROR BURKETT:   Yes.

5           MR. CUSICK:   Okay.  Mr. Beatty, do you agree with

6    that answer?

7           JUROR BEATTY:   Yes, sir, I do.

8           MR. CUSICK:   Is there anybody that disagrees that

9    you can use your common sense from a scenario like that?  Even

10   though you didn't see it specifically, your common sense

11   indicates that it's raining outside.

12          Does anybody have children here?

13          Anybody have young children currently five, six,

14   seven years old?

15          Mr. Duong, you have a five or six-year old?

16          JUROR DUONG:   Yes.

17          MR. CUSICK:   Okay.  It's you and your—your five—

18          Is it a five-year-old daughter or—

19          JUROR DUONG:   Six-year-old son.

20          MR. CUSICK:   A six-year-old son.  Mr. Duong, you

21   and your six-year-old son are the only people in the

22   house—Okay?—and you have to do some work in the back yard and

23   he's watching television.  There's a cookie jar in the

24   kitchen—Okay?—has a couple of cookies left.

25          And you tell him, I'm going to go outside for ten

1    minutes, and I don't want you to take a cookie out of that

2    cookie jar.  It's only you and him in the house.

3          You go outside.  You come back ten minutes later and

4    the cookies are gone.  Just based on your experience, based on

5    your common sense, what would that indicate to you?

6          JUROR DUONG:    That he ate them.

7          MR. CUSICK:    Okay.  Would you basically have any

8    problem with saying my son ate the cookies?

9          JUROR DUONG:    No.

10          MR. CUSICK:    Okay.  It might even strengthen it if

11    he had cookie crumbs on his face, correct?

12          JUROR DUONG:    Yes.

13          MR. CUSICK:    Okay.  But you don't need to see the

14    cookie crumbs to know that, right?

15          Does anybody have a problem with that scenario?

16          Okay.  I indicated briefly about *CSI* and *Perry Mason*

17    and some of these shows on television.  Can I have some hands

18    of people that watch those shows again.

19          Mr. Turner, I have to confess that I've seen it a

20    couple of times—*CSI*—watched *Perry Mason*.  I didn't—It's not

21    the reason I became a lawyer or anything.  So I haven't

22    watched too many shows.  But is it fair to say that

23    evidence—scientific evidence in *CSI* seems to just come like

24    that, it seems to be pretty easy?

25          JUROR TURNER:    Yeah.

127

```
 1              MR. CUSICK:    And is *CSI* a documentary, or is it a
 2    fictional television show?
 3              JUROR TURNER:    Fictional.
 4              MR. CUSICK:    Okay.  And what's—Through your life
 5    experience, what do fictional television shows tell you about
 6    what really happens in the court or what really happens in
 7    science?
 8              JUROR TURNER:    It's the furthest thing from the
 9    truth.
10              MR. CUSICK:    Okay.  Okay.  That's—And you're—Are
11    you able to put that aside?
12              JUROR TURNER:    Yes.
13              THE COURT:    I'm—I didn't hear the answer.
14              MR. CUSICK:    Furthest thing from the truth, I
15    believe he said.
16              THE COURT:    Just a reminder—
17              MR. CUSICK:    Is that correct—
18              JUROR TURNER:    Yes.
19              THE COURT:    —speak up.
20              MR. CUSICK:    —Mr.—
21              JUROR TURNER:    Okay.
22              THE COURT:    Thank you.
23              MR. CUSICK:    Okay.  So—And you're able to put aside
24    whatever you might have heard from television or a fictional
25    show and say, well, that's not really what science is about.
```

I'll listen to the scientists or the evidence that comes in at trial?

JUROR TURNER: Yes.

MR. CUSICK: Everybody agree with that? Anybody have a problem with that?

Mr. Comiskey, now you're a chemist, correct?

JUROR COMISKEY: Correct.

MR. CUSICK: Okay. And what kind of—Can you just briefly—I'm not a chemist. That's why I went to law school. I'm not an engineer 'cause I could never be a chemist or engineer. So can you—can you describe what you do for a living.

JUROR COMISKEY: Yeah, I develop and troubleshoot chemical tests for pharmaceuticals for potency and impurities. And we have to—we have to rely on the evidence—

MR. CUSICK: Right.

JUROR COMISKEY: —when things go—You know, we can't just assume things; so—

MR. CUSICK: Okay.

JUROR COMISKEY: —you have to rely on evidence.

MR. CUSICK: Is it fair—Is it fair to say that in chemistry things have to be basically perfect oftentimes for—

JUROR COMISKEY: They're never—

MR. CUSICK: —for an event—

JUROR COMISKEY: —perfect.

129

1          MR. CUSICK:   What's that?

2          JUROR COMISKEY:   They're never perfect.

3          MR. CUSICK:   Never perfect.

4          JUROR COMISKEY:   No.

5          MR. CUSICK:   So imperfection happens a lot; is that

6    fair to say?

7          JUROR COMISKEY:   I'm sorry?

8          MR. CUSICK:   Imperfection happens often in

9    chemistry?

10          JUROR COMISKEY:   Correct.

11          MR. CUSICK:   And, based on your experience, things

12   don't happen a hundred percent clear?  It's not always clear

13   to you in your profession, correct?

14          JUROR COMISKEY:   That's correct.

15          MR. CUSICK:   So I'm learning a little about

16   chemistry.  Maybe I thought it was a little bit more certain.

17          But you'll agree that the same things' true of the

18   evidence in the case.  There's things that might not seem

19   perfect to you, but you're going to be able to use your common

20   sense to try to find the truth.

21          Do you agree with that statement?

22          JUROR COMISKEY:   Yes, I would.

23          MR. CUSICK:   Ms. Ball—I'm sorry.—you're over there.

24   Would you agree with that?

25          JUROR BALL:   Yes.

130

```
 1                    MR. CUSICK:    Okay.

 2                    THE COURT:    Hold on one moment.

 3                    You need a break or you want—

 4                    Yes?  Okay.

 5                    Is there anyone else here who needs a break?  Raise

 6          your hand if you do.

 7                    No one does.  Okay.

 8                    Ms. Wint should be on her way.  I'm going to let

 9          her—

10                    I'm assuming you need to use the restroom.

11                    UNIDENTIFIED JUROR:    Yes.  I'm sorry.

12                    THE COURT:    —let her take you out, and then we'll

13          wait patiently for you before we proceed.  Okay?

14                    So she'll just—

15                    UNIDENTIFIED JUROR:    I'm sorry.

16                    THE COURT:    No, that's okay.

17                    UNIDENTIFIED JUROR:    Thank you.

18                    (At 2:30 p.m., unidentified juror exits courtroom)

19                    THE COURT:    So, ladies and gentlemen, if you want

20          to stand and stretch a moment while we're waiting, you're

21          welcome to do that.  We're still on the record.  So, again,

22          please don't talk.  So please don't talk.  We're still on the

23          record.  Okay?

24                    Yeah, and, folks in the back row, if you want to

25          move up and see if there's empty seats, if it's hard to hear,
```

1      you're welcome to try to do that.  If everyone else might just

2      scoot over to the outside aisles, that would be great.  Then

3      they can make that choice.  They don't have to.

4              Ma'am, right now you just have to stand in the back

5      because all the jurors are seated in the rows, but you're

6      welcome to stay.

7              (At 2:34 p.m., unidentified juror returns to

8              courtroom)

9              UNIDENTIFIED JUROR:   So sorry.

10             THE COURT:   That's fine.

11             All right.  We will continue.

12             MR. CUSICK:   Thank you, your Honor.

13             Ms. Bourget?  Ms. Bourget, what are some of the

14     things that you look at to determine what somebody's intent

15     may be.

16             JUROR BOURGET:   What their intent is or when

17     they're intent?

18             MR. CUSICK:   What their intent is—I--t-e-n-t—what

19     they intend to do.  What are some of the things you might look

20     for?  I don't mean to, you know, try to put anybody on the

21     spot.  I just want to have a conversation to—

22             JUROR BOURGET:   Sure.

23             So you're trying—How would I determine what

24     someone's intent is, if they meant to do—

25             MR. CUSICK:   Yeah.

                                    132

1          JUROR BOURGET:    —something.

2          MR. CUSICK:    Yeah, somebody—are there ways to look

3     at somebody's intent.  Have you heard of the term, actions

4     speak louder than words?

5          JUROR BOURGET:    Sure.

6          MR. CUSICK:    What does that mean to you?

7          JUROR BOURGET:    It means that people say—what they

8     say may not be exactly what they mean but often what they do

9     is their ultimate purpose.  People work toward their ultimate

10    purpose, perhaps, with action rather than with words.

11         MR. CUSICK:    Okay.  That makes sense.

12         Ms. Wiedmayer, do you agree with that, the statement

13    that—How else are the things—are some of the things that you

14    look for?  What are those things to determine what somebody's

15    intent is?

16         JUROR WIEDMAYER:    I think I could do with the

17    actions—

18         THE COURT:    I think you're going to have to speak

19    up a little bit.  I'm sorry.

20         JUROR WIEDMAYER:    I believe the action does speak

21    louder than words.  You can state them, but, until

22    . . . (inaudible)

23         MR. CUSICK:    Okay.  Mr. Turner, do you have any

24    ways that you look at somebody's intent?

25         JUROR PARKER:    Me?

|    |                                                              |
|----|--------------------------------------------------------------|
| 1  | MR. CUSICK:   Yeah.  I'm sorry.  Is it Mr. Parker? |
| 2  | JUROR PARKER:   Yeah, it's Parker. |
| 3  | MR. CUSICK:   I'm sorry.  Mr. Turner's here.  Sorry. |
| 4  | There's a lot of—a lot of names I got to—got to know. |
| 5  | JUROR PARKER:   No problem. |
| 6  | What was the question again? |
| 7  | MR. CUSICK:   For intent.  Are there things that you |
| 8  | look at to determine what somebody intends to do or what their |
| 9  | intent is? |
| 10 | JUROR PARKER:   Body language— |
| 11 | MR. CUSICK:   Okay. |
| 12 | JUROR PARKER:   —and like that. |
| 13 | MR. CUSICK:   Ms.—Ms. Bourget, if you see somebody |
| 14 | outside and you see somebody get pushed over and robbed, the |
| 15 | person that robs that individual, is it pretty obvious what |
| 16 | their intent is to you? |
| 17 | JUROR BOURGET:   Yes. |
| 18 | THE COURT:   Their intent would be to take |
| 19 | something, right? |
| 20 | JUROR BOURGET:   Correct. |
| 21 | MR. CUSICK:   Can you read minds? |
| 22 | JUROR BOURGET:   No. |
| 23 | MR. CUSICK:   I can't read minds either. |
| 24 | Ms. . . . (inaudible), do you agree with that? |
| 25 | UNIDENTIFIED JUROR:   I do. |

134

MR. CUSICK:   Is it Wiedmayer?

JUROR WIEDMAYER:   Wiedmayer.

MR. CUSICK:   Wiedmayer.  Do you agree—agree with that that we determine people's intent by looking at the surrounding circumstances, by looking at their actions, sometimes looking at their words and what they said—Right?

JUROR WIEDMAYER:   . . . (inaudible)

MR. CUSICK:   —but that we can't read minds and using our common sense to determine what somebody's intent is?

Does everybody agree with that?

UNIDENTIFIED JUROR:   Yes.

MR. CUSICK:   Anybody disagree with that?

Mr. Beatty, I'll ask you this question.  Do you agree that everybody in our society is protected by the laws?

JUROR BEATTY:   Yes, sir.

MR. CUSICK:   Okay.  And so the same example that I just gave Ms. Bourget that if somebody is outside and they get robbed, it'd be—a wrong has been done if that person might be a prominent doctor in the community, correct?

JUROR BEATTY:   It would be wrong if it was anybody . . . (inaudible)

MR. CUSICK:   That's my point.  It doesn't matter if that person's a doctor.  It doesn't matter if that person's a—It doesn't matter if that person might have made bad choices in life, correct?

135

1          JUROR BEATTY:    Correct.

2          MR. CUSICK:    Does it even matter if that person may

3     have had a criminal record or done things that you and I might

4     be appalled by?  Does that even matter?  Does that person

5     deserve to be robbed at that—at that time?

6          JUROR BEATTY:    No, sir.

7          MR. CUSICK:    Exactly.  I agree.

8          Does everybody agree with that?  Does anybody

9     disagree with the fact that, regardless of who you are or

10    regardless of choices that you made in life, that nobody

11    deserves to have a crime committed on them?  Does anybody dis—

12          Now that's how our society and system of laws occur.

13          So, Mr. Turner, if you see witnesses on the stand or

14    hear things about a victim in this case, even if you strongly

15    disagree with the lifestyle that they live, is that going to

16    affect your judgment on the facts of this case as to what

17    happened?

18          JUROR TURNER:    No.

19          MR. CUSICK:    Okay.  Mr. Taggett, will that have any

20    effect on you?

21          JUROR TAGGETT:    No.

22          MR. CUSICK:    We're going to—We're not judging

23    individuals here, we're looking at the facts.  Does everybody

24    agree with that?  Anybody have an issue with that?

25          Everybody is protected by the laws.

136

1          Mr. Jackson, how do you usually get your news?  Do
2     you read newspapers, you go online, watch television?
3               JUROR JACKSON:   A combination.
4               MR. CUSICK:   Okay.
5               JUROR JACKSON:   Not so much television; newspapers
6     and online.
7               Mr. CUSICK:   Okay.
8               THE COURT:   I think you're going to have to speak
9     up.  I think you said television, newspaper, or online.  Is
10    that what you said, sir?
11              JUROR JACKSON:   Yes.
12              THE COURT:   All right.
13              MR. CUSICK:   Okay.
14              THE COURT:   Go ahead.
15              MR. CUSICK:   And I'm not going to go too much into
16    the facts in this case, but this is a homicide that occurred
17    on April 24th of 2011 and—on Mabel Street.
18              Have you heard about this through the news at all?
19              JUROR JACKSON:   I don't recall it, no.
20              MR. CUSICK:   Okay.  If you did, will you be able
21    to, if you heard anything on the news, separate anything that
22    you heard and only base your decision on the witnesses that
23    testify, the exhibits that are—that are admitted, the evidence
24    in the case?
25              JUROR JACKSON:   I could do that.

1      MR. CUSICK:   Mr. Taggett, same thing.

2      JUROR TAGGETT:   . . . (inaudible)

3      MR. CUSICK:   Anybody that's—that heard anything

4  about this case, will you be able to put that aside?

5      Has anybody formed an opinion about the case?

6      UNIDENTIFIED JUROR:   Anybody did what?

7      MR. CUSICK:   Formed an opinion about this case as

8  of yet.

9      You haven't heard any evidence coming from the

10 witness stand—Correct?—so it's pretty hard to form an opinion.

11 Okay.

12     THE COURT:   Let me just jump in and indicate, too,

13 whoever is selected on the jury, if, at anytime you realize,

14 oh, I know a witness—And sometimes they come to the stand and

15 one of our jurors might recognize that person.—or if you

16 realize later on, oh, I might have heard something about the

17 case or whatnot, please make sure that you bring that to our

18 attention whether it's in the middle of the trial or now,

19 later on as voir dire goes.  So just please make sure you pass

20 the information along to us.

21     Go ahead, Counsel.

22     MR. CUSICK:   Thank you, your Honor.

23     Now, once again, I'm not going to go into the facts

24 of the case; but this is a homicide case and, by its very

25 nature, it's—there's going to be graphic evidence.  There's

138

going to be evidence that none of us would like to see and none of us feel comfortable seeing.

Mr. Jackson, would you have a problem analyzing that evidence, photos or testimony?  As gruesome as that may be, you'd be able to analyze that evidence in a fair and impartial way?

JUROR JACKSON:   I would not have a problem.

MR. CUSICK:   Ms. Sykes?

JUROR SYKES:   No, it would not be a problem.

MR. CUSICK:   Okay.  Anybody have a problem with that?

Now here's a question that sometimes comes up—not this particular question, but I'm asking the question to prove a point.

Mr. Comiskey, if I walked outside on the street and saw a guy that I didn't know—a man that I didn't know anything about and I went up to him and said, have you stopped beating your wife, would you say that that's a pretty unfair question?

JUROR COMISKEY:   Yes.

MR. CUSICK:   Okay.  And there's really not a right answer to that, correct?  Because, if you say yes—

JUROR COMISKEY:   Not yes or no.

MR. CUSICK:   —it means you used to; if you said, no, then it's—you're a pretty bad guy, too, right?

JUROR COMISKEY:   Yeah.

1          MR. CUSICK:   Okay.  And I say that, not because I'm
2     going to be asking outrageous questions or because
3     Mr. Champion's going to be asking outrageous questions, but I
4     mention that because, no matter how loud I ask the question or
5     how loud I object or how loud Mr. Champion objects or how he
6     asks a question, the questions in this case and what the
7     lawyers say is not evidence.  The evidence is the exhibits
8     that are admitted and the testimony coming from the witness
9     stand.
10          Ms. Carlisle, do you understand that?
11          JUROR CARLISLE:   Yes, I do.
12          MR. CUSICK:   Ms. Christensen?
13          JUROR CHRISTENSEN:   Yes.
14          MR. CUSICK:   Ms. Wiedmayer?
15          JUROR WIEDMAYER:   Yes.
16          MR. CUSICK:   Okay.  So that's kind of an extreme
17    example, but, you know, just because I ask a question or just
18    because Mr. Champion asks a question doesn't necessarily mean
19    it's true or something that you should analyze; you should
20    analyze the testimony from the witness stand.
21          I'm going to ask a couple quick questions here.
22    And, once again, I don't mean to pry into anybody's life.  I
23    just ask for a fair and honest answer.
24          Has anybody ever been the victim of a crime or known
25    somebody to be a victim of a crime?

1          Ms. Sykes, I'll start with you.

2          And I think it's fair to say, if you need to

3     approach, I think the Court would appreciate that.

4          THE COURT:   Sure.  If at anytime, again, you need

5     to—you would like to speak with us at the bench, you just let

6     us know.

7          Go ahead.

8          MR. CUSICK:   Ms. Sykes, do you—have you been the

9     victim of a crime, or do you know somebody who has?

10          JUROR SYKES:   No.  I know multiple victims of

11     crimes.

12          MR. CUSICK:   Okay.  And what types of crimes,

13     different?

14          JUROR SYKES:   I've worked for the last four years

15     in the child welfare system, a counselor that works with

16     traumatic experiences and families that have substantiated

17     . . . (inaudible)

18          MR. CUSICK:   So this is kind of commonplace victims

19     of crimes you meet on almost a daily basis—

20          JUROR SYKES:   Yes.

21          MR. CUSICK:   — . . . (inaudible)

22          JUROR SYKES:   Yes.

23          MR. CUSICK:   Are you able to put aside your

24     experiences and what you know from working with victims or—

25          Did you also deal with people who've been convicted

141

```
 1    of crimes, or do you—

 2              JUROR SYKES:   Yes, I have.

 3              MR. CUSICK:   So you deal with both people who have

 4    been convicted as well as victims?

 5              JUROR SYKES:   Yes, but primarily the victims.

 6              MR. CUSICK:   Okay.  Are you able to put that aside,

 7    just look at the evidence in this case and judge the evidence

 8    and not use your own experiences—

 9              JUROR SYKES:   Yes.

10              MR. CUSICK:   — . . . (inaudible)

11              I'm sorry.  I didn't see all the hands that went up.

12              Ms. Koelbel?

13              JUROR KOELBEL:   Is this something recent or

14    something that happened a while ago?

15              MR. CUSICK:   It can be something that happened a

16    while ago.

17              JUROR KOELBEL:   Okay.  This was a long while ago.

18              MR. CUSICK:   Okay.  And you don't have to be too

19    detailed.  It could just be the type of crime.

20              JUROR KOELBEL:   A very, very close friend of mine

21    and his wife were murdered.  She was dismembered.  It was a

22    real long time before I was able to get over that.

23              MR. CUSICK:   Okay.  Now that's a situation that

24    happened a long time ago?

25              JUROR KOELBEL:   Yes.
```

142

1          MR. CUSICK:   And it's fair to say that what

2    happened then doesn't have the same, you know, necessarily the

3    same facts that happened in this case . . . (inaudible)

4          JUROR KOELBEL:   Correct.

5          MR. CUSICK:   Well, are you going—Are you going to

6    be able to be fair and impartial as a juror for both the

7    People and the defendant, even based on that experience?

8          JUROR KOELBEL:   Well, I'm thinking that I can be

9    unless—unless the photos that I see are similar to what I've

10   already experienced with my friend and his wife.

11         MR. CUSICK:   Are you—Are you willing to judge

12   the—the evidence through the—not that experience, but through

13   the witnesses that come and testify in this case?

14         JUROR KOELBEL:   I'll do my very best.

15         MR. CUSICK:   I appreciate that.   Thank you.

16         Mr. Duong—Duong, did you raise your hand?

17         JUROR DUONG:   Yes.

18         MR. CUSICK:   Okay.

19         JUROR DUONG:   May I approach the bench?

20         THE COURT:   Yes.

21         Counsel?

22         (At 2:46 p.m., bench conference as follows:

23              THE COURT:   Go ahead.

24              JUROR DUONG:   About 30 years ago, my parents

25         were murder/suicide.

1          THE COURT:   Okay.

2          JUROR DUONG:   My dad killed my mom.

3          THE COURT:   Okay.

4          JUROR DUONG:   So I just—

5          THE COURT:   All right.  Let me ask you this:

6     putting that aside—Or could you put that aside,

7     then, for the case; or do you think it's going to

8     bring out emotions and maybe you're not the best

9     person to sit?

10         JUROR DUONG:   That's what I don't want to

11    happen, but—

12         THE COURT:   Okay.

13         JUROR DUONG:   —I don't really know.  I mean—

14         THE COURT:   Okay.

15         JUROR DUONG:   —it took me a while to get over

16    it—

17         THE COURT:   Okay.

18         JUROR DUONG:   —you know.  Just—

19         THE COURT:   All right.

20         JUROR DUONG:   —being the type of trial or case

21    this is, yeah, I don't know.

22         THE COURT:   Okay.  Let me see if the attorneys

23    have any questions.  Hold on a—

24         Any questions for him?

25         You can stay right here.

1    MR. CUSICK:   Did that experience have any—Are

2    you still able to just listen to the evidence in

3    this case and just judge—make a determination based

4    on the testimony of the witnesses and the exhibits

5    without any—Not only that experience but all of your

6    experience in life, are you able to just judge the

7    evidence based on what's presented in a fair and

8    impartial way?

9         JUROR DUONG:   I guess I—I don't know.

10        MR. CUSICK:   I don't have anything further.

11        THE COURT:   Do you have any questions,

12   Mr. Champion?

13        MR. CHAMPION:   No.

14        THE COURT:   Please step back a couple steps a

15   second.   Let me talk to the attorneys a second.

16        Any position or any—

17        MR. CUSICK:   . . . (inaudible) that he can't

18   be fair and impartial, so—

19        MR. CHAMPION:   I'd move for cause.

20        THE COURT:   I'm sorry?

21        MR. CHAMPION:   I'd move for cause.

22        THE COURT:   Based on?

23        MR. CHAMPION:   He can't be—He can't say that

24   he can be fair and impartial and he doesn't know

25   what emotions will . . . (inaudible)

```
 1              THE COURT:   I'm going to go ahead and excuse
 2         him because—two reasons—first of all, he also did
 3         indicate he had some issues with regards to work;
 4         but, more importantly, I—Certainly, given those
 5         circumstances, we wouldn't want to bring that type
 6         of emotion back and cause anyone to have—remember
 7         those things again, I think.
 8              MR. CUSICK:   Uhm-hmm.
 9              THE COURT:   So I'll go ahead and excuse him.
10              MR. CUSICK:   Okay.)
11         THE COURT:   I'm going to go ahead and excuse you,
12    sir.  You can place your basket—or badge in the basket in the
13    back—
14         JUROR DUONG:   Thank you.
15         THE COURT:   —of the courtroom there.
16         Thank you for your time today.
17         We'll select another name for seat number 11.
18         THE CLERK:   Robin Reibeling—R-e-I-b-e-l-I--g.
19         MR. CUSICK:   Proceed, your Honor?
20         THE COURT:   Give me one second.
21         Sir, before I turn it back over to Mr. Cusick, were
22    you able to hear everything—
23         JUROR REIBELING:   Yes.
24         THE COURT:   —from where you were seated?
25         Anything you want to bring to our attention that you
```

| | |
|---|---|
| 1 | can think of right now, sir, based on the issues and questions |
| 2 | previously raised? |
| 3 | JUROR REIBELING: No. |
| 4 | THE COURT: All right. Go ahead. |
| 5 | MR. CUSICK: Thank you, your Honor. |
| 6 | And—I'm sorry.—anybody else raise their hand for my |
| 7 | last question? |
| 8 | Okay. Mr. Comiskey? |
| 9 | JUROR COMISKEY: Victim of a crime. I was not a |
| 10 | victim of the crime, but I do know somebody who |
| 11 | . . . (inaudible) |
| 12 | MR. CUSICK: Okay. And will you be able to put |
| 13 | that aside and judge the evidence in this case based on the |
| 14 | testimony and based on the exhibits— |
| 15 | JUROR COMISKEY: Yes. |
| 16 | MR. CUSICK: Okay.—in a fair and impartial way? |
| 17 | JUROR COMISKEY: Yes. |
| 18 | MR. CUSICK: Okay. Ms. Wiedmayer? |
| 19 | JUROR WIEDMAYER: I wasn't the victim of a crime, |
| 20 | but I know a couple of instances, a close friend of my |
| 21 | great-niece. |
| 22 | And, also, I work in an area where we do see people |
| 23 | sometimes that are victims. |
| 24 | MR. CUSICK: Okay. And are you able to put those |
| 25 | experiences aside and just, in a fair and impartial way, look |

147

at the evidence and the testimony in this case?

Thank you.

And then, on the other side of that, has anybody been convicted of a crime, either a felony or a misdemeanor? Raise your hand.

Mr. Parker, correct?

JUROR PARKER:   May I approach the bench?

MR. CUSICK:   Yes.

THE COURT:   Counsel?

(At 2:51 p.m., bench conference as follows:

THE COURT:   Go ahead, Mr. Parker.

JUROR PARKER:   I was convicted of—What is it?—distribution of marijuana.

THE COURT:   Okay.  When was that, sir?

JUROR PARKER:   A couple years ago.

THE COURT:   A couple years ago.

Here in Kalamazoo County?

JUROR PARKER:   Uh-huh.

THE COURT:   Okay.  So it was—It was brought by the—the prosecuting attorney's office here locally?

JUROR PARKER:   Uhm-hmm.

THE COURT:   Okay.  Any questions?  Any follow-up questions?

MR. CUSICK:   Sir, it was delivery—delivery of a controlled substance; is that what it was?

148

1          JUROR PARKER:   Yeah, delivery.

2          MR. CUSICK:   Is there any other crimes—

3          JUROR PARKER:   . . . (inaudible)

4          MR. CUSICK:   — . . . (inaudible) Okay.

5          Based on that experience, do you have any bias

6     or dislike for law enforcement?

7          JUROR PARKER:   Yeah.

8          THE COURT:   I'm sorry.  For officers; is that

9     what you said?

10          MR. CUSICK:   For law enforcement.

11          THE COURT:   For law enforcement.  Okay.

12          JUROR PARKER:   Yeah.

13          MR. CUSICK:   Okay.  Would that bias affect

14     your ability to be fair and impartial in this case?

15          JUROR PARKER:   Honestly, yes.

16          MR. CUSICK:   I have nothing further.

17          THE COURT:   Any other questions?

18          All right.  Step back a second, Mr. Parker.

19     We'll talk to the attorneys.

20          Any position?

21          MR. CUSICK:   If he can't be fair and

22     impartial.  I don't believe he can.

23          MR. CHAMPION:   Is that what he said?

24          THE COURT:   Okay.  I'll go ahead and excuse

25     him.)

149

1      THE COURT:   Thank you, Mr. Parker.  We appreciate

2   your time.  You are also excused, sir.

3      I don't know if you have a bag or something to go or

4   no.

5      JUROR PARKER:   Just the badge.

6      THE COURT:   Just your badge.  Okay.  You can place

7   your badge in the basket on the left side of the double doors.

8      Have a good day, sir.

9      We'll select another name for seat number two.

10     THE CLERK:   Douglas Herder—H-e-r-d-e-r.

11     THE COURT:   Mr. Herder, anything you want to bring

12  to our attention based on what was previously addressed, sir?

13     JUROR HERDER:   No.

14     THE COURT:   No.

15     Go ahead.

16     MR. CUSICK:   Thank you, your Honor.

17     Does anybody have an experience dealing with law

18  enforcement that would affect their ability to be fair one way

19  or the other in this case?  And what I mean by that is either

20  if you had a bad experience with a police officer or if you

21  know a police officer or are friends with police officers

22  would that relationship affect you to be partial in one way or

23  the other?

24     Mr. Turner?

25     JUROR TURNER:   I'm a firefighter.  I know a lot of

1   police officers.  It would not affect the way I would rule or
2   the way I would do.
3           MR. CUSICK:  Okay.  And I believe that there is
4   a—the judge is going to read an instruction that a police
5   officer's testimony is to be not weighed any heavier or
6   any—any more credible or any less credible than any other
7   person; that they're just the same as anybody else, and you
8   shouldn't look at a police officer and say, well, they're more
9   likely to tell the truth or they're more likely not to tell
10  the truth.  You wouldn't have a problem with that?
11          JUROR TURNER:  No.
12          MR. CUSICK:  Everybody agree with that?  Okay.
13          I'm going to finish up pretty soon, but I just
14  wanted to ask a couple questions regarding what the judge
15  asked earlier.
16          Ms. Ball, you indicated you might have some hardship
17  on a—serving on the jury.  Am I correct with that?  I know it
18  was a while ago, earlier in the day.
19          THE COURT:  There was a witness.  I think she
20  indicated she knew a witness.
21          MR. CUSICK:  Oh, you indicated you—Would you have
22  any—You indicated to the judge that that wouldn't affect your
23  judgment in any way?
24          JUROR BALL:  Correct.
25          MR. CUSICK:  Okay.  Thank you.

1          Your Honor, at this time, I have nothing further.

2          Thank you.

3          Mr. Champion?

4          I guess—How are we doing, ladies and gentlemen?  Can

5    I turn it over to Mr. Champion, or do we need a break?  Raise

6    your hand if you need a break.

7          All right.  Go ahead, Mr. Champion.

8          MR. CHAMPION:    Thank you.

9          Good afternoon.

10          UNIDENTIFIED JURORS:    Good afternoon.

11          MR. CHAMPION:    How's everyone doing?

12          UNIDENTIFIED JURORS:    Good.

13          MR. CHAMPION:    This is—First thing I like to tell

14    the jurors, this is the one and only opportunity that I'll

15    have to speak with you.  I think the judge mentioned—

16          THE COURT:    I think you're going to have speak up,

17    Mr. Champion.  When you move away from the podium, it's hard

18    for them to hear.

19          MR. CHAMPION:    This will be one of the only

20    opportunities I'm able to speak with you.  As the judge

21    mentioned prior to the break for lunch, if you see myself or

22    Mr. Cusick or our clients, we're not able to speak with

23    you—We're not being rude.—but this is our opportunity.

24          Now, Ms. Ball, Mr. Cusick was stating could you

25    judge the facts because that's the issue.  Could you do that?

152

1      JUROR BALL:   Yes.

2      MR. CHAMPION:   What is the issue, do you think

3  today—or in the trial?

4      JUROR BALL:   In this trial specifically or in any

5  . . . (inaudible)?

6      MR. CHAMPION:   In any trial—

7      JUROR BALL:   . . . (inaudible)

8      MR. CHAMPION:   —for a criminal case.

9      JUROR BALL:   Whether or not the defendant is

10 actually guilty or not.

11      MR. CHAMPION:   That's partially true and partially

12 false.  What the issue is—Mr. Cusick spoke on this.—is that

13 did he prove each and every element beyond a reasonable doubt.

14 Does that make sense?

15      JUROR BALL:   Yes.

16      MR. CHAMPION:   'Cause you can think somebody did

17 commit a crime, correct?

18      JUROR BALL:   . . . (inaudible)

19      MR. CHAMPION:   But did they prove—Did the

20 prosecution prove each and every element beyond a reasonable

21 doubt?  Do you disagree with that?

22      JUROR BALL:   . . . (inaudible)

23      MR. CHAMPION:   Does anyone disagree with that?

24 Does that seem right?

25      Mr. Burkett, does that seem right?

153

1          JUROR BURKETT:    I think so.

2          MR. CHAMPION:    So you may think somebody committed

3     a crime, but the prosecution hasn't proven each and every

4     element beyond a reasonable doubt.  Could you still find that

5     person not guilty?

6          JUROR BURKETT:    I believe so.

7          MR. CHAMPION:    Actually, that's what the law

8     requires.  If the prosecution hasn't proven each and every

9     element beyond a reasonable doubt, you have to find the person

10    not guilty.

11         Can anyone not follow that part of the law?  If you

12    can't, raise your hand.

13         And you might not be able to.  There's nothing wrong

14    with that.

15         Ms. Sykes, have you heard anything about this in the

16    news, on the radio?

17         JUROR SYKES:    I recall the incident very briefly on

18    the news, but I don't recall any information about it.

19         MR. CHAMPION:    What do you think about how the news

20    reports stories?  Do you think it's true?

21         JUROR SYKES:    I wouldn't have enough information to

22    tell . . . (inaudible)

23         MR. CHAMPION:    We see a lot of things in the news;

24    is that correct?

25         JUROR SYKES:    Yes.

1          MR. CHAMPION:   Is it necessarily all accurate?

2          JUROR SYKES:   No.

3          MR. CHAMPION:   Does everyone agree with that?

4          Is it possible that, during the trial, to say, well,

5     I remember this from the radio or reading this in the

6     newspaper.  Will you listen to what's on—coming from the

7     witness stand and put aside anything you might have heard in

8     the press?

9          Mr. Comiskey?  Am I saying your name correctly?

10         JUROR COMISKEY:   Joe Comiskey.

11         MR. CHAMPION:   Comiskey.

12         JUROR COMISKEY:   Yeah.

13         MR. CHAMPION:   Mr. Comiskey, what's stronger,

14    direct evidence or circumstantial evidence?

15         JUROR COMISKEY:   Direct.

16         MR. CHAMPION:   Why?

17         JUROR COMISKEY:   Well, I don't know the definition

18    of circumstantial evidence; but direct evidence is what—what

19    is—that's evidence that's, I guess, more concrete.

20         MR. CHAMPION:   The judge is going to give you some

21    instructions.  It's sort of a trick—Excuse me.—question.  In

22    fact, Mr. Cusick was talking about circumstantial evidence

23    with the cookie crumbs on a person's face.  That would be

24    circumstantial evidence.

25         Direct evidence could be testimony from a witness on

the stand saying I saw this person commit the crime.  What do you think—Just that brief description, what do you think is stronger, the circumstantial or the direct?

JUROR COMISKEY:  I guess I would have to say the direct evidence for that.

MR. CHAMPION:  Would you agree you haven't heard all the story, right?

JUROR COMISKEY:  Right.

MR. CHAMPION:  You have to actually listen to everything to come to a conclusion.

Mr. Herder, now we're going to go a little bit further on this direct and circumstantial.  I have two children.  Okay.  Today was my son's birthday, and I—As I was getting ready to come to court there was a birthday cake that his mom made setting on the counter; told him, don't touch the cake, we're having that after work today.  Okay?

I come out of the bathroom, and a piece of the cake is missing; and there is four young people sitting at the table.  And I turn to the first person, which is my son, I say, what happened to the cake.

And (snaps fingers) just like that he says, Lucky the dog did it.

Do you believe that?

JUROR HERDER:  It's possible.

MR. CHAMPION:  It's possible.  Is that direct

evidence by a witness?

JUROR HERDER: No.

MR. CHAMPION: Why not?

JUROR HERDER: You'd have to—No one directly—Well, if you're asking the question, no one directly—

MR. CHAMPION: If my son said, I saw Lucky the dog—If he took the stand—

JUROR HERDER: Oh, he saw Lucky the dog?

MR. CHAMPION: Lucky the dog take the cake.

JUROR HERDER: Then that would be direct evidence, I'd say, yes.

MR. CHAMPION: Now I tell you that the cake is a perfectly cut piece missing. Circumstantial evidence, correct?

JUROR HERDER: That the dog ate it, yes . . . (inaudible)

MR. CHAMPION: Well, the circumstantial evidence that it was a perfectly cut piece out of—out of that cake missing.

JUROR HERDER: Okay.

MR. CHAMPION: A nice V, like somebody took a knife and cut it and removed it. That's circumstantial, right? We have evidence that there's a piece of cake missing. Why is it missing? We don't know, but it's circumstantial.

JUROR HERDER: Okay.

1          MR. CHAMPION:    Now I tell you I turn to the next

2     young person sitting next to my son, which is my daughter, and

3     I ask my daughter what happened.

4          Well, Lucky the dog jumped up there and ate the

5     cake.  Another direct testimony that somebody had saw the

6     crime—or the incident.

7          Turn to a third person, the fourth person.  They all

8     say the same thing.

9          So do you think Lucky the dog ate the cake?

10          JUROR HERDER:    I would say chances are not, if it

11    was a nice cut.

12          MR. CHAMPION:    Chances are, not.  Why?

13          JUROR HERDER:    'Cause common sense says that's not

14    how dogs eat.

15          MR. CHAMPION:    Excellent.

16          Ms. Carlisle, you think Lucky the dog did it?

17          JUROR CARLISLE:    No.

18          MR. CHAMPION:    Why?

19          JUROR CARLISLE:    Because the cake was cut

20    perfectly.

21          MR. CHAMPION:    That's circumstantial evidence,

22    right?

23          JUROR CARLISLE:    Correct.

24          MR. CHAMPION:    But you have some doubt right now,

25    correct?

1     JUROR CARLISLE: A little, yes.

2     MR. CHAMPION: Well, you've got four people telling

3 you, eyewitnesses saying Lucky the dog did it, right?

4     JUROR CARLISLE: Right.

5     MR. CHAMPION: Would you agree with me that those

6 four individuals might have reasons to lie?

7     JUROR CARLISLE: Yes.

8     MR. CHAMPION: Now, if I told you setting in the

9 sink there is a plate, there's a knife, there's a fork, and

10 there's chocolate frosting on all those items, do you think

11 Lucky the dog did it?

12     JUROR CARLISLE: No.

13     MR. CHAMPION: Why?

14     JUROR CARLISLE: Because how would they, the plates

15 and all that, get into the sink.

16     MR. CHAMPION: And how did the frosting get on the

17 fork and on the plate—

18     JUROR CARLISLE: Right.

19     MR. CHAMPION: —and on the knife?

20     Ms. Bourget—

21     JUROR BOURGET: Bourget.

22     MR. CHAMPION: Bourget.

23     —do you think Lucky the dog did it?

24     JUROR BOURGET: The dog could have eaten it, but he

25 didn't cut it.

1          MR. CHAMPION:   . . . (inaudible)

2          Now, if I told you that my son and all the other

3    individuals had frosting on their mouths, would you think

4    Lucky the dog ate it?

5          JUROR BOURGET:   No.

6          MR. CHAMPION:   Unless I have a very talented dog.

7          What's the point of my example, do you think?

8          JUROR BOURGET:   Well, the direct evidence and

9    circumstantial evidence can be equally weighed and can offer

10   different things and that people have a reason to not tell the

11   truth.

12         MR. CHAMPION:   Correct.  And that you have to

13   listen to the entire story before you can come to a firm

14   conclusion.  Would you agree with that?

15         Would everyone agree with that?

16         Ms. Koelbel—

17         JUROR KOELBEL:   Yes.

18         MR. CHAMPION:   Say your name correctly?

19         JUROR KOELBEL:   Yes.

20         MR. CHAMPION:   —is it possible for a police officer

21   to see something, tell the truth of what he saw or heard, and

22   be mistaken?  Of course, it applies to everyone.

23         Would everyone agree with that?

24         Mr. Taggett, why do people lie?

25         JUROR TAGGETT:   'Cause they want to get out of—

1          THE COURT:    I think you have to speak up, sir.

2          JUROR TAGGETT:    'Cause they want to get out of

3     their punishment.

4          MR. CHAMPION:    Want to get out of—That's one

5     reason.

6          Would you agree?

7          UNIDENTIFIED JUROR:    . . . (inaudible)

8          MR. CHAMPION:    Mr. Turner, why do people lie?

9          JUROR TURNER:    They don't want to face the

10    consequences.

11         MR. CHAMPION:    Consequences.    They may think

12    they'll get a benefit.    Would you agree with that?

13         UNIDENTIFIED JUROR:    Yes.

14         MR. CHAMPION:    Would everyone agree with that?

15         Has everyone had the opportunity to judge the

16    credibility of someone if they're telling the truth or not?

17         Does anyone have—Especially, if you have children,

18    that's a normal process—

19         Would everyone agree?

20         —or siblings.

21         Has anyone ever been falsely accused by one of their

22    siblings or friends of something?    If you haven't, raise your

23    hand.

24         Mr. [*sic*] Gottschalk?    No.

25         JUROR GOTTSCHALK:    Mrs.

161

```
 1                    MR. CHAMPION:   Oh, Mrs. Gottschalk.

 2               We have so many people.

 3                    JUROR GOTTSCHALK:   That's fine.

 4                    MR. CHAMPION:   If I was to ask you right now, is my

 5      client guilty or innocent, what would you say?

 6                    JUROR GOTTSCHALK:   I don't know.

 7                    MR. CHAMPION:   You have to say innocent.

 8               Why?

 9                    JUROR GOTTSCHALK:   Oh, true.

10                    MR. CHAMPION:   Okay.  Because why?

11                    JUROR GOTTSCHALK:   I don't know.

12                    MR. CHAMPION:   Okay.  Has the prosecution proved

13      their case beyond a reasonable doubt?

14                    JUROR GOTTSCHALK:   Not yet.

15                    MR. CHAMPION:   Have they proved anything?

16                    JUROR GOTTSCHALK:   No.

17                    MR. CHAMPION:   So my client, simply because he's

18      been charged, would you agree he's innocent at this point in

19      time?

20                    JUROR GOTTSCHALK:   Yes, he is.

21                    MR. CHAMPION:   Would everyone agree with that?

22                    UNIDENTIFIED JUROR:   Yep.

23                    MR. CHAMPION:   And, until the prosecution proves

24      each and every element beyond a reasonable doubt, your verdict

25      would be what?
```

1           JUROR GOTTSCHALK:   Not guilty.

2           MR. CHAMPION:   Anyone disagree with that?

3           Anyone have any questions?  Last chance.

4           Thank you.

5           THE COURT:   Challenges for cause, Mr. Cusick?

6           MR. CUSICK:   None for cause, your Honor.

7           THE COURT:   Mr. Champion?

8           MR. CHAMPION:   None for cause, your Honor.

9           THE COURT:   Peremptory challenges, Mr. Cusick?

10          MR. CUSICK:   May I have one moment, your Honor?

11          THE COURT:   Yes.

12          MR. CUSICK:   At this time, your Honor, we'd like to

13     thank and excuse juror number 16, Ms. Ball.

14          THE COURT:   Ms. Ball, thank you very much.  We

15     appreciate your time.  You can place your badge in the basket

16     in the back of the courtroom.  Have a good afternoon.

17          Any others at this time, Counsel?

18          Mr. Cusick?

19          MR. CUSICK:   No, your Honor.

20          THE COURT:   Okay.  Mr. Champion—

21          MR. CHAMPION:   Your Honor, at this—

22          THE COURT:   —any peremptory challenges?

23          MR. CHAMPION:   Thank you, your Honor.

24          At this time, defense would thank and excuse juror

25     number 13 in seat number ten and juror number two in seat

number one.

THE COURT:   Okay.  I'm sorry.  Juror number two in?

MR. CHAMPION:   In seat number one.

THE COURT:   Oh—

MR. CHAMPION:   Ms.—

THE COURT:   —Ms. Sykes?

MR. CHAMPION:   Ms. Sykes, that's correct.

THE COURT:   Okay.  Sorry.

All right.  So, Ms. Sykes, you are excused.

And Ms. Gottschalk, is that who you are—I'm sorry.
I go by names—

MR. CHAMPION:   Ms.—

THE COURT:   —not numbers—

MR. CHAMPION:   Okay.

THE COURT:   —and I know we have two different
lists, so—

MR. CHAMPION:   Ms. Koelbel, in seat number—

THE COURT:   Okay.

MR. CHAMPION:   —ten.

THE COURT:   So Ms. Koelbel in seat number ten.

You are both excused.

I think we'll take a break before we select the
other jurors.

Thank you, ma'am.

JUROR KOELBEL:   You're welcome.

164

1    THE COURT:   And you can place that just right there
2    on the table.  I appreciate it.
3    JUROR KOELBEL:   That was so helpful.
4    THE COURT:   It seems to be, so we appreciate that.
5    All right.  So, ladies and gentlemen, we'll take
6    about a ten-minute—ten, 15-minute break.  We'll bring you back
7    down here when we're ready.
8    Please remember all of my prior instructions.  Make
9    sure you don't talk to anyone, including among yourselves,
10   about the case.
11   Please make sure you don't look up anyone, anything,
12   any term during the break if you have access to any electronic
13   equipment.
14   Please don't come to the second floor at all, and
15   we'll come get you when we're ready for you.
16   I'm going to ask Mr. Burkett—Burkett to just remain
17   here a moment, but the rest of you can follow Ms. Wint out the
18   back of the double doors.
19   All rise.
20   You can follow this way.
21   (At 3:10 p.m., jury panel exits courtroom)
22   JUROR SHAWN NEAL:   May I approach the bench?
23   THE COURT:   Just wait one second, sir.  We'll wait
24   until the other jurors leave, also.
25   You may be seated.

165

```
 1              For the record, the—most of the jurors have left the
 2    courtroom.  We do have one that has a question.
 3              So go ahead, sir, you can approach.
 4              And then, Mr. Burkett, we'll—I have some additional
 5    questions for you.
 6              Counsel, will you approach, please.
 7              (At 3:12 p.m., bench conference as follows:
 8                  THE COURT:   We need your—
 9                  JUROR SHAWN NEAL:   I—
10                  THE COURT:   We need your name, first of all.
11                  JUROR SHAWN NEAL:   Oh, Shawn Neal.
12                  THE COURT:   Okay.  Go ahead, sir.
13                  JUROR SHAWN NEAL:   I've been up 24 hours
14              working—
15                  THE COURT:   Okay.
16                  JUROR SHAWN NEAL:   —and I just feel that I
17              can't really help anybody out—
18                  THE COURT:   Pay attention and—
19                  JUROR SHAWN NEAL:   Yeah.
20                  THE COURT:   Okay.  Where do you—
21                  JUROR SHAWN NEAL:   —or keep focused.
22                  THE COURT:   —work, sir?
23                  JUROR SHAWN NEAL:   Elkhart Plastics—
24                  THE COURT:   Okay.
25                  JUROR SHAWN NEAL:   —in Middlebury.
```

1      THE COURT:   And you indicated that, too, and I
2   know that you did address you might have some issues
3   financially if you remained here.
4      JUROR SHAWN NEAL:   I just can't focus,
5   actually.  I don't think—
6      THE COURT:   So you're starting—
7      JUROR SHAWN NEAL:   —it's fair to him.
8      THE COURT:   —to fall asleep and not pay
9   attention.  Is that—
10      JUROR SHAWN NEAL:   Yes, ma'am.
11      THE COURT:   I'll go ahead and excuse you, sir.
12   You can—
13      JUROR SHAWN NEAL:   Thank you.
14      THE COURT:   —place your badge in the basket on
15   the—
16      JUROR SHAWN NEAL:   Thank you so much.
17      THE COURT:   —double doors.
18      Uhm-hmm.  Thank you.
19      Any objections to that, Counsel?
20      MR. CUSICK:   No, we have . . . (inaudible)
21      MR. CHAMPION:   . . . (inaudible)
22      THE COURT:   Okay.  I'm going to just ask
23   Mr. Burkett some additional questions a second.  And
24   he's the only one that's up there that we still
25   haven't addressed, I guess, more detailed questions

1        with regards to finances.

2              And I will say he doesn't seem to be paying

3        attention too well—

4              MR. CUSICK:   Yeah . . . (unintelligible)

5              THE COURT:    —from what I can tell.

6              MR. CHAMPION:   . . . (inaudible)

7              THE COURT:   Do you want to just excuse him or—

8              MR. CUSICK:   That's fine.

9              MR. CHAMPION:   Yeah.

10             THE COURT:   You want to, both of you, do that?

11             MR. CHAMPION:   Yeah.)

12        THE COURT:   Mr. Burkett, we're going to go ahead

13   and excuse you, sir.  You can place your badge in the basket

14   on the left side of the double doors.  We appreciate your

15   time.

16             All right.  So all the jurors have left.

17             And, Counsel, we did just excuse two more jurors.

18   One was Mr. Neal, and the other one was Mr. Burkett.

19             I know both of them addressed some issues

20   with—financial issues before.  And so Mr. Neal just indicated

21   he'd been up 24 hours and couldn't concentrate.  I excused

22   him.  My understanding is there's no objection to excusing

23   him.

24             Is that correct, Counsel?

25             MR. CUSICK:   That's correct, your Honor.

```
 1              THE COURT:   Mr. Champion?

 2              MR. CHAMPION:   That is correct, your Honor.

 3              THE COURT:   Okay.  And then Mr. Burkett, honestly,

 4    when I was observing him, didn't appear to be really paying

 5    attention much, and I think Counsel—I think Mr. Cusick and

 6    Mr. Champion both agreed with that.  So I think everyone was

 7    okay with excusing him, also.

 8              Is that correct, Mr. Cusick—

 9              MR. CUSICK:   That's correct, your Honor.

10              THE COURT:   —and Mr. Champion?

11              MR. CHAMPION:   It is, your Honor.

12              THE COURT:   All right.  Anything else we need to

13    address at this time, Counsel?

14              MR. CHAMPION:   No, your Honor.

15              MR. CUSICK:   No, your Honor.

16              THE COURT:   Okay.  Court's in recess.

17              About ten minutes, we're going back—

18              (At 3:15 p.m., court recessed)

19              (At 1:12 p.m., proceedings reconvened)

20              THE CLERK:   The court recalls the case of People of

21    the State of Michigan versus Samuel Steel, III, case number

22    C11-1983 FC.

23              Parties, please restate appearances for the record.

24              MR. CUSICK:   Good morning, your Honor.

25              Paul Cusick on behalf of the People.
```

1          Good afternoon, your Honor.

2                MR. CHAMPION:   Is that a southern time zone?

3                May it please the Court, Robert Champion here in

4     behalf of Samuel Steel.

5                THE COURT:   All right.  Counsel, the jury's on

6     their way down.  Anything we need to address before they come

7     in?

8                MR. CUSICK:   No, your Honor.

9                MR. CHAMPION:   No, your Honor.

10               We have four openings; is that correct?

11               THE COURT:   Four seats.  Is that what you

12    indicated?

13               MR. CHAMPION:   That's what I show.

14               (At 3:35 p.m., off record discussion between Court

15               and clerk)

16               THE COURT:   All right.  Counsel, just so that you

17    are aware, the four individuals that we will be calling now to

18    fill seats are:

19               Melinda Deuel, in seat number 16;

20               Patricia Taylor, in seat number one;

21               Katherine Lagoni, in seat number ten; and

22               Patricia Joseph, in seat number nine.

23               MR. CHAMPION:   Can I have those . . . (inaudible)

24               THE COURT:   No.  Yes, you may.

25               Melinda Deuel, in seat number 16.  She indicated

```
 1    that one of the witnesses was a step-uncle and she hasn't seen
 2    him in ten years.
 3              All rise.
 4              Duel,
 5              Taylor—Patricia Taylor in one, and then Lagoni in
 6    ten, Joseph—Patricia Joseph.
 7              (At 3:37 p.m., jury panel returns to courtroom)
 8              You may be seated.
 9              All right, ladies and gentlemen, we're going to
10    select four more names for the seats that are empty in the
11    order that the jurors were excused.
12              So go ahead.
13              THE CLERK:   Juror in seat number 16,
14    Melinda Deuel—D-u-e-u-e-l.
15              Juror in seat number one, Patricia Taylor—T-a-y-l-o-
16    r.
17              Juror in seat number ten, Katherine Lagoni—L-a-g-o-
18    n-I.
19              And juror in seat number nine,
20    Patricia Joseph—J-o-s-e-p-h.
21              THE COURT:   All right.  So, Ms. Deuel, you already
22    indicated to us that you knew one of the witnesses you think
23    might be step-uncle but you haven't seen the individual in
24    many, many, many years.  I think you said over ten years.
25    Yes?
```

1          JUROR DEUEL:   Yes.

2          THE COURT:   All right.  So we covered that.

3          Ms. Joseph, I know that you also indicated some

4    issues with regards to work and so forth.  So I'll let the

5    attorneys ask additional questions if—We'll see how that goes.

6          So—All right.  So the four of you that just sat

7    down, then—Ms. Joseph, Ms. Lagoni, Ms. Deuel, and

8    Ms. Taylor—anything that you want to bring to our attention

9    that you can recall right now right off the bat based on the

10   questions previously raised or the issues previously raised?

11   Any of you?

12         UNIDENTIFIED JUROR:   No.

13         THE COURT:   No.

14         Have any of you ever been on a jury before?

15         UNIDENTIFIED JUROR:   No.

16         THE COURT:   No.

17         And you all understand the burden of proof is on the

18   prosecuting attorney in every criminal case?  Yes?

19         UNIDENTIFIED JUROR:   Yes.

20         THE COURT:   Yes.

21         And you all understand the constitutional rights

22   that we also—that we all have?  Mr. Steel doesn't have to

23   testify, and you understand that?  Yes?

24         UNIDENTIFIED JUROR:   Yes.

25         THE COURT:   So, if he chooses not to, that's

172

certainly his right. That's a right that we all have. You
can't read anything into that or consider that if you were on
the jury and began your deliberations.

Do you understand that?

UNIDENTIFIED JUROR: Yes.

THE COURT: Yes.

Okay. And, also, every defendant—If any one of us
were seated at that table, they don't have to prove anything,
they don't have to produce any evidence.

And you all understand that concept? Yes?

UNIDENTIFIED JUROR: Yes.

THE COURT: Anyone have an issue with any of those
concepts?

No. Okay. Appreciate that.

I'm going to turn it over to Mr. Champion this time
to begin questioning.

MR. CHAMPION: Thank you, your Honor.

THE COURT: And everyone's going to talk really
loud.

MR. CHAMPION: Really loud. And at the microphone,
correct?

THE COURT: And at the microphone, yes—

MR. CHAMPION: Thank you.

THE COURT: —that's helpful.

MR. CHAMPION: Ms. Joseph, you've heard all the

questions?

JUROR JOSEPH:  Yes.

MR. CHAMPION:  You've heard our stories and our analogies?

JUROR JOSEPH:  It's been a . . . (inaudible)

MR. CHAMPION:  Pardon?  A lot of cake, a lot of cookies, right?

Do you disagree with any of those philosophies?

JUROR JOSEPH:  No.

MR. CHAMPION:  You understand when we were talking about your job as the juror is to listen to the evidence and determine what the facts are, correct?

JUROR JOSEPH:  Yes.  I do have a question regarding . . . (inaudible) circumstantial evidence, though.

MR. CHAMPION:  Ask away.

JUROR JOSEPH:  The question was posed, which is more credible.  I imagine it can depend on the individual circumstance.  But am I wrong?

MR. CHAMPION:  No, you're absolutely right.  Part of my analogy about the cake and my children and getting the story out was to listen to all the evidence before you reach a conclusion.

Because wouldn't you agree that the direct evidence, when you have four individuals say the dog ate the cake, it's pretty strong evidence?  Would you agree, initially?  And you

1     could say, yeah, I could see the dog jumping up on the counter

2     and taking a bite out of the cake, correct?

3               If that's all you heard, wouldn't you agree that you

4     might believe the dog ate the cake?

5               JUROR JOSEPH:   You'd have to say it's a

6     possibility.

7               MR. CHAMPION:   It was a possibility.  But what was

8     important a part of that story is the fact that you had to

9     listen to the beginning, the end to really form a conclusion.

10    And, even then, you might say you don't know beyond a

11    reasonable doubt that the dog did or did not commit that act.

12              Do you agree with that?

13              JUROR JOSEPH:   I'm trying to remember the whole

14    story.

15              MR. CHAMPION:   The story about—

16              JUROR JOSEPH:   I would agree that you'd have to

17    listen to the entire—the entirety of the evidence before you

18    make a decision.

19              MR. CHAMPION:   And that's important, wouldn't you

20    agree?

21              JUROR JOSEPH:   Yes.

22              MR. CHAMPION:   Because, if you or someone else was

23    accused of an incident, of a crime, you'd want the person to

24    listen to all the evidence before making a determination.

25              Would you agree with that?

```
1            Ms. Taylor, would you agree with that, also?

2            JUROR TAYLOR:    Yes.

3            MR. CHAMPION:    Did you understand my convoluted

4     story about the dog and the cake?

5            JUROR TAYLOR:    Yes.

6            MR. CHAMPION:    Did it make sense?

7            JUROR TAYLOR:    Yeah.

8            MR. CHAMPION:    Ms. Lagoni—

9            Did I say your name correctly?

10           JUROR LAGONI:    Yes, you did.

11           MR. CHAMPION:    Oh, good.

12           —do you understand that the prosecution must prove

13    each and every element beyond a reasonable doubt?

14           JUROR LAGONI:    Yes.

15           MR. CHAMPION:    You understand that.

16           You understand also beyond a reasonable doubt is the

17    highest level in a criminal case or a civil case in our legal

18    system that there is?

19           JUROR LAGONI:    Yes.

20           MR. CHAMPION:    Can you hold the prosecution to that

21    crime [sic]—to that level?

22           And when I was discussing the issue that your job is

23    to determine what the facts are and if the facts prove the

24    case and each and every element beyond a reasonable doubt is

25    not the same as did this person do X, Y, or Z.  Those are two
```

1      different issues.

2                  Would you agree?

3                  JUROR LAGONI:   Yes.

4                  THE COURT:   Can you hold the prosecution to that

5      level?

6                  JUROR LAGONI:   Yes.

7                  MR. CHAMPION:   Can everyone?

8                  Ms. Deuel—

9                  JUROR DEUEL:   Yes.

10                 MR. CHAMPION:   —do you have any questions?

11                 JUROR DEUEL:   Not so far.

12                 MR. CHAMPION:   Does anyone here have a hardship?   I

13     know there was some discussion.

14                 Ms. Taylor, you had some issues about having a

15     hardship.

16                 JUROR TAYLOR:   No.

17                 MR. CHAMPION:   No, you didn't.

18                 Ms. Joseph, what was your—

19                 JUROR JOSEPH:   May I approach then?

20                 THE COURT:   You're going to have to—

21                 Yeah, you want to approach?

22                 Counsel.

23                 (At 3:47 p.m., bench conference as follows:

24                     JUROR JOSEPH:   My hardship is that I have

25                 several things coming together at exactly that time

177

```
1    at the end of August.

2         THE COURT:   Okay.

3         JUROR JOSEPH:   I need to be with my husband

4    helping him in the festival.

5         I also need to be finalizing a grant report for

6    a volunteer garden that has been just installed and

7    we're finishing up the process of writing a grant

8    report and completing that project.

9         And I also am one of—one of two employees for a

10   man who sells artwork, and I help him create it.  If

11   I can't be there for an extended period of time, he

12   cannot make his living by selling things because I'm

13   not there to help produce the work.

14        It's a little like you're missing from a

15   factory job that can get someone else to run the

16   machine; but, if you are the machine, you're putting

17   not just yourself in a hardship—which it would be a

18   hardship—but you're also compromising your future

19   possibility because you're creating a hardship for

20   the actual employer itself.

21        THE COURT:   . . . (inaudible)

22        Any other questions, Mr. Champion?

23        MR. CHAMPION:   You seem very emotional about

24   this.

25        JUROR JOSEPH:   It's a lot.  I was trying to
```

work out how I'm going to do a grant report and

helping my husband all at the same time and this is

another thing on top of that all in the same period—

THE COURT: Let me just—

JUROR JOSEPH: —of two weeks.

THE COURT: Let me just jump in 'cause I

couldn't honestly tell if you were getting emotional

or if you are just a little nervous or that was your

just normal voice.

JUROR JOSEPH: Both.

THE COURT: Okay. do you think you could pay

attention if you remained on this jury with

everything you have going on?

JUROR JOSEPH: I don't think I could complete

the other tasks involved in my life.

THE COURT: Okay. And you're very concerned

about all of the responsibilities, it sounds like?

JUROR JOSEPH: Yes.

THE COURT: Okay.

JUROR JOSEPH: Because I'm one of the very few

people who are committed to the—

THE COURT: Okay. Those projects.

JUROR JOSEPH: —volunteer projects, yes.

THE COURT: Okay. I'll go ahead and excuse

you. You can place your badge in the basket on the—

|    |                                                              |
|----|--------------------------------------------------------------|
| 1  | JUROR JOSEPH:    Thank you.                                   |
| 2  | THE COURT:    —left or right side.  I don't know             |
| 3  | which side.                                                   |
| 4  | JUROR JOSEPH:    I think it's on my left as I                |
| 5  | get out there.                                                |
| 6  | THE COURT:    It's usually on the right.  That's             |
| 7  | why I keep—I don't know where it's at.  They're              |
| 8  | moving it back there.  So, anyway, there's a basket          |
| 9  | back there.  So good luck, ma'am.                            |
| 10 | JUROR JOSEPH:    Thank you.                                   |
| 11 | THE COURT:    Okay.                                           |
| 12 | MR. CUSICK:    No objection.                                  |
| 13 | THE COURT:    Any objections to that?                         |
| 14 | MR. CHAMPION:    No.                                          |
| 15 | THE COURT:    All right.                                      |
| 16 | MR. CUSICK:    Thank you.                                     |
| 17 | THE COURT:    I'll let you proceed,                          |
| 18 | Mr. Champion.                                                 |
| 19 | Are you almost done?                                          |
| 20 | MR. CHAMPION:    . . . (inaudible)                           |
| 21 | THE COURT:    Actually, we'll replace it.  That             |
| 22 | way you can follow up with your questions.)                  |
| 23 | THE COURT:    All right.  We'll replace the juror in        |
| 24 | seat number nine.                                            |
| 25 | THE CLERK:    Roshida Benjamin—B-e-n-j-a-m-i-n.             |

THE COURT:   All right.  Ms. Benjamin, before I turn

it over to Mr. Champion, I know that you also expressed some

concern.  My understanding is you are—You've got a couple

young kids from what you said before.  Yes?

        JUROR BENJAMIN:   Yes.

        THE COURT:   Okay.  And I believe you—I don't

recall, ma'am, are you employed at this time?

        JUROR BENJAMIN:   Yes, I work full time.

        THE COURT:   And you're working—

        JUROR BENJAMIN:   . . . (inaudible) on my day off.

        THE COURT:   You're here on your day—

        Where is it that you work again, ma'am?

        JUROR BENJAMIN:   . . . (inaudible)

        THE COURT:   I think you—You did indi—You may not

have indicated the name, but I believe you indicated that.

        Will you approach a moment, ma'am?

        Counsel.

        (At 3:50 p.m., bench conference as follows:

                THE COURT:   Okay.  So all we know is the

                length of the trial's estimated to be two to three

                weeks.  And I just need to know from you, honestly,

                is—is it going to be a financial hardship for you—an

                extreme one—

                JUROR BENJAMIN:   It will, yes.

                THE COURT:   —or can you—

1   JUROR BENJAMIN:   The company just went under

2   new management June 4ᵗʰ, and the employees there need

3   to be there for the new owners 'cause they don't

4   really know anything.  And it's just hard right now,

5   basically.

6        And my rent is five-eighty a month.

7        I am a single mother.

8        THE COURT:   Do you have any other means of—or

9   income coming in—

10       JUROR BENJAMIN:   I don't.  No—

11       THE COURT:   —that can help you?

12       JUROR BENJAMIN:   —child support or nothing.

13       THE COURT:   Will you miss a rent payment

14  possibly if you are here that length of time, or can

15  you swing it even though it might be difficult?

16       JUROR BENJAMIN:   It would probably be missed,

17  yeah, 'cause I'm not at work.  I'm the only one who

18  takes care of my kids.

19       THE COURT:   Okay.  Any other questions?

20       MR. CHAMPION:   No.

21       THE COURT:   Do you have—

22       MR. CUSICK:   No.

23       THE COURT:   —any questions?

24       Just step back a second, if you would.  Let me

25  talk to the attorneys.

1          Any position on that?

2          MR. CUSICK:   Well, it's kind of the same

3               issues that—

4               THE COURT:   Hold on a second.)

5          THE COURT:   I do have to let you know we can hear

6     you talking.  So please just be patient with us when we go

7     through this process.  You've been very patient, but just

8     please bear with us here a second.

9               (At 3:52 p.m., bench conference as follows:

10              THE COURT:   Go ahead.

11              MR. CUSICK:   Based on what, you know, the

12              reasons we dismissed other people, I think she fits

13              in that—

14              THE COURT:   Category.

15              MR. CUSICK:   —so—

16              MR. CHAMPION:   Yeah, I agree.

17              THE COURT:   I'm going to go ahead and excuse

18              her.  I know it's a long trial, so—

19              MR. CHAMPION:   Yeah.

20              THE COURT:   We have plenty of jurors.

21              MR. CHAMPION:   Yeah.

22              THE COURT:   I mean, it's not like there's

23              . . . (inaudible)

24              MR. CHAMPION:   I don't think . . . (inaudible)

25              THE COURT:   Okay.)

183

1           THE COURT:    Ms. Benjamin, we're going to go ahead

2     and excuse you, ma'am.

3           Also, thank you for your—

4           JUROR BENJAMIN:    Thank you.

5           THE COURT:    —time today.

6           We will replace the juror in seat number nine.

7           THE CLERK:    Daniel Jasensky—J-a-s-e-n-s-k-y.

8           THE COURT:    All right.  Mr. Jasensky, anything you

9     want to bring to our attention, sir, based on what was

10    previously addressed?

11          JUROR JASENSKY:    No.

12          THE COURT:    Go ahead, Mr. Champion.  I'll turn it

13    over to you.

14          MR. CHAMPION:    Thank you.

15          We've touched on it.  Any other hardships for any of

16    the new jurors?

17          Mr. Jasensky—

18          JUROR JASENSKY:    Yep.

19          MR. CHAMPION:    Is that correct?

20          JUROR JASENSKY:    Correct.

21          MR. CHAMPION:    —you've heard all the questions, all

22    the stories.  Any questions that you have?

23          JUROR JASENSKY:    No, I don't.

24          MR. CHAMPION:    Do you understand that the law says

25    that the prosecution must prove each and every element beyond

1   a reasonable doubt?

2            JUROR JASENSKY:  Yes, I do.

3            MR. CHAMPION:  And, if they don't, what's the

4   verdict?

5            JUROR JASENSKY:  Not guilty.

6            MR. CHAMPION:  Do you understand my client doesn't

7   have to testify if he doesn't want to?

8            JUROR JASENSKY:  Correct.

9            MR. CHAMPION:  You can't hold that against him.

10           JUROR JASENSKY:  Correct.

11           MR. CHAMPION:  Agree with that?

12           JUROR JASENSKY:  Yeah.

13           MR. CHAMPION:  And, simply because he's charged

14  with a crime, it doesn't mean anything.  Do you agree with

15  that?

16           JUROR JASENSKY:  Yes.

17           MR. CHAMPION:  And you need to listen to the

18  whole—all the evidence before reaching any conclusions?

19           JUROR JASENSKY:  Yes, I can.

20           MR. CHAMPION:  Thank you.

21           I have no other questions.

22           THE COURT:  Go ahead, Mr. Cusick.

23           MR. CUSICK:  Mr. Jasensky, is it?

24           JUROR JASENSKY:  Yeah.

25           MR. CUSICK:  You heard my hypothetical situations,

```
 1          correct?

 2                    JUROR JASENSKY:   About the cookies, yes.

 3                    MR. CUSICK:   About the cookies and—

 4                    THE COURT:   I think you're going to have to speak

 5          up a little bit, sir.

 6                    MR. CUSICK:   Okay.

 7                    JUROR JASENSKY:   Me?

 8                    THE COURT:   Yes, please.

 9                    Go ahead.

10                    MR. CUSICK:   About the cookies, about the rain?

11                    JUROR JASENSKY:   Yes, I did.

12                    MR. CUSICK:   And do you understand that your job as

13          a juror is to use your common sense and reason to determine

14          what happened?

15                    JUROR JASENSKY:   Yes, I do.

16                    MR. CUSICK:   And you're able to do so in a fair and

17          impartial way?

18                    JUROR JASENSKY:   Yes.

19                    MR. CUSICK:   Okay.  Ms. Taylor, you heard my

20          examples as well?

21                    JUROR TAYLOR:   Yes.

22                    MR. CUSICK:   Okay.  And do you agree or understand

23          the examples and what your role as a juror—

24                    JUROR TAYLOR:   Yes.

25                    MR. CUSICK:   —will be?
```

1          Okay.  And you'll be able to judge whether or not
2    somebody is credible based on all of the circumstances, all
3    the facts in the case—
4          JUROR TAYLOR:  Yes.
5          MR. CUSICK:  —not just looking at one witness's
6    testimony in a vacuum?
7          JUROR TAYLOR:  Yes.
8          MR. CUSICK:  Okay.  Ms. Lagoni, do you agree with
9    that?
10         JUROR LAGONI:  Yes.
11         MR. CUSICK:  Okay.  Now, Ms.—
12         Is it Ms. Deuel?
13         It says that you're in school right now and working,
14   correct?
15         JUROR DEUEL:  No, . . . (inaudible)
16         MR. CUSICK:  Okay.  You were a
17   veteran—veterinarian's assistant?
18         JUROR DEUEL:   . . . (inaudible)
19         MR. CUSICK:  Okay.  And what are you going to
20   school for?  What's the subject?
21         JUROR DEUEL:  I'm getting an Associate's in law.
22         MR. CUSICK:  Okay.  And so you're learning some
23   process probably—
24         JUROR DEUEL:   . . . (inaudible)
25         MR. CUSICK:  —as you—as you go to school?

1      JUROR DEUEL:   . . . (inaudible)

2      MR. CUSICK:   Can you say that—Whatever your

3  experiences are through learning the law and whatever your

4  professors say, can you—whatever they may say about any

5  case—that you can put that aside and just turn—

6  . . . (inaudible) a lot of different things in law school and

7  undergraduate, are you able to put that aside and just listen

8  to the evidence—

9      JUROR DEUEL:   Yeah.

10      MR. CUSICK:   —and use your own common sense and not

11  necessarily use whatever a professor may say one way or the

12  other?

13      JUROR DEUEL:   Yeah.  I only have one class left,

14  and I'm not taking it this fall.  So I believe so, yeah.

15      MR. CUSICK:   And you heard my examples of rain, the

16  cookie crumbs, and the fact that what I say and what

17  Mr. Champion says are not evidence, it's what comes from the

18  witness stand.

19      You understand that, and do you agree with that?

20      JUROR DEUEL:   Yes, I do.

21      MR. CUSICK:   Are there any problems that you have

22  with any of the examples that I came up with?

23      JUROR DEUEL:   No.

24      MR. CUSICK:   I have nothing further.

25      Thank you, your Honor.

1          THE COURT:   Challenges for cause, Mr. Champion?

2          MR. CHAMPION:   None for cause, your Honor.

3          THE COURT:   For cause, Mr. Cusick?

4          MR. CUSICK:   None for cause, your Honor.

5          THE COURT:   Peremptory challenges are with you,

6     Mr. Champion.

7          MR. CHAMPION:   Your Honor, I would thank and excuse

8     juror in seat number five—

9          THE COURT:   Mr. Turner?

10          MR. CHAMPION:   —Mr. Turner.

11          THE COURT:   Thank you, sir.  We appreciate your

12     time.

13          Any others at this time, Mr. Champion?

14          MR. CHAMPION:   Not at this time.

15          THE COURT:   Any peremptory challenges at this time,

16     Mr. Cusick?

17          MR. CUSICK:   Yes, your Honor.  I'd like to thank

18     and excuse juror number 16, Ms. Deuel.

19          THE COURT:   Thank you, ma'am.  We appreciate your

20     time.

21          Trials are open to the public.  You're certainly

22     welcome to stay and watch.

23          JUROR DEUEL:   Thanks.

24          THE COURT:   Any others at this time, Mr. Cusick?

25          MR. CUSICK:   Not at this time, your Honor.

189

1        THE COURT:   All right.  We'll select two more

2   names.

3        THE CLERK:   Juror in seat number five,

4   Matthew Yonkman—Y-o-n-k-m-a-n.

5        Juror in seat number 16, Lynette Protz—P-r-o-t-z.

6        THE COURT:   All right.  Ms. Protz and Mr. Yonkman,

7   anything you want to bring to our attention based on what was

8   previously addressed?

9        No.  All right.  Appreciate that.

10        I'll turn it over to Mr. Cusick.

11        MR. CUSICK:   Thank you, your Honor.

12        Mr. Yonkman, you heard my examples in dealing with

13   rain and cookies and all that stuff.

14        JUROR YONKMAN:   Yeah.

15        MR. CUSICK:   Do you have any issues with or any

16   questions regarding my hypothetical?

17        JUROR YONKMAN:   No.

18        MR. CUSICK:   Okay.  And you're willing to use your

19   common sense and reason to determine who's telling the truth

20   and to evaluate the evidence in this case?

21        JUROR YONKMAN:   Yes, sir.

22        MR. CUSICK:   Okay.  And you're an accountant?

23        JUROR YONKMAN:   Correct.

24        MR. CUSICK:   So things have to be pretty much

25   exact—

1          JUROR YONKMAN:    Yes.

2          MR. CUSICK:    —a hundred—perfection as an

3     accountant, right?

4          JUROR YONKMAN:    Correct.

5          MR. CUSICK:    Maybe not so much in chemistry but, in

6     accountancy, it has to be exact, right?

7          JUROR YONKMAN:    Yeah.

8          MR. CUSICK:    Okay.  So you're able—Do you agree

9     that the law, in analyzing facts at trial, is not really the

10    same as analyzing numbers—

11         JUROR YONKMAN:    Yes.

12         MR. CUSICK:    —and that just addition and all the

13    things that go—analysis through finances is much more

14    concrete—maybe more difficult to understand but more concrete

15    than determining whether or not somebody's—evaluating evidence

16    at trial?  Do you agree with that?

17         JUROR YONKMAN:    . . . (inaudible)

18         MR. CUSICK:    Okay.  And that won't affect you in

19    any way?  Okay.

20         And, Ms. Protz—

21         JUROR PROTZ:    Yeah.

22         MR. CUSICK:    —it says you're self-employed.  Can

23    you tell me what you do.

24         JUROR PROTZ:    Right now I'm responsible for my

25    grandson . . . (inaudible)

1          MR. CUSICK:   Okay.

2          JUROR PROTZ:   — . . . (inaudible)

3          MR. CUSICK:   Okay.

4          JUROR PROTZ:   . . . (inaudible)

5          THE COURT:   You might just speak up a little bit,

6     ma'am.

7          JUROR PROTZ:   Okay.

8          MR. CUSICK:   Now will that create a hardship for

9     you?  Are you able to come to court, and are you able to sit

10    and listen to the evidence every day for two to three weeks?

11         JUROR PROTZ:   It's not a hardship for me.  It may

12    be for my—my daughter . . . (inaudible)

13         MR. CUSICK:   I'm sorry?

14         JUROR PROTZ:   They made arrangements for him today—

15         MR. CUSICK:   Okay.

16         JUROR PROTZ:   —and . . . (inaudible)

17         MR. CUSICK:   It's enough time in advance?

18         JUROR PROTZ:   Yes.

19         MR. CUSICK:   Okay.  And you're able to be a fair

20    and impartial juror in this case?

21         JUROR PROTZ:   Yes.

22         MR. CUSICK:   Have you ever sat on a jury before?

23         JUROR PROTZ:   No.

24         MR. CUSICK:   Okay.  Mr. Yonkman, have you—

25         JUROR YONKMAN:   No, I haven't.

1     MR. CUSICK:   —sat—

2             And if I can just ask that—

3             THE COURT:   You may.

4             MR. CUSICK:   —question to Ms. Taylor and Ms. Lagoni

5     and Mr. Jasensky.  Have you served—

6             JUROR JASENSKY:   No, I have not.

7             MR. CUSICK:   —on a jury?

8             JURORS TAYLOR and LAGONI:   No.

9             MR. CUSICK:   Okay.  Thank you.

10             Nothing further.

11             THE COURT:   Mr. Champion?

12             MR. CHAMPION:   Thank you.

13             Mr. Yonkman, any questions for us?

14             JUROR YONKMAN:   No, it all makes sense.

15             MR. CHAMPION:   You understand that you have to hold

16     the prosecution to the highest standard in the criminal

17     justice system?  You understand that?

18             JUROR YONKMAN:   Yeah.

19             MR. CHAMPION:   You can do that?

20             JUROR YONKMAN:   Yeah.

21             MR. CHAMPION:   Ms. Protz, same question for you.

22     Can you hold the prosecution to the standard that the Court

23     sets . . . (inaudible)

24             JUROR PROTZ:   Yes.

25             MR. CHAMPION:   Now you said there was some issues,

193

```
 1    childcare right now for your daughter?

 2                    JUROR PROTZ:    Correct.

 3                    MR. CHAMPION:    The trial's not for three weeks.

 4    Will you be able to arrange that so that won't be an issue

 5    . . . (inaudible)

 6            Can you listen to all the evidence and be fair and

 7    impartial?

 8            Thank you.

 9            No other questions.

10            THE COURT:    Challenges for cause, Mr. Cusick?

11            MR. CUSICK:    None for cause, your Honor.

12            THE COURT:    Mr. Champion?

13            MR. CHAMPION:    None, your Honor.

14            THE COURT:    Peremptory challenges are with you,

15    Mr. Cusick.

16            MR. CUSICK:    Your Honor, I'd like to thank and

17    excuse Mr. Comiskey, as well as Ms. Gottschalk.

18            THE COURT:    Okay.  Jurors in seat number 14 and 13,

19    thank you both for your time.  We appreciate it.  You're both

20    excused.

21            Any others at this time, Mr. Cusick?

22            MR. CUSICK:    No, your Honor.

23            THE COURT:    Mr. Champion, any peremptory challenges

24    at this time, sir?

25            MR. CHAMPION:    Yes, your Honor, I would thank and
```

excuse juror in seat number seven, Ms. Carlisle.

THE COURT:  Thank you, ma'am.  We appreciate your time today.

Any others at this time, Mr. Champion?

MR. CHAMPION:  No, your Honor.

THE COURT:  All right.  We'll select three more names.

THE CLERK:  Juror in seat number 14, John Sweet—S-w-e-e-t.

Juror in seat number 13, Jody Bohnsack—B-o-h-n-s-a-c-k.

And juror in seat number seven, Mark Davis—D-a-v-i-s.

THE COURT:  All right.  Those jurors that just sat down, do any of you have anything you want to bring to our attention based on the concepts, the issues, the questions previously addressed?

UNIDENTIFIED JUROR:  No.

THE COURT:  No.  All right.

Mr. Champion, I believe it's your turn.

MR. CHAMPION:  Thank you, your Honor.

THE COURT:  I almost lost track already.

MR. CHAMPION:  Pardon?

THE COURT:  I said I almost lost track already.

MR. CHAMPION:  Mr. Davis—

1     JUROR DAVIS: Yeah.

2     MR. CHAMPION: —do you think people sometime

3 embellishes stories to make themselves look better?

4     JUROR DAVIS: Yeah.

5     THE COURT: Do you think you'll be able to judge

6 the credibility of someone when they're testifying to see if

7 they're embellishing a story or lying?

8     JUROR DAVIS: Yeah.

9     THE COURT: Would that be a possibility?

10    JUROR DAVIS: Yeah.

11    MR. CHAMPION: Mr. Sweet, you've heard all the

12 questions. Do you have any questions for us?

13    JUROR SWEET: No, sir.

14    MR. CHAMPION: Ever been on a jury?

15    JUROR SWEET: No.

16    MR. CHAMPION: Anyone here been on a jury?

17    You've heard the—what the standard of proof is,

18 proof beyond a reasonable doubt. Can you hold the prosecution

19 to that?

20    JUROR SWEET: Yes.

21    MR. CHAMPION: Did it make sense to you that—when

22 we talked about that the prosecution must prove each and every

23 element beyond a reasonable doubt before you can find a person

24 guilty—

25    JUROR SWEET: Yes.

196

1    MR. CHAMPION:   —and that right now they're not

2    guilty—

3    JUROR SWEET:   Yes.

4    MR. CHAMPION:   —and that, even if you thought a

5    person committed a crime, unless each and every element was

6    proven, you have to find the person not guilty?

7    JUROR SWEET:   Yes.

8    MR. CHAMPION:   I know that sounds hard.  Would you

9    agree with that?

10   JUROR SWEET:   It may be hard, but you have to do—

11   MR. CHAMPION:   You have to do it.

12   JUROR SWEET:   — . . . (inaudible)

13   MR. CHAMPION:   Do you agree with that,

14   Ms. Bohnsack?

15   JUROR BOHNSACK:   Yes.

16   MR. CHAMPION:   Did I say your name right?

17   JUROR BOHNSACK:   Yes.

18   MR. CHAMPION:   Oh, good.

19   It sounds like a strange concept, wouldn't you

20   agree?

21   JUROR BOHNSACK:   . . . (inaudible) strange.

22   MR. CHAMPION:   We watch things on TV.  As you're

23   seeing, TV court and real court is two different things—

24   JUROR BOHNSACK:   Yes.

25   MR. CHAMPION:   —right?

1          And this—A jury is not one of popular decision but
2    looking at each and every element.
3          JUROR BOHNSACK:    Yes.
4          MR. CHAMPION:    And you can do that without any
5    reservations?
6          JUROR BOHNSACK:    Yes.
7          MR. CHAMPION:    Any hardship for any of the three of
8    you to be here today—
9          JUROR SWEET:    No.
10          JUROR BOHNSACK:    No.
11          MR. CHAMPION:    —or when we come back in three
12    weeks, I should say?
13          JUROR SWEET:    No.
14          JUROR BOHNSACK:    No.
15          MR. CHAMPION:    Okay.    Thank you.
16          THE COURT:    Mr. Cusick?
17          MR. CUSICK:    Thank you, your Honor.
18          Mr. Davis—
19          JUROR DAVIS:    Yeah.
20          MR. CUSICK:    —just kind of going off what
21    Mr. Champion indicated, there are motives that people might
22    have to lie, correct?
23          JUROR DAVIS:    Oh, yeah.
24          MR. CUSICK:    And you also—Would you agree that
25    there's motives and reasons for people to tell the truth at

```
1    times?

2              JUROR DAVIS:    Yeah.

3              MR. CUSICK:    And you're able to evaluate some of

4    those reasons why somebody might lie or someone might come

5    forward and tell the truth?

6              JUROR DAVIS:    Yeah.

7              MR. CUSICK:    And you can do that through your own

8    life experience and through the evidence—through your own

9    common sense and through the evidence that comes forward?

10             JUROR DAVIS:    Yes.

11             MR. CUSICK:    Ms. Bohnsack, do you—

12             Is it Bohnsack?

13             JUROR BOHNSACK:    Bohnsack.

14             MR. CUSICK:    Bohnsack.

15             —do you agree with what I just said?

16             JUROR BOHNSACK:    Yes.

17             MR. CUSICK:    Okay.  And you heard all my

18   hypothetical.  Is there any issues that any of the three of

19   you have with any of them?

20             JUROR BOHNSACK:    No.

21             UNIDENTIFIED JUROR:    No.

22             MR. CUSICK:    Okay.  Do you also agree, Mr. Sweet,

23   that people have an incentive at times to tell the truth—

24             JUROR SWEET:    Yes, sir.

25             MR. CUSICK:    Okay.—and come forward if they have
```

1     information?

2                    JUROR SWEET:   Yes, sir.

3                    MR. CUSICK:   I have nothing further.

4                    Thank you, your Honor.

5                    THE COURT:   Challenges for cause, Mr. Champion?

6                    MR. CHAMPION:   None, your Honor.

7                    THE COURT:   Mr. Cusick?

8                    MR. CUSICK:   None for cause, your Honor.

9                    THE COURT:   Peremptory challenges, Mr. Champion?

10                   MR. CHAMPION:   May I have just a moment,

11    your Honor?

12                   THE COURT:   Yes, you may.

13                   MR. CHAMPION:   Your Honor, I would thank and excuse

14    juror in seat number three, Mr. Jackson.

15                   THE COURT:   Mr. Jackson, thank you.  You are

16    excused, sir.  We appreciate your time today.

17                   Any others at this time, Mr. Champion?

18                   MR. CHAMPION:   Not at this time, your Honor.

19                   THE COURT:   Mr. Cusick, any peremptory challenges,

20    sir?

21                   MR. CUSICK:   Yes, your Honor.  At this time I'd

22    like to thank and excuse juror seated in seat number seven.

23                   THE COURT:   Mr. Davis, we appreciate your time

24    today, sir.

25                   Any others at this time, Counsel?

```
 1              MR. CUSICK:   No, your Honor.

 2              THE COURT:   All right.  We'll select two more

 3    names.

 4              THE CLERK:   Juror in seat number three,

 5    Mary Zoeller—Z-o-e-l-l-e-r.

 6              Juror in seat number seven,

 7    Gregory Vanheukelom—V-a-n-h-e-u-k-e-l-o-m.

 8              THE COURT:   All right.  Those two that just sat

 9    down, anything you want to bring to our attention at this

10    time?

11              JUROR ZOELLER:   No.

12              JUROR VANHEUKELOM:   No.

13              THE COURT:   No.

14              All right.  I will turn it over to Mr. Cusick.

15              MR. CUSICK:   Thank you, your Honor.

16              And, your Honor, if I could just address the same

17    question I asked before regarding if anybody has been a victim

18    of a crime, knows somebody that's been a victim of a crime.

19              THE COURT:   You may.

20              MR. CUSICK:   Does anybody who I've—who has been

21    recently asked to come on the jury to sit in this box, has

22    anybody been a victim of a crime or know anybody close to them

23    that's been a victim of a crime?

24              Ms. Bohnsack?

25              JUROR BOHNSACK:   Many years ago my son's babysitter
```

1    was killed by a drunk driver.

2             MR. CUSICK:   Will that affect your ability to be a

3    fair and impartial juror?

4             JUROR BOHNSACK:   . . . (inaudible)

5             MR. CUSICK:   Mr. Sweet?

6             JUROR SWEET:   About ten, 12 years ago, I was robbed

7    driving cab, but that was long time ago.

8             THE COURT:   I can't—

9             MR. CUSICK:   And where—

10            THE COURT:   —hear you, sir.  I'm sorry.

11            JUROR SWEET:   About ten, 12 years ago, I was robbed

12   driving cab, but it never went to court or anything, so—

13            MR. CUSICK:   And Mr. Zoel—Mr. Vanheukelom?

14            JUROR VANHEUKELOM:   Heukelom.

15            MR. CUSICK:   Vanheukelom.

16            JUROR VANHEUKELOM:   Yes.

17            In my profession, I deal with a lot of people; and

18   so there's been minor ones.  And, eight years ago, I was

19   involved with one with decapitation here in Kalamazoo.

20            MR. CUSICK:   Okay.  Will that affect you—

21            JUROR VANHEUKELOM:   No.

22            MR. CUSICK:   —in any way?  Okay.

23            And then same question regarding has anybody either

24   been criminal defendant or—

25            UNIDENTIFIED JUROR:   No.

                              202

1        MR. CUSICK:   Yes, sir?

2        JUROR SWEET:   My son had a domestic violence charge

3    for taking a shot at me seven years ago, if that counts.

4        MR. CUSICK:   Does that affect you in any way as far

5    as being able to be a fair and impartial juror?

6        JUROR SWEET:   No.

7        MR. CUSICK:   Okay.  Mr. Vanheukelom, you're a

8    pastor, correct?

9        JUROR VANHEUKELOM:   Correct.

10        MR. CUSICK:   Okay.  And is that at a local church?

11        JUROR VANHEUKELOM:   Correct.  Texas Corners.

12        MR. CUSICK:   And can you differentiate—

13        You have a lot of responsibilities being a pastor.

14    I'm not asking you to judge anybody in this case, and I'm just

15    asking you to look at the facts and evaluate the evidence and

16    determine who you believe and what witnesses you believe are

17    telling the truth.

18        Do you have a problem with that?  Does your

19    profession in any way stop you from looking at—certainly

20    helping people and oftentimes not judging people—but looking

21    at the facts in the situation, are you able to differentiate

22    between the two?

23        JUROR VANHEUKELOM:   Yes, I am.

24        MR. CUSICK:   Okay.  And Ms.—Is it Ms. Zoeller?

25        JUROR ZOELLER:   Yeah.

1        MR. CUSICK:   Sorry.

2        JUROR ZOELLER:   It's okay.

3        MR. CUSICK:   It's a lot of people.  I get them

4    confused.

5        Ms. Zoeller, you heard all of my hypothetical?

6        JUROR ZOELLER:   Yes.

7        MR. CUSICK:   Do you have any problem being a fair

8    and impartial juror?

9        JUROR ZOELLER:   No.

10        MR. CUSICK:   And I don't—Is there any hardship that

11    will stop you from being a juror for two to three weeks?

12        JUROR ZOELLER:   No.

13        MR. CUSICK:   I have nothing further.

14        Thank you, your Honor.

15        THE COURT:   Mr. Champion?

16        MR. CHAMPION:   Thank you, your Honor.

17        I want to make sure, neither one of you know any of

18    the witnesses or the lawyers or the judges or anything; is

19    that correct?

20        And neither one have an issue about listening to all

21    the—all the evidence before reaching a conclusion and then

22    applying the evidence to each and every element to see if the

23    prosecution has proved each and every element beyond a

24    reasonable doubt?

25        Ms. Zoeller, if you were in my client's position,

```
1    would you want yourself as a juror?  Good question, huh?
2              JUROR ZOELLER:   I don't—
3              THE COURT:   Did you say I don't know?
4              JUROR ZOELLER:   Yeah, I mean—
5              THE COURT:   Okay.
6              JUROR ZOELLER:   —I—You never know what someone
7    thinks or what they're going to do, so it'd be—I mean, I don't
8    have the logistics—
9              THE COURT:   They can't hear you.  You've got to
10   speak up.
11             I think you said you never know what someone thinks
12   or what they're going to do—
13             JUROR ZOELLER:   Right.
14             THE COURT:   —is that what you indicated?
15             JUROR ZOELLER:   I don't claim to be a personal
16   expert on picking someone, so I really wouldn't know.
17             MR. CHAMPION:   But you could be fair and impartial?
18             JUROR ZOELLER:   Yes.
19             MR. CHAMPION:   Would you want that type of person
20   to sit on a jury for you?
21             JUROR ZOELLER:   Yes.
22             MR. CHAMPION:   Same for you?
23             JUROR VANHEUKELOM:   The same, correct.
24             MR. CHAMPION:   Thank you.
25             THE COURT:   Challenges for cause?
```

1    MR. CUSICK:    None for cause, your Honor.

2    THE COURT:    Mr. Champion?

3    MR. CHAMPION:    None for cause, your Honor.

4    THE COURT:    Peremptory challenges, Mr. Cusick?

5    MR. CUSICK:    I'd like to thank and excuse the

6    individual seated in seat number two.

7    THE COURT:    Mr. Herder, thank you for your time,

8    sir.  You are excused.

9    Any others at this time, Counsel?

10   MR. CUSICK:    No, your Honor.

11   THE COURT:    Mr. Champion?

12   MR. CHAMPION:    I have none at this time,

13   your Honor.

14   THE COURT:    All right.  We'll select another name

15   for seat number two.

16   THE CLERK:    Sharla Heywood—H-e-y-w-o-o-d.

17   THE COURT:    Mr. Heywood, I know we spoke with you

18   about a vacation you have later on in September.  I have that.

19   Anything else you want to bring to our attention,

20   ma'am, based on the concepts, the questions previously raised?

21   JUROR HEYWOOD:    . . . (inaudible)

22   THE COURT:    I think you're going to have to speak

23   up.  You indicate—

24   JUROR HEYWOOD:    . . . (inaudible) surgery on my

25   hand.

1      THE COURT:   Okay.  And that's on the 22nd of August?

2      JUROR HEYWOOD:   . . . (inaudible)

3      THE COURT:   Okay.  And I'm not going to have you

4  report back until the 26th, so you should be fine.

5      All right.  Mr. Champion, I'll turn it over to you,

6  sir.

7      MR. CHAMPION:   So you'll be back in time for the

8  wonderful trial, correct?

9      JUROR HEYWOOD:   Correct.

10     MR. CHAMPION:   With two or three weeks, that won't

11 pose an issue . . . (inaudible)

12     JUROR HEYWOOD:   . . . (inaudible)

13     MR. CHAMPION:   Pardon?

14     JUROR HEYWOOD:   No.

15     MR. CHAMPION:   And then, when we come back the end

16 of August, you're not going to have a conflict?

17     JUROR HEYWOOD:   Well, not until September when I

18 have . . . (inaudible)

19     THE COURT:   I don't think they can hear either one

20 of you.  I'm sorry.

21     JUROR HEYWOOD:   . . . (inaudible) vacation that I

22 told her about that I have September.

23     MR. CHAMPION:   When in—

24     THE COURT:   She indicated she was on vacation

25 September 16 through the 20th.

```
1           MR. CHAMPION:   You've heard all the concepts?

2           JUROR HEYWOOD:   Uhm-hmm.

3           MR. CHAMPION:   The question about have you ever

4    been a juror, have you ever been a juror before?

5           JUROR HEYWOOD:   No.  No.

6           MR. CHAMPION:   Victim of a crime?

7           JUROR HEYWOOD:   No.

8           MR. CHAMPION:   Never accused of crime?

9           JUROR HEYWOOD:   No.

10          MR. CHAMPION:   The question I asked of Ms. Zoeller

11   was, if you were accused of a crime, would you want somebody

12   like yourself to be a juror?

13          JUROR HEYWOOD:   Sure.

14          MR. CHAMPION:   You'll be fair and impartial?

15          JUROR HEYWOOD:   Yes.

16          MR. CHAMPION:   Listen to all the evidence?

17          JUROR HEYWOOD:   Yes.

18          MR. CHAMPION:   Hold the prosecution to their

19   standard to prove each and every element beyond a reasonable

20   doubt?

21          JUROR HEYWOOD:   Yes.

22          MR. CHAMPION:   Thank you.

23          THE COURT:   Mr. Cusick?

24          MR. CHAMPION:   I have no other questions.

25          MR. CUSICK:   Ms. Heywood, you listened to all of my
```

```
1    hypothetical?

2              JUROR HEYWOOD:    Pardon?

3              MR. CUSICK:    You listened to all of my

4    hypotheticals that—

5              JUROR HEYWOOD:    Yes.

6              MR. CUSICK:    —I went over?

7              And you understand that?

8              JUROR HEYWOOD:    Uhm-hmm.

9              MR. CUSICK:    And you're able to look at the

10   credibility of the witnesses and determine whether or not

11   they're telling the truth based on the entirety of the

12   circumstances?

13             JUROR HEYWOOD:    . . . (inaudible)

14             THE COURT:    I didn't hear that.  I'm sorry.

15             JUROR HEYWOOD:    I'm not quite sure on that one.

16             THE COURT:    Okay.

17             MR. CUSICK:    Are you able to evaluate the evidence,

18   the testimony that comes from that witness stand through

19   witnesses; and are you able to analyze whether or not people

20   are telling the truth based on what they say and any other

21   evidence that comes in that may or may not corroborate what

22   they say?  Are you able to look at—to determine whether or not

23   they're telling the truth?

24             JUROR HEYWOOD:    No.

25             MR. CUSICK:    You're not?  Okay.
```

1      So, it's fair—Are you going—Are you able—Is it fair
2   to say that—
3             THE COURT:   Let me just jump in a second.
4             If you sat on this jury—all of you—you would be
5   responsible for judging the credibility of the witnesses.
6   That's solely in your hands.
7             And there's a jury instruction that talks about a
8   number of factors—It's not—a limited number—but, you know, how
9   someone look and acts, maybe, on the witness stand;
10             Look at all the other evidence that comes in;
11             Whether there's other influences that may affect
12   someone's testimony—Maybe they have a reason to tell the truth
13   or a reason to lie.—that might come out in their testimony.
14             But, certainly, we all bring our experiences and—our
15   personal experiences and background, and that's your
16   responsibility.
17             Can you do that, ma'am?
18             JUROR HEYWOOD:   Yes.
19             THE COURT:   Okay.  Okay.  I appreciate that, so—
20             Go ahead, Counsel.
21             MR. CUSICK:   I have nothing further.
22             Thank you, your Honor.
23             I have one more question, actually.  Could I ask
24   Mr. Sweet a question?
25             THE COURT:   Yes.

1     MR. CUSICK:   Mr. Sweet, do you have a—What's your

2     background in, if—Are you working at the moment or—

3     JUROR SWEET:   I'm a taxi driver.

4     MR. CUSICK:   Taxi driver.  Okay.  Is that in the

5     city of Kalamazoo?

6     JUROR SWEET:   Yes, sir.

7     MR. CUSICK:   Okay.  Thank you.

8     THE COURT:   Mr. Champion?

9     MR. CHAMPION:   I have no challenges, your Honor, at

10    this time.

11    THE COURT:   Okay.  Any challenges for cause,

12    Counsel?

13    MR. CUSICK:   None for cause, your Honor.

14    THE COURT:   All right.  And—I'm sorry.—any

15    peremptory challenges then?

16    MR. CHAMPION:   No.

17    THE COURT:   Any peremptory challenges, Counsel?

18    MR. CUSICK:   Your Honor, I'd like to thank and

19    excuse the individual seated in seat number two and seat

20    number one.

21    THE COURT:   All right.  So Ms. Taylor and

22    Ms. Heywood, you are both excused.  We appreciate your time

23    today.

24    We will select two more names for seat number two

25    and seat number one.

1          THE CLERK:    Seat number two,

2    Robert Nelson—N-e-l-s-o-n.

3          Juror in seat number one, Sandra Hill—H-i-l-l.

4          THE COURT:    All right.  Anything that either of you

5    want to bring to our attention based on what was previously

6    addressed?

7          JUROR ROBERT NELSON:    No.

8          JUROR HILL:    No.

9          THE COURT:    No.

10          All right.  Mr. Cusick, I'll turn it over to you.

11          MR. CUSICK:    Ms. Hill, you heard all of my

12    hypotheticals?

13          JUROR HILL:    Yes.

14          MR. CUSICK:    And do you have any questions

15    regarding them?  Did you understand them?

16          JUROR HILL:    Yes.

17          MR. CUSICK:    Okay.  Have you ever served on a jury?

18          JUROR HILL:    No.

19          MR. CUSICK:    And the same questions to you,

20    Mr. Nelson.

21          JUROR ROBERT NELSON:    No, I have never served on a

22    jury before, no.

23          MR. CUSICK:    You understand the hypothetical

24    situations—

25          JUROR ROBERT NELSON:    Yes.

```
 1              MR. CUSICK:   —I came up with?

 2              You're able to evaluate the evidence, Mr. Nelson?

 3              JUROR ROBERT NELSON:   Yes.

 4              MR. CUSICK:   Ms. Hill?

 5              JUROR HILL:   Yes.

 6              MR. CUSICK:   Okay.  Ms. Hill, you were a teacher?

 7              JUROR HILL:   Yes.

 8              MR. CUSICK:   Okay.  And was that here in Kalamazoo?

 9              JUROR HILL:   Comstock.

10              MR. CUSICK:   And are you—You're retired now,

11      correct?

12              JUROR HILL:   Yes.

13              MR. CUSICK:   And you're able to use your

14      experience—You probably had a lot of opportunities in your

15      career to be able to determine who was telling the truth—

16              JUROR HILL:   Oh, yes.

17              MR. CUSICK:   —and who was lying, right?

18              JUROR HILL:   I'm good at it.

19              MR. CUSICK:   Okay.  And you'll be able to take that

20      into account here?

21              JUROR HILL:   Yes.

22              MR. CUSICK:   Okay.  Thank you, your Honor.

23              THE COURT:   Mr. Champion?

24              MR. CHAMPION:   Thank you, your Honor.

25              What grade level or subject did you—
```

```
 1                    JUROR HILL:   Seventh and eighth grade language
 2         arts.
 3                    MR. CHAMPION:   Oh, I bet you were good.  At—
 4                    JUROR HILL:   I try.
 5                    MR. CHAMPION:   At that age level, they have a
 6         tendency to tell all kinds of stories; would you agree?
 7                    JUROR HILL:   Yes, they do.
 8                    MR. CHAMPION:   Embellish stories, make up lies for
 9         various reasons, correct?
10                    JUROR HILL:   Absolutely.
11                    MR. CHAMPION:   And you can apply that life
12         experience to the courtroom; would you—
13                    JUROR HILL:   Yes.
14                    MR. CHAMPION:   —agree?
15                    Think you'd be fair and impartial?
16                    JUROR HILL:   Definitely.
17                    MR. CHAMPION:   Mr. Nelson, I see you're a foreman.
18                    JUROR ROBERT NELSON:   Yes.
19                    MR. CHAMPION:   So you probably do the same thing to
20         some degree; would you agree?
21                    JUROR ROBERT NELSON:   Yes.
22                    MR. CHAMPION:   Just a little bit older version of
23         the seventh and eighth graders?
24                    JUROR ROBERT NELSON:   Correct.
25                    MR. CHAMPION:   Think you can be fair and impartial?
```

214

1      JUROR ROBERT NELSON:   Yes.

2      MR. CHAMPION:   Ever been a victim of crime?

3      JUROR ROBERT NELSON:   No.

4      MR. CHAMPION:   Accused of a crime?

5      JUROR ROBERT NELSON:   No.

6      MR. CHAMPION:   Never been on a jury or anything of

7   that nature?

8      JUROR ROBERT NELSON:   No.

9      MR. CHAMPION:   Any questions for me?

10      JUROR ROBERT NELSON:   No.

11      MR. CHAMPION:   Ms. Hill, any questions?

12      JUROR HILL:   None.

13      MR. CHAMPION:   Thank you.

14      THE COURT:   Challenges for cause, Mr. Cusick?

15      MR. CUSICK:   None at this time, your Honor.

16      MR. CHAMPION:   None, your Honor.

17      THE COURT:   Any peremptory challenges, Mr. Cusick?

18      MR. CUSICK:   I'd like to thank and excuse the

19   individual sitting in seat number 14, Mr. Sweet.

20      THE COURT:   Mr. Sweet, thank you very much for your

21   time, sir.

22      Any others?

23      MR. CUSICK:   Not at this time, your Honor.

24      THE COURT:   Mr. Champion, any peremptory challenges

25   at this time?

1          MR. CHAMPION:   None, your Honor.

2          THE COURT:   We'll select another name for seat

3     number 14.

4          THE CLERK:   Stephanie Nelson—N-e-l-s-o-n.

5          THE COURT:   Ms. Nelson, are you related to

6     Robert Nelson, who is sitting in front of you?

7          No.  All right.  Have to ask.  Sometimes that

8     happens.

9          Anything you want to bring to our attention based on

10    what was previously addressed?

11         JUROR STEPHANIE NELSON:   No.

12         THE COURT:   No.

13         Mr. Champion?

14         MR. CHAMPION:   Thank you.

15         So we have two Nelsons on the panel.  Do you know

16    each other?

17         JUROR ROBERT NELSON:   No.

18         MR. CHAMPION:   Okay.  Just have to ask that

19    question.

20         You heard all the questions.  You ever been a victim

21    of a crime?

22         JUROR STEPHANIE NELSON:   I have, but it was a long

23    time ago.

24         MR. CHAMPION:   Anything about that experience that

25    would affect your ability to be fair and impartial?

216

1          JUROR STEPHANIE NELSON:    No.

2          MR. CHAMPION:    Especially given the charge.

3     . . . (inaudible)

4          JUROR STEPHANIE NELSON:    No, someone stole my pets.

5     She admitted her guilt.  It was—

6          MR. CHAMPION:    Okay.  You understand that the

7     prosecution must prove each and every element beyond a

8     reasonable doubt?

9          JUROR STEPHANIE NELSON:    Yes.

10         MR. CHAMPION:    And, unless they do that, you have

11    to find a person not guilty?

12         JUROR STEPHANIE NELSON:    Yes . . . (inaudible)

13         MR. CHAMPION:    Did you hear the judge say that I

14    can sit over there with my client, we can play cards and we

15    don't have to do anything?

16         JUROR STEPHANIE NELSON:    Yes.

17         MR. CHAMPION:    You understand that?

18         JUROR STEPHANIE NELSON:    Yes.

19         MR. CHAMPION:    That won't happen, but we can do

20    that.

21         Why is that important?

22         JUROR STEPHANIE NELSON:    Because that's his right.

23         MR. CHAMPION:    That's his right.

24         Because who has the burden?  The prosecution.

25         JUROR STEPHANIE NELSON:    Yes.

217

```
 1              MR. CHAMPION:   And it never shifts—

 2              JUROR STEPHANIE NELSON:   Right.

 3              MR. CHAMPION:   —would you agree?

 4              JUROR STEPHANIE NELSON:   Correct.

 5              MR. CHAMPION:   A question I've asked a couple of

 6     jurors, if you were in my client's seat, would you want

 7     somebody like yourself as a juror?

 8              JUROR STEPHANIE NELSON:   Yes.

 9              MR. CHAMPION:   Why?

10              JUROR STEPHANIE NELSON:   Because I feel like I'm a

11     pretty honest—

12              MR. CHAMPION:   And you can—

13              JUROR STEPHANIE NELSON:   —impartial person.

14              MR. CHAMPION:   You can listen to everything?

15              JUROR STEPHANIE NELSON:   Absolutely.

16              MR. CHAMPION:   If you have an opinion—Let's say

17     you're deliberating and your opinion is different than the

18     other individuals—

19              THE COURT:   Can you speak up a little bit,

20     Mr. Champion.

21              MR. CHAMPION:   Sorry, your Honor.

22              If you have an opinion and it's different than the

23     other 11 individuals, can you hold your conviction if you

24     believe it's correct?

25              JUROR STEPHANIE NELSON:   Yes.
```

1          MR. CHAMPION:   Thank you.

2          THE COURT:   Mr. Cusick?

3          MR. CUSICK:   Thank you, your Honor.

4          Ms. Nelson, you understand that people, as

5    Mr. Champion said, might have a motive to lie but they also

6    might have a motive to tell the truth?

7          JUROR STEPHANIE NELSON:   Of course.

8          MR. CUSICK:   And you're able to evaluate all of the

9    evidence, listen to everybody, and look at all the

10   circumstances to determine what that—what that truth may be,

11   correct?

12         JUROR STEPHANIE NELSON:   Yes.

13         MR. CUSICK:   Okay.  And I apologize if this has

14   already been asked, but I didn't hear it.  Have you served on

15   a jury before?

16         JUROR STEPHANIE NELSON:   I have never.

17         MR. CUSICK:   And do you have any type of hardship

18   or anything to serve two to three weeks from—starting

19   August 27th?

20         JUROR STEPHANIE NELSON:   I don't think so.  I

21   talked to my boss on my lunch break.  I am a single mom of

22   three girls, so—But I think that we're going to be able to

23   work around that schedule.  So I think I'll be all right.

24         MR. CUSICK:   I have nothing further.

25         Thank you, your Honor.

1         THE COURT:   Challenges for cause, Mr. Champion?

2         MR. CHAMPION:   No, your Honor.

3         THE COURT:   For cause, Mr. Cusick?

4         MR. CUSICK:   None, your Honor.

5         THE COURT:   Any peremptory challenges at this time,

6    Mr. Champion?

7         MR. CHAMPION:   No, we're satisfied with the panel,

8    your Honor.

9         THE COURT:   Mr. Cusick?

10         MR. CUSICK:   People are satisfied.

11         THE COURT:   All right.  So before I release the

12   rest of the jurors, let me just double-check.  We have to have

13   12 of you deliberate.  Is there anything that you want to

14   bring to our attention or you feel that the attorneys or the

15   Court should be aware of that has not been addressed before?

16   Raise your hand.

17         And no hands are raised.

18         Okay.  With that, I'm going to excuse the rest of

19   the jurors.  We do appreciate your time.  Obviously, this is

20   an important responsibility that we all have, so we do

21   appreciate your patience with us, also.

22         Please place your badges in the basket on the left

23   side of the double doors.

24         Have a good afternoon.

25         (At 4:29 p.m., remainder of jury panel excused)

1    Okay.  So, those of you remaining, I have a few

2    instructions I'm going to read to you—just some reminders

3    here—and then I will excuse you for the day.

4         And you need to report August 27—That's a

5    Tuesday.—upstairs on the fourth floor.  Just like you did

6    today, you will check in.  I'm going to ask that you arrive at

7    9:00 o'clock.

8         And I will caution you that's a day that we start

9    trials, so there might be a number of other folks that are

10   also checking in on that day.  So you might want to get here

11   just a few minutes early.  But, when we receive word that all

12   of you are here, then we'll bring you down and start with the

13   trial.

14        So I will have some additional jury instructions to

15   read to you, and then I'll turn it over to the attorneys for

16   opening statements, and then we'll begin our witnesses.

17        So sometimes this is a longer process.  Things

18   should move along a little bit quicker when you return on

19   Tuesday—on the 27th.

20        So, again, just a reminder, we will be in trial then

21   that whole week—the 27th, which is a Tuesday, through Friday.

22   And then the next week is Labor Day, so you will actually

23   return on Wednesday—not Tuesday—of that week.  So that is

24   September 4th.  And then we'll go 4th, 5th, and 6th.

25        Then, as we progress through the trial, I will

221

occasionally let you know where we think we are, if we think
we're on track, if we think we might be moving along a little
quicker or a little slower.  So that's the general plan.

All right.  So please listen carefully again.

You must not discuss this case with anyone,
including your family or friends.  You must not even discuss
it with the other jurors until the time comes for you to
decide the case; and, when it is time for you to decide the
case, I will send you to the jury deliberation room for that
purpose.

If I call for a recess during the trial, I will
either send you back to the jury room on the fourth floor or
allow you to leave the courtroom on your own and go about your
business.

You must not discuss this case with anyone or let
anyone discuss it with you or in your presence.  If someone
tries to do that, tell him or her to stop and explain that, as
a juror, you are not allowed to discuss this case.  If he or
she continues, leave immediately and report the incident to us
as soon as you return to court.  And you would do that by
letting Ms. Wint know what happened, and then she'll pass the
information along to myself and the attorneys.

You must not talk to the defendant or the lawyers or
the witnesses about anything at all, even if it has nothing to
do with this case.  It is very important that you only get

1    information about this case when you are in this courtroom
2    when you are acting as the jury and when the attorneys and the
3    defendant and I are all present.

4         During the trial, do not read or listen to or watch
5    any news reports about the case.  Under the law, the evidence
6    you are to consider to decide the case must meet certain
7    standards.  For example, witnesses must be sworn in.  They
8    must be placed under oath, and they must swear to tell the
9    truth, and the lawyers must be able to cross-examine the
10   witnesses.

11        Because news reports do not have to meet these
12   standards, they could give you incorrect or misleading
13   information that may unfairly favor one side or the other.
14   So, to be fair to both sides, you must follow this
15   instruction.

16        The only information you are to receive about this
17   case must come to you in this courtroom, and you must not
18   consider any information that comes from anywhere else.

19        Again, do not read or listen to any newspaper
20   headlines or articles related to the trial.  Do not watch or
21   listen to any television or radio comments about the accounts
22   of the trial.

23        Until your jury service is concluded, you are not to
24   discuss the case with others, including the other jurors.

25        Do not read or listen to any news reports.

1          Do not use a computer, cellphone, or other
2   electronic device with communication capabilities while you
3   are in attendance during the trial or anytime to obtain any
4   information about a party or a witness or an attorney.
5          Let me just stop.
6          Do you need a Halls®, or are you okay?
7          UNIDENTIFIED JUROR:   Could I just have a drink of
8   water?
9          THE COURT:   Yes.
10         Can you get some water for her, please.
11         UNIDENTIFIED JUROR:   . . . (inaudible)
12         THE COURT:   And I know that happens.
13         Let me just give you a moment.
14         I have some Halls® here, too, I'm going to hand—
15         UNIDENTIFIED JUROR:   I'm okay.  I don't—
16         THE COURT:   You're okay.
17         UNIDENTIFIED JUROR:   Yes, just a tickle.  It is a
18   tickle.
19         Thank you.
20         THE COURT:   And I won't have you talk anymore
21   'cause sometimes that makes it worse.
22         Okay.  So the electronic devices may be used during
23   breaks or recesses but may not be used at anytime to obtain or
24   disclose information about a party or a witness or an attorney
25   or a court officer or to obtain information or look up any

1  information about one of your fellow jurors, to look up any

2  news accounts of the case or information collected through

3  juror research on any topics that may be raised during the

4  trial or testimony offered by any witness or by an exhibit.

5          Do not do any investigations on your own or conduct

6  any experiments of any kind related to the case.  And, again,

7  this includes using the Internet for any purpose related to

8  this case.

9          If you discover that another juror has violated any

10  of these instructions, please pass that information along to

11  us.  And, again, you would do that by letting Ms. Wint know

12  what happened.

13          Okay.  So, again, then, ladies and gentlemen,

14  you—I'm going to release you for the day; but please follow

15  all of these instructions.  And I need you to return on

16  August 27 at 9:00 o'clock to the fourth floor.

17          Be careful when you come in and out of the building.

18          And, again, make sure you don't ever come into the

19  courtroom on your own.

20          And please don't hang around the second floor, just

21  in case the attorneys or witnesses are talking about the case.

22          Does anyone have any questions at this time?

23          And it looks like we do have a question.

24          Yes, sir?

25          UNIDENTIFIED JUROR:    Is it going to be 9:00 o'clock

1   every morning, or does that fluctuate; or will we—we won't

2   know until you tell us or—

3           THE COURT:   That is expected, yes—

4           UNIDENTIFIED JUROR:   Okay.

5           THE COURT:   —that it would be 9:00 o'clock every—

6           UNIDENTIFIED JUROR:   Okay.

7           THE COURT:   —morning.  Okay.

8           Any other questions?

9           Yes, ma'am?

10          UNIDENTIFIED JUROR:   We start at 9:00 o'clock.

11  Does it go all day then?  Does it go—I mean, should we expect

12  to stay here till 5:00 every day?

13          THE COURT:   That is the plan.

14          UNIDENTIFIED JUROR:   We—

15          THE COURT:   Things happen.  That's all I can tell

16  you.  That is the plan, yes.

17          UNIDENTIFIED JUROR:   Can I ask, the Friday before

18  Labor Day, will we go till 5:00 o'clock?  Would that be the

19  plan as well, do you know?

20          THE COURT:   That is the plan right now, yes.

21          And did you have a question?

22          UNIDENTIFIED JUROR:   Is it okay if, when we're not

23  in session, if I work?  Is that okay?

24          THE COURT:   Oh, absolutely.

25          UNIDENTIFIED JUROR:   Okay.

1          THE COURT:   Go on with your normal lives between

2    now and the 27ᵗʰ when—

3          UNIDENTIFIED JUROR:   I meant like at lunchtime, can

4    I—'cause I work remotely—

5          THE COURT:   Yes.

6          UNIDENTIFIED JUROR:   —is that all right?

7          THE COURT:   Absolutely.  We have Wi-Fi here, so you

8    can bring phones or other—you know, laptops, whatnot.  Just

9    you can't use them to look up anything about the case or

10   anyone involved in the case.

11         Yes, ma'am?

12         UNIDENTIFIED JUROR:   With bringing our laptops and

13   things, will there be places for us to lock them up; or do we

14   need to drag—

15         THE COURT:   No—

16         UNIDENTIFIED JUROR:   —them with us?

17         THE COURT:   —you will be carrying them back and

18   forth.  We do not want to be responsible—

19         UNIDENTIFIED JUROR:   . . . (inaudible)

20         THE COURT:   —for those, so—

21         Yes.  Any other questions?

22         Yes.  And then, during breaks and so forth, you can

23   certainly use those types of equipment.

24         Okay.  Counsel, is there anything we need to address

25   before I release the jurors at this time?

227

1          Mr. Cusick?

2          MR. CUSICK:   No, your Honor.

3          THE COURT:   Mr. Champion?

4          MR. CHAMPION:   Not that I'm aware of, your Honor.

5          THE COURT:   Okay.  So have a good week.  We'll see

6     you in a few weeks.  We appreciate your time.

7          And, Ms. Wint, are you going to take them out this

8     door or—

9          Okay.  She's going to—You're going to follow

10    Ms. Wint out whichever door she chooses.  That door.

11         Ma'am, you need to stand.  Ma'am, you need to stand

12    for the jury.  Thank you.

13         I probably didn't say that.  I'm sorry.

14         (At 4:39 p.m., jury exits courtroom)

15         You may be seated.

16         Sorry.  I don't think I said that, and I usually do.

17         Okay.  So the jury has left the courtroom, and I

18    believe the doors are shut.  Well, they are shut.

19         Counsel, I know we have a motion that we need to

20    address.  How long do we think it's going to be?

21         MR. CHAMPION:   Well, we discussed this.

22    Susan Prentice-Sao, who's on vacation this week, the plan is

23    is that Mr. Cusick and Susan are going to sit down on

24    Tuesday—a week—

25         THE COURT:   Next Tuesday?

1     MR. CHAMPION:   —from today—

2     THE COURT:   All right.

3     MR. CHAMPION:   —and go through our motion.  And so,

4     if there are any issues, we can bring it back before the

5     Court.  I would anticipate it would be no longer than a half

6     hour to an hour if we have to argue it.

7     THE COURT:   Okay.  And I know in the motion that's

8     filed right now there's a number of documents—some evidence

9     that's listed—and I know that, per our discussions in the

10    past, you are going to review those and determine what was

11    coming in, what was not going to be introduced.  And I

12    appreciate the fact that—I think you have been working behind

13    the scenes already, and, obviously, will continue to do that

14    then.

15    So it sounds like you do not want me to address that

16    motion right now, we can wait until next week and see where

17    we're at?

18    MR. CHAMPION:   That would be my request—

19    THE COURT:   Okay.

20    MR. CHAMPION:   —if that's okay with Mr. Cusick.

21    MR. CUSICK:   And I did speak with Mr. Champion

22    about this.  Obviously, in my response motion, for more than

23    half of the motion, I admitted that we're not going to

24    introduce the evidence.

25    I will say—I can bring this up with Mr. Champion

outside of court.—what we want to introduce and what we
indicated in our motion, we may have to argue it before the
Court because I don't know if we're going to necessarily agree
on that.

THE COURT: Sure.

MR. CHAMPION: And, again, I anticipate it will not
take that long—

THE COURT: Okay.

MR. CHAMPION: — . . . (inaudible)

THE COURT: So let me ask you this, then. I am the
duty judge next week, which means I'm available to handle some
things, and it depends on what the schedule is next week—

(At 4:41 p.m., off record discussion between Court
and clerk)

Okay. It looks like we might be able to address
those issues, if need be, as long as you're in town. And I
don't—Otherwise, you can pick a day. I don't know if you
want—

MR. CUSICK: Well, I—

THE COURT: —to make that decision now or—

MR. CUSICK: I really appreciate that, Judge. I am
going to be in town meeting with some of the witnesses on
Tuesday morning August 13, and I can be with Susan on—shortly
thereafter. And, if there's any issues, maybe Tuesday
afternoon, if the Court's available?

1          THE COURT:  All right.  Now the only catch is—

2          MR. CUSICK:  Or I can do in the morning.

3          THE COURT:  Right.  The only catch is, after you

4     meet, we then need to make sure that Mr. Steel's here,

5     obviously, to address that.  So, if you're going to meet in

6     the morning, let us know, hopefully, by 11:00, 11:30, so we

7     can then ask that Mr. Steel be brought over for the afternoon

8     to address the motion.

9          MR. CHAMPION:  And, again, I'll have to check the

10    schedule to be sure, but I'll get—

11         THE COURT:  Okay.

12         MR. CHAMPION:  —with Mr. Cusick before—

13         THE COURT:  All right.  Let me know.  And then

14    we're flexible.  We can do it a different time, if need be,

15    too, so—

16         MR. CHAMPION:  I think the other issue is the

17    private investigator's still contacting people.  In fact, I

18    was just meeting with relatives of Mr. Steel about trying to

19    locate individuals.  I will—I'm anticipating within the next

20    week to ten days I should have an updated witness list for

21    Mr. Cusick.  I think that was one of his concerns.  As soon as

22    I have a report from Mr. Clatterbuck, I will provide it to

23    Mr. Cusick, also.

24         Is that—

25         THE COURT:  Okay.

1          MR. CHAMPION:    —acceptable by the Court?

2          MR. CUSICK:    And, your Honor, the only issue—I just

3    don't want there to be a situation, even a week before trial

4    or anything more than two weeks before trial, to receive their

5    witnesses—their additional—I did receive a witness list from

6    Mr. Champion, I think, on May 3rd.  But, any additional

7    witnesses, I would like the opportunity—It's been three months

8    for my officer in charge to be able to interview some of the

9    witnesses and look over the reports, et cetera.

10          And I would just—If the Court's willing to indicate

11   at least two weeks before trial, I would like the Court's—that

12   Mr.—

13          THE COURT:    Right.  So that's—

14          MR. CUSICK:    — . . . (inaudible)

15          THE COURT:    —next Tuesday.  Right now I'm just

16   going to indicate, Mr. Champion, you need to have your

17   witnesses provided to him, then, by the end of the day next

18   Tuesday.  You know, if there's issues from there, we'll

19   address them.

20          MR. CHAMPION:    I can always amend my witness list,

21   but—

22          THE COURT:    But—

23          MR. CHAMPION:    —I'll do an amended one.

24          THE COURT:    All right.

25          MR. CUSICK:    And the other issue, your Honor—And I

| | |
|---|---|
| 1 | want to tell Mr. Champion this as well.—Roderick Ivey is on |
| 2 | the witness list.  He was interviewed, and I don't feel that |
| 3 | we need to call him. |
| 4 | THE COURT:   What's his name? |
| 5 | MR. CUSICK:   Roderick Ivey. |
| 6 | MR. CHAMPION:   I may be adding Mr. Ivey to the |
| 7 | stand— |
| 8 | THE COURT:   Okay. |
| 9 | MR. CHAMPION:   —to my witness list. |
| 10 | THE COURT:   All right.  I appreciate that. |
| 11 | Anything else, then, Counsel? |
| 12 | MR. CUSICK:   No, your Honor. |
| 13 | MR. CHAMPION:   No. |
| 14 | MR. CUSICK:   Thank you. |
| 15 | THE COURT:   All right.  Court's in recess. |
| 16 | (At 4:44 p.m., proceedings adjourned) |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |