

**F I L E D**

**Mar 04, 2014**

**9TH JUDICIAL CIRCUIT
COUNTY OF KALAMAZOO
KALAMAZOO, MICHIGAN**

STATE OF MICHIGAN

9th JUDICIAL CIRCUIT COURT – TRIAL DIVISION

FOR THE COUNTY OF KALAMAZOO

PEOPLE OF THE STATE OF MICHIGAN

v                     Case No.: 2011-1983FC

SAMUEL STEEL III
    Defendant.
_____/

HEARING ON MOTIONS

BEFORE THE HONORABLE PAMELA L. LIGHTVOET, CIRCUIT JUDGE

Kalamazoo, Michigan – Tuesday, August 13, 2013

APPEARANCES:

| | |
|---|---|
| FOR THE PEOPLE: | PAUL J. CUSICK P70895 |
| | ASSISTANT ATTORNEY GENERAL |
| | 3030 W GRAND BLVD STE 10-361 |
| | DETROIT MI 48202 |
| | (313) 456-0089 |
| FOR DEFENDANT: | ROBERT CHAMPION P52726 |
| | 124 E BRIDGE ST STE C |
| | PLAINWELL MI 49080 |
| | (269) 685-9220 |

VIDEO RECORDED

| | |
|---|---|
| TRANSCRIBED BY: | CONNIE L. BRANCH CER 5624 |
| | PO BOX 19563 |
| | KALAMAZOO MI 49019 |
| | (269) 377-7170 |

**TABLE OF CONTENTS**

**WITNESSES:**

None

**EXHIBITS:**     **Identified**     **Admitted**

None

1           Kalamazoo, Michigan
2           Tuesday, August 13, 2013 at 2:07 p.m.
3           COURT CLERK: The court calls the matter of the
4  People of the State of Michigan versus Samuel Steel, case
5  number C11-1983FC.  Parties, please state appearances for
6  the record.
7           MR. CUSICK: Good afternoon, your Honor, Paul
8  Cusick on behalf of the People, Assistant Attorney General.
9           MS. PRENTICE-SAO: Susan Prentice-Sao on behalf of
10 Samuel Steel.
11          THE COURT:  All right.  And Mr. Steel is here.
12 Counsel, we did have a discussion in chambers.  My
13 understanding is that Counsel met beforehand and there were
14 discussions and agreements -- certain agreements with
15 regards to records.  So, I certainly appreciate your
16 cooperation in that.  It looks like almost everything was
17 resolved before the Court's involvement.
18          We do, however, have a few things that we need to
19 place on the record.  First of all, in addressing the
20 motion to preclude certain evidence in response -- the
21 response that was filed by the People -- and specifically
22 we were addressing paragraphs O and P.  I guess that would
23 be number four O -- subsection O and subsection P.
24          I'll let you place your arguments on the record
25 if need be; but my understanding is that the Defense is

1    requesting that the -- the People not bring up any
2    reference to dog fighting that the Defendant may have
3    allegedly been involved in.  I indicated to Counsel -- I
4    guess the response -- People's response indicate that the
5    People intend to introduce -- I'm sorry -- paragraph 4P, I
6    should say.
7         The People intend to admit evidence that
8    Defendant used his phone to call a veterinarian in Chicago
9    to get dogs sperm frozen and have it shipped to his house.
10   Through investigation, the FBI contacted the veterinarian
11   and she gave the FBI the Defendant's phone number.  This
12   lead to the Defendant being located and arrested in
13   Georgia.  The evidence is relevant under MRE 401, MRE 402
14   and MRE 403.
15        I did point out during the discussions that even
16   the response doesn't necessarily refer to dog fighting.  I
17   don't know that we need to bring up dog fighting under the
18   403 balancing test and I think that it might be more
19   prejudicial than probative in inferring that there is some
20   dog fighting going on.  I don't know, again, the facts, the
21   specific facts are.  It might be an issue at trial; it
22   might be necessary to bring up.  But at this point, I have
23   indicated to Counsel not to bring up any dog fighting in
24   accordance with your own response here, that wasn't
25   addressed or brought up, there was simply reference to the

1    veterinarian in Chicago being contacted to get dog sperm
2    frozen and I think that is sufficient.
3            So, right now, my ruling is without prejudice at
4    this point; but I don't see a reason why it needs to come
5    in and you can certainly address that outside of the jury
6    if there is a question or a follow up question or something
7    that needs to be asked in that regard.  But right now, I
8    agree that that should not be brought up.
9            Counsel, anything other than what the Court just
10   indicated that you want to bring up on the record, other
11   than what was just indicated?  It is your motion, Ms.
12   Prentice-Sao, so I will look to you first.
13           MS. PRENTICE-SAO: I am fine with the Court's
14   capture of 4P.
15           THE COURT:  Okay.  Anything else?
16           MR. CUSICK: Just very briefly, your Honor.  I
17   understand the Court's ruling.  I will just indicate that,
18   once again, the allegation is Defendant froze sperm in
19   Chicago because he was involved in dog fighting.  I
20   understand the Court's ruling.  The only thing that I do
21   want to make clear is back in May, just so that this
22   doesn't come up again and I am -- I understand the Court's
23   ruling here -- back in May, the issue of whether or not the
24   Defendant was a -- involved in drug dealing.  That issued
25   was resolved in May, per my motion, 404B.  I just want to

1     reiterate those activities can come in during trial.
2                THE COURT:  I think that I have already ruled on
3     those.
4                MR. CUSICK: Okay.
5                THE COURT:  This is just specific.  You said his
6     --
7                MR. CUSICK: I understand, I have no issue --
8                THE COURT:  Yeah.
9                MR. CUSICK: I just want to make sure that --
10               THE COURT:  I think that I prio -- previously
11    ruled on -- that's fine, I don't think that we need to
12    address that again.
13               But again, before you bring up -- just caution
14    your witnesses and before this issue arises.  If it needs
15    to come in, we'll address it later; but I don't see a
16    reason right now.
17               MR. CUSICK: Okay, thank you Judge.
18               THE COURT:  Okay.
19               With regards to the People's response in
20    paragraph 4O, these are with regards to cell phone records.
21    My understanding is that there is going to be someone from
22    Sprint that will testify and track phone numbers or phone
23    calls to certain towers, providing the latitude and
24    longitude of -- from whatever is on the phone records or
25    documentation and that is how they will associate it with a

1      particular tower.
2              Counsel, we had discussions in chambers. I think
3      that we have all dealt with these experts before. I think
4      that I indicated that -- I think that it is general
5      knowledge that there are towers that cell phones ping off
6      of and certainly I am expecting cross-examination with
7      regards to if a tower is full then it might ping off of a
8      different tower and I would expect that would be the
9      testimony of the witness, I don't know. But I don't think
10     that we need any specific expertise -- well, let me just --
11     the individual, my understanding is, -- the name of this
12     particular individual has been on the witness list for a
13     period of time. That the expected testimony -- I indicated
14     to Ms. Prentice-Sao, because she had some concern about
15     where different numbers might ping off of and what the
16     responses of the particular witness might be. I would
17     authorize them -- the Defense to hire an expert to -- a
18     cell phone tower expert, so that they can talk to that
19     person and properly cross-examine the People's witness if
20     necessary and/or bring this particular person in to
21     testify.
22              I indicated that you can simply submit an ex
23     parte request and I will authorize you up to $800.00 for
24     that expert right now. If you run into an issue that you
25     might need a little more, then you can certainly address

1   that with the Court; but I will expect that will be okay
2   for the present time.
3        My understanding is that you have a name of
4   someone that you are planning on using and you can provide
5   that name to the People and I indicated that that name
6   needs to be turned over by 5:00 p.m.
7        Counsel, is there anything else that you need to
8   place on the record with regards to that issue?  And again,
9   I realize this is just a summary and I am --
10       MS. PRENTICE-SAO: Five o'clock p.m. on Friday?
11       THE COURT:  On Friday.
12       MS. PRENTICE-SAO: Okay, thank you.
13       THE COURT:  There is no specific argument here,
14  we are kind of working off your briefs and our discussions
15  in chambers.
16       MS. PRENTICE-SAO: Yeah.
17       THE COURT:  Anything else Ms. Prentice-Sao?
18       MS. PRENTICE-SAO: Nothing else from me, your
19  Honor.
20       THE COURT:  Anything else --
21       MR. CUSICK: Nothing else, your Honor.
22       THE COURT:  All right, that covers that issue.
23       There is an issue with regards to two witnesses
24  who -- there was a request for immunity.
25       I'll just turn it over to you and you can outline

1   those and the record.
2   MR. CUSICK: Thank you, your Honor.
3   THE COURT: I signed the orders, but you can
4   outline that on the record.
5   MR. CUSICK: Your Honor, Mark Sprague and Paige
6   Bowers are on our witness list. They -- their anticipated
7   testimony is that they will admit that they stole a gun and
8   sold it to Walter Johnson. This is the gun that was used
9   to kill the victim. It is the People's contention that
10  Walter Johnson gave that gun to the Defendant and the
11  Defendant used that gun to kill Milo Conklin, the victim of
12  this case.
13  We would just ask the Court regarding Paige
14  Bowers and Mark Sprague, (inaudible, speaking too softly)
15  orders that I presented to the Court and under MCL 767A71
16  to grant these individuals immunity for the action of
17  stealing the gun and selling it to Walter Johnson.
18  THE COURT: Thank you.
19  Any position on that, Ms. Prentice-Sao?
20  MS. PRENTICE-SAO: I would object to their
21  receiving immunity.
22  THE COURT: All right.
23  Your objection is noted. I did indicate to
24  Counsel that I think it is appropriate under the
25  circumstances and I did sign those orders and they have

1  been received and they are in the file with regards to
2  those two witnesses.
3      There is an issue with regards to the forensic
4  pathologist who is going to testify. Again, I'll turn it
5  over to you Mr. Cusick.
6      MR. CUSICK: Your Honor, I can provide Defense
7  Counsel with the curriculum vitae of Doctor John Bechinski,
8  who did the autopsy in this case and will do so, -- as soon
9  as I receive it.
10     THE COURT:  I think that was the only issue is
11 that you hadn't received the CV yet, is that correct?
12     MS. PRENTICE-SAO: They weren't listed -- no one
13 was designated as an expert on the witness list.  If there
14 are any other experts, they need to be designated and
15 curriculum vitae provided.
16     THE COURT:  All right.
17     MR. CUSICK: Your Honor, I would just indicate
18 that I will provide them with the curriculum vitae and he
19 is an expert in the field of forensic pathology. And in
20 regarding Doctor Luedecking, not Doctor Luedecking -- I'm
21 sorry --
22     THE COURT:  Gerald Luedecking.
23     MR. CUSICK: Detective Luedecking, I don't believe
24 that he needs to be listed as an expert, your Honor.  I can
25 forward a curriculum vitae with regards to him.  He was the

1    one who gathered all the evidence, designated the evidence
2    and sent it to the lab. Was basically the evidence tech in
3    this case. I don't -- once again, have never qualified an
4    evidence tech as an expert witness, but I do intend to call
5    --
6    THE COURT: What did he do, just gather the -- he
7    didn't do any fingerprint testing or anything like that?
8    MR. CUSICK: No, your Honor.
9    THE COURT: Okay.
10   MR. CUSICK: There is one other person, Ann Hunt,
11   she is from the Michigan State Police. Once again, has
12   been on the witness list. She did a test for DNA in this
13   case. The DNA came back that there was no results for DNA.
14   I believe -- and there was a fingerprint analysis taken, no
15   fingerprints were recovered. I may have them testify as to
16   the fact that they did a test and no recovery on it; but
17   once again, I don't believe they need to be qualified as
18   experts in the field. Defense Counsel can question them on
19   the issue that no DNA was found, no fingerprints were
20   found. I just wanted to notify the Court of that.
21   MS. PRENTICE-SAO: My understanding is that they
22   are not designated as experts and they don't have
23   curriculum vitae, per the court rule, then they cannot
24   testify as to any opinions.
25   THE COURT: Sounds to me like there might be some

1     that might need to be qualified under 702.  So, any
2     potential experts, why don't you just make sure that you
3     identify those individuals.  Sometimes Luedecking comes in
4     and he does testify -- he has specific expertise in certain
5     areas, I know that; he's been qualified in the court
6     before, I think, for certain things.  If he is just
7     collecting evidence, that is one thing.  If he is doing any
8     type of controlled substance or fingerprint analysis or
9     whatnot, there might be criteria that needs to be outlined
10     on the record for that as far as how they collect that and
11     so forth.
12           It sounds like Hunt and I believe that she has
13     testified here before also -- she is going to provide DNA
14     testimony, she may need to be too.  So, I'll just give you
15     until Friday at 5:00 o'clock, like I have given the
16     Defense, to identify any potential witnesses who may be
17     providing expert testimony.
18           MR. CUSICK: Okay, thank you, your Honor.
19           THE COURT:  Obviously, that would include your
20     forensic pathologist too.
21           I -- this issue came up before, I think a week or
22     two ago.  Also my understanding is that Defendants have a
23     private investigator doing some work here.  So, if there
24     are any supplemental witnesses that you plan to call --
25     have you filed a witness list yet or no?

1  MS. PRENTICE-SAO: Yes I have and I have --
2  THE COURT: So any supplemental witnesses they
3  need to be filed by Friday at 5:00 o'clock. I indicated
4  that and any reports need to be turned over to the People
5  by that date and time also. Do you understand that Ms.
6  Prentice-Sao?
7  MS. PRENTICE-SAO: Yes I do and I already have
8  responses from Clatterbuck on that that, so that will be
9  done.
10  I will also indicate for the record -- I know
11  that there has been a lot of cooperation on this case and I
12  certainly appreciate it. Sounds like we do have some
13  individuals that might be coming from different state
14  office outside of Kalamazoo County. Like Ms. Hunt, I
15  believe is -- Doctor Hunt, I believe is from Grand Rapids
16  or Lansing?
17  MR. CUSICK: Well Doctor Bechinski and Ann Hunt
18  are coming from Grand Rapids --
19  THE COURT: Okay.
20  MR. CUSICK: But the material witness subpoenaed
21  will be for Steven Brown, who lives in Illinois and
22  potentially Kristine Wilkerson who lives in Georgia.
23  THE COURT: Okay. I guess what I'll do is this,
24  just throw out the fact that we certainly have a wonderful
25  video technology monitor -- system here. We've got a

1  monitor that -- we haven't had any issues yet, really, but
2  it does show everyone in real time.  So, I don't know if,
3  Counsel, you can speak with Mr. Steel and see if he has any
4  objections to any of those individuals appearing by way of
5  teleconference instead of live at trial; that certainly
6  saves the State money.  But I will let you discuss that
7  option and let us know.  We can always place that on the
8  record later too.
9        MS. PRENTICE-SAO: Mr. Champion had previously
10 spoken with Samuel Steel on that issue and we have no
11 problem with people appearing by video.  We have experience
12 in doing that with the Besham Sugrim trial; we had some lay
13 witnesses and expert witnesses appear by video and it
14 worked out fine and I think that it saved the State a lot
15 of money.
16       THE COURT:  Does that include the witnesses --
17 the out of state witnesses Steve Brower and Kristine
18 Wilkerson --
19       MR. CUSICK: Correct.
20       THE COURT: And maybe --
21       MS. PRENTICE-SAO: Brown in person.  I think that
22 would be more effective for him to be --
23       THE COURT:  I don't know who they are, so --
24       MS. PRENTICE-SAO: -- critical.
25       THE COURT:  Okay.

1             MR. CUSICK: That's fine, your Honor and we were
2     in court back in May; Kristine Wilkerson was a stipulation,
3     I believe, for Kristine Wilkerson to appear --
4             THE COURT:  To appear by way of teleconference.
5             MR. CUSICK: I do want to subpoena her --
6             THE COURT:  Sure.
7             MR. CUSICK: -- but obviously we will do
8     everything we can to provide that she can do it by
9     teleconference.
10            THE COURT:  Okay.
11            So, it sounds like you wouldn't have an issue
12    then with the, I don't know the Doctor's name, the
13    pathologist and -- and Ann Hunt, is that correct?  Is that
14    what you are indicating?
15            MS. PRENTICE-SAO: Yes, that would be fine.
16            THE COURT:  I'll throw that out there and let you
17    go from there.
18            I believe -- the only -- the last thing that I
19    have in my notes that we addressed in chambers is Mr. Steel
20    was eventually located in Georgia, from what I understand,
21    and it looks like Ms. Prentice-Sao was offering to
22    stipulate that that is where he was located at a particular
23    time or whatnot.  We had some discussion.  I understand the
24    People are planning on presenting some testimony that
25    indicates that he used a different name down there and -- I

don't know the extent of what you are planning on introducing -- but I did indicate that I am not going to prevent -- there was a request by Ms. Prentice-Sao that they be prevented from going into that since there is a stipulation. I certainly understand how it might go into the People's argument if they are going to argue that he was trying to avoid being found -- changed his name. Arguably there is a jury instruction that indicates that people can run or hide for various different reasons, but that is something that this jury can certainly use in their -- when they are considering the evidence too, so I can understand the argument that they do want some of that information in front of the jury.

So, I indicated to Counsel that I am not going to restrict them from introducing that testimony. My understanding is that there is two, three, possibly four witnesses that are -- they can shorten up somewhat and we don't have to have a lot of information on this, but I -- I can understand for argument purposes that they might want to do that. So, I am not going to restrict that. But again, my understanding is that we are not going to have a lot of this information out there if they -- it doesn't sound like they are going to object to what some of these people are going to say, as far as Mr. Steel being located down there and using a different name or whatnot. So, I

1  just don't want to drag things out and Counsel, I think
2  that you understand that and we can certainly deal with any
3  objections as necessary depending on how it comes in and
4  how long it is taking and so forth.  But they are certainly
5  entitled to bring in witnesses with regards to those
6  issues.
7        Anything else, then Counsel?  I think that covers
8  everything on my list.  Anything else that we need to
9  address before the trial?
10       MR. CUSICK:  I don't believe so, your Honor.
11       THE COURT:  No.
12       MS. PRENTICE-SAO:  The only thing I can think of
13 is that I did talk to Mr.Cusick earlier and told him that --
14
15       THE COURT:  I can barely hear you.
16       MS. PRENTICE-SAO:  I'm sorry.  I did speak with
17 the Prosecutor earlier and told him that we may file some
18 impeachment notices; we are still working on getting the
19 criminal background information for their witnesses and we
20 -- and we are just working on that as fast as we can.
21       THE COURT:  Okay.
22       MS. PRENTICE-SAO:  So, we can add that to the
23 Friday by 5:00 deadline if you would like.
24       THE COURT:  All right, we'll do that.
25       Anything else you want to add to the Friday

1 deadline?
2 MR. CUSICK: No, your Honor.
3 THE COURT: Ms. Prentice-Sao, anything further?
4 MS. PRENTICE-SAO: No, we are just going to be
5 busy.
6 THE COURT: All right.
7 Okay, have a good rest of the week and I'll see
8 everyone in a couple of weeks.
9 MR. CUSICK: Thank you, your Honor.
10 THE COURT: Again, I appreciate your cooperation
11 in working through some of these issues, Counsel.
12 I guess that I should also indicate. Since we
13 did have a motion filed, Ms. Prentice-Sao, why don't you
14 prepare an order indicating the two things that I addressed
15 per your motion, so that is clear in the file. And that
16 would be the issue of keeping any reference to dog fighting
17 out and I will allow their witness to testify and
18 potentially provide expert witness information or testimony
19 with regards to the cell phones and cell phone towers.
20 Okay.
21 Thank you.
22 MR. CUSICK: Thank you, your Honor.
23 THE COURT: By Friday at 5:00.
24 (At 2:29 p.m., court is in recess)
25

9-CC-C-13, FTP 8/13/13 at 2:07 p.m.

1 STATE OF MICHIGAN )
2                    )
  COUNTY OF KALAMAZOO )
3
4 I certify that this transcript consisting of 19 pages is a
5 complete, true, and correct transcript of the hearing held in
6 this case on August 13, 2013.
7
8
9
10 February 22, 2014
11                              Connie L. Branch CER 5624
                                PO BOX 19563
12                              Kalamazoo, MI 49019
                                (269) 377-7170
13
14
15
16
17
18
19
20
21
22
23
24
25

19